UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CRISTOBAL ALVAREZ, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-00414-RJ-JEM |
| | ) |
| ATLANTIC RICHFIELD COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF DEFENDANT U.S. SMELTER AND LEAD REFINERY, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1
II.  FACTUAL BACKGROUND .............................................................................................. 2
III. LEGAL STANDARD .......................................................................................................... 3
IV.  ARGUMENT ....................................................................................................................... 4
    A.   Plaintiffs Fail to State A Claim For Which Relief Can Be Granted. ......................... 4
        1.   *Plaintiffs fail to state a claim for NIED (Count IV) against U.S. Smelter.* .................................................................................................. 4
        2.   *Plaintiffs fail to state a claim for private nuisance (Count II) against U.S. Smelter.* .................................................................................. 6
        3.   *Plaintiffs fail to state a claim for trespass (Count III) against U.S. Smelter.* .................................................................................................. 7
        4.   *Plaintiffs fail to state a claim for negligence (Count I) against U.S. Smelter.* .................................................................................................. 9
V.   CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*A.B. v. Wal-Mart Stores, Inc.*,
  No. 1:14-CV-004220-RLY, 2014 WL 4965514 (S.D. Ind. Oct. 3, 2014) ...................................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................4, 9

*Barlow v. General Motors Corp.*,
  595 F. Supp. 2d 929 (S.D. Ind. 2009) ..............................................................4, 5, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S.544 (2007) ................................................................................................3, 4

*Burlington Northern & S.F. R. Co. v. United States*,
  129 S. Ct. 1870 (2009) ...............................................................................................3

*E.E.O.C. v. Concentra Health Servs., Inc.*,
  496 F. 3d 773 (7th Cir. 2007) ...................................................................................3

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ....................................................................................2

*Haywood v. Novartis Pharm. Corp.*,
  No. 2:15-CV-373, 2016 WL 5394462 (N.D. Ind. Sept. 27, 2016) .......................9

*Lilly Indus., Inc. v. Health-Chem Corp.*,
  974 F. Supp. 702 (S.D. Ind. 1997) ..........................................................................6

*Opoka v. I.N.S.*,
  94 F.3d 392 (7th Cir. 1996) .....................................................................................2

*Rolan v. Atlantic Richfield Co.*,
  No. 1:16-CV-357-TLS, 2017 WL 3191791 (N.D. Ind. July 26, 2017) ............................................................................................................................6, 7

*Walker v. City of East Chicago*,
  No. 2:16 CV 367, 2017 WL 4340259 (N.D. Ind. Sept. 20, 2017) ...................7, 8

US.116104541.01

*Yeatts v. Zimmer Biomet Holdings, Inc.*,
 Cause No. 3:16-CV-706-MGG, 2017 WL 1375117 (N.D. Ind. Apr. 17, 2017) ...................................................................................................4

**STATE CASES**

*Atl. Coast Airlines v. Cook*,
 857 N.E.2d 989 (Ind. 2006) ..................................................................................4

*Cowe by Cowe v. Forum Group, Inc.*,
 575 N.E.2d 630 (Ind. 1991) ................................................................................10

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*,
 62 N.E.3d 384 (Ind. 2016) ..................................................................................10

*KB Home Indiana Inc. v. Rockville TBD Corp.*,
 928 N.E.2d 297 (Ind. Ct. App. 2010) .......................................................6, 7, 8, 9

*Martin v. Amoco Oil Co.*,
 679 N.E.2d 139 (Ind. Ct. App. 1997) ...................................................................8

*Neal v. Cure*,
 937 N.E.2d 1227 (Ind. Ct. App. 2010) .................................................................9

*Satterfield v. Breeding Insulation Co.*,
 266 S.W.3d 347 (Tenn. 2008) ............................................................................10

*Smith v. Toney*,
 862 N.E.2d 656 (Ind. 2007) ................................................................................10

*Sprangler v. Bechtel*,
 958 N.E.2d 458,466 (Ind. 2011) .......................................................................4, 5

**FEDERAL STATUTES**

USEPA under the Resource Conservation and Recovery Act..................................7

**STATE STATUTES**

Ind. Code § 32-30-6-6...............................................................................................6

**RULES**

Fed.R.Civ.P. 8(a).........................................................................................1, 2, 3, 11

US.116104541.01

Fed.R.Civ.P. 12(b)(6) ...................................................................................................11

**REGULATIONS**

Notice Letters, Negotiations, and Information Exchange, 53 Federal
    Register 5300 (February 23, 1988) ........................................................................3

**OTHER AUTHORITIES**

Administrative Settlement Agreement and Order on Consent for
    Remedial Investigation/Feasibility Study of Operable Unit 2 of the
    U.S. Smelter and Lead Refinery, Inc. Superfund Site, CERCLA
    Docket No. V-W-17-C0913 ....................................................................................3

*In re Sharon Steel Corp.*,
    Case No. 87-00207E (1990) .....................................................................................2

USEPA East Chicago Superfund Site, Record of Decision (Nov.
    2012), *available at* https://semspub.epa.gov/work/05/446987.pdf ......................7

iv

US.116104541.01

## I.  INTRODUCTION

Plaintiffs' Complaint, while long on allegations about Plaintiffs' perceived harms to their property values and concerns about future health risks, sorely lacks in the allegations necessary to obtain relief under Indiana law.  The Complaint includes only the barest descriptions of any acts or omissions by Defendant U.S. Smelter and Lead Refinery, Inc. ("U.S. Smelter")[1].  To be clear, U.S. Smelter is sensitive to the concerns of the residents within the East Chicago Superfund Site.  Accordingly, since at least 1993, U.S. Smelter has been working with the United States Environmental Protection Agency ("USEPA"), the Indiana Department of Environmental Management ("IDEM"), and local health departments to investigate and remediate the area's historical industrial operations.  U.S. Smelter, a company that ceased its operations in East Chicago thirty-two years ago, has not shirked these responsibilities.  However, U.S. Smelter believes that those responsibilities are properly discharged through oversight by regulatory agencies pursuant to federal and state environmental laws and not applied *ad hoc* to the patchwork of state-law claims alleged in Plaintiffs' Complaint, some theories of which have already been dismissed against other defendants in related lawsuits.

As shown below, Plaintiffs' Complaint does not satisfy the pleading thresholds established in Rules 8(a) and 12(b)(6).  Apart from general recitations of the elements of their four state law claims, Plaintiffs fail to comply with the portion of Rule 8(a) that requires fair notice to U.S. Smelter of not only the legal basis for liability, but the *grounds* on which the claims purportedly rest.  Plaintiffs have failed, at a minimum, to satisfy the latter.  As explained below, Plaintiffs do not provide the "factual matter" necessary to state plausible claims for

---

[1] Plaintiffs' Complaint also names as defendants Mining Remedial Recovery Company, Arava Natural Resources Company, Inc. and Mueller Industries, Inc., each of which is a parent affiliate with either direct or indirect ownership of the stock of wholly-owned subsidiary, U.S. Smelter.  The affiliates' response to the Complaint is filed simultaneously herewith in their Motion to Dismiss and Brief in Support of Motion to Dismiss.

1

nuisance, trespass, negligence or negligent infliction of emotional distress ("NIED"). Their failure to do so warrants dismissal of all claims against U.S. Smelter.

## II. FACTUAL BACKGROUND

Plaintiffs allege diminution in their property values and current or future emotional distress about health risks stemming from contamination generated by, among other alleged sources, U.S. Smelter's long-concluded industrial processes. (Dkt. 1, Complt. ¶¶ 1 – 2.) Plaintiffs allege that U.S. Smelter owned and operated a lead refining and secondary lead smelting facility within the boundary of the East Chicago Superfund Site from approximately 1906 – 1985.[2] (*Id*. ¶ 110.) Plaintiffs claim that U.S. Smelter's long-concluded operations generated airborne emissions that contaminated Plaintiffs' properties. (*Id*.) Plaintiffs also claim that decades ago U.S. Smelter stockpiled and disposed of hazardous contaminants such that the contaminants spread into the surrounding areas, thereby contaminating Plaintiffs' groundwater and properties. (*Id*. at ¶¶ 110-11.)

To support their theory of liability, Plaintiffs refer to a general notice letter that U.S. Smelter received from the United States Environmental Protection Agency ("USEPA"). (*Id*. at ¶113.) Importantly, a USEPA general notice letter is not a formal determination of liability by the agency. Rather, "[t]he purpose of the general notice is to inform PRPs of their potential

---

[2] In 1987, two years after U.S. Smelter ceased its operations, its prior parent company, Sharon Steel Corporation ("Sharon"), filed for protection under Chapter 11. Sharon underwent a U.S. Bankruptcy Court-ordered reorganization, which concluded in 1990, *five years after* the termination of operations at U.S. Smelter. (Order Confirming Third Amended and Restated Plan of Reorganization at ¶ 52, *In re Sharon Steel Corp.*, Case No. 87-00207E (1990)). U.S. Smelter respectfully notes that Plaintiffs' Complaint does not reference the Chapter 11 bankruptcy proceedings or include those documents as an exhibit to the Complaint. However, the Court may take judicial notice of the Chapter 11 bankruptcy proceedings and related materials, and U.S. Smelter respectfully requests that it do so. *See Opoka v. I.N.S.,* 94 F.3d 392, 394 (7th Cir. 1996) (explaining that "[d]eterminations to be judicially noticed include proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."). U.S. Smelter is filing a separate Request for Judicial Notice in Support of Motion to Dismiss simultaneously herewith. Consideration of these materials does not transform this Motion into a Motion for Summary Judgment. *See Ennenga v. Starns,* 677 F.3d 766, 773 (7th Cir. 2012) (noting that "[t]aking judicial notice of public record need not convert a motion to dismiss into a motion for summary judgment.").

2

liability for future response costs" at a Superfund site and "to begin or continue the process of information exchange" regarding USEPA's alleged basis for liability. Superfund Program: Notice Letters, Negotiations, and Information Exchange, 53 Federal Register 5300 (February 23, 1988). Furthermore, unlike Plaintiffs' claims, CERCLA imposes strict liability on several broad classes of PRPs. *See generally Burlington Northern & S.F. R. Co. v. United States,* 129 S. Ct. 1870 (2009). Plaintiffs also point to an administrative settlement and order on consent ("AOC") in which U.S. Smelter agreed to conduct a remedial investigation and feasibility study of groundwater and soil within Operable Unit 2 ("OU2") of the East Chicago Superfund Site, outside the residential areas (*Id*. ¶ 115.) Importantly, the AOC referenced in Plaintiffs' Complaint explicitly states that the actions undertaken pursuant to the AOC "do not constitute an admission of any liability." (Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study of Operable Unit 2 of the East Chicago Superfund Site, CERCLA Docket No. V-W-17-C0913, pg. 1 at ¶ 3 (September 20, 2017)).[3]

### III.     LEGAL STANDARD

To survive a motion to dismiss, the complaint must comply with Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief and so that the defendant has fair notice of what the claim is *and the grounds upon which it rests*. *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 545 (2007). (Emphasis added.) The factual allegations in the complaint must be sufficient to raise the possibility of relief above mere speculation, assuming that all the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F. 3d 773, 776 (7th Cir. 2007). Moreover, Plaintiffs' Complaint must

---

[3] Documentation of USEPA's proceedings, including the AOC, was not attached as an exhibit to the Complaint. However, the Complaint does make various references to the AOC and USEPA's activities at the U.S.S. Smelter Site. Accordingly, this Court may take judicial notice of the AOC and related materials. *See* n. 2, *supra*.

US.116104541.01

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570).

## IV.  ARGUMENT

### A.  Plaintiffs Fail to State A Claim For Which Relief Can Be Granted.

#### *1.  Plaintiffs fail to state a claim for NIED (Count IV) against U.S. Smelter.*

The right to recover damages for emotional distress arising from negligence is "carefully circumscribed under Indiana jurisprudence." *Sprangler v. Bechtel*, 958 N.E.2d 458,466 (Ind. 2011).  To prevail on their claims for NIED under Indiana law, Plaintiffs must allege – and ultimately prove – that they suffered a "direct physical impact" that resulted from negligent conduct of another.  *See Atl. Coast Airlines v. Cook,* 857 N.E.2d 989, 997 (Ind. 2006).  This is the so-called "modified impact rule."  *See id*. at 991.  For plaintiffs claiming to be victims of negligent conduct (as opposed to bystanders), Indiana precedent is clear that some form of direct physical impact must be pled to recover damages arising from alleged emotional distress.  *Yeatts v. Zimmer Biomet Holdings, Inc.,* Cause No. 3:16-CV-706-MGG, 2017 WL 1375117, at *7 (N.D. Ind. Apr. 17, 2017) (granting defendant's motion to dismiss on the basis of the plaintiff's failure to allege direct physical impact arising from statements made by e-mail).

In a case directly on point, plaintiffs in Bedford, Indiana claimed NIED against General Motors Corporation arising from alleged exposure to PCB contamination onto their property.  *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929 (S.D. Ind. 2009).  In *Barlow*, plaintiffs alleged "that they should recover damages for emotional distress resulting from the fear that they might become ill as a result of exposure to PCBs.  Specifically, they "believed" that they were exposed to PCBs and "suffered restlessness, worry, and apprehension due to [their] exposure to PCBs, the increased risk to [their] health, and contamination of [their] land."  *Id.* at 933.  However, no plaintiff in *Barlow* claimed "any personal physical injury or present health effects

4

from the exposure to PCBs.  There [was] no evidence that any plaintiff have PCBs in his or her blood at higher than background levels.  Plaintiffs have offered no evidence that they have a higher risk of disease because of exposure to PCBs." *Id*. at 942.

Like *Barlow*, Plaintiffs' Complaint does not allege any actual "direct impact" caused by U.S. Smelter.  Although Plaintiffs' complaint states in conclusory fashion that a "direct impact" has occurred, Plaintiffs do not claim any current illness from contaminants.  (Dkt. 1, Compl. at ¶ 253.)   Instead, Plaintiffs allege that they "fear that living on contaminated properties will exacerbate other health concerns" or "fear of contracting a future illness associated with the contamination."  (*Id*. at ¶¶ 227, 253.)   Specific examples of their concerns included in the Complaint likewise do not rise to the "direct physical impact" required under Indiana law. For example, they express concern[] that lead and arsenic exposure will complicate [plaintiff's] kidney transplant," that another plaintiff's health issues "may be exacerbated by living on or near toxic contamination," and describe "autoimmune disorders that are exacerbated by toxic contamination." (*Id.* at ¶¶ 229-231.)  Like *Barlow*, absent are any allegations of current health effects actually caused by the contamination or even contaminants in blood higher than background levels.

The one exception to the "modified impact" rule is for recovery of emotional distress damages if plaintiffs have "witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives" and this is also known as the "bystander rule." *Bechtel*, 958 N.E.2d at 466.  The exception finds no application here.  In this case, Plaintiffs allege "fear that their children, grandchildren, family members, guests, or anyone else who comes into contact with their homes will contract future illnesses associated with the contamination."  (Dkt. 1, Compl. at ¶¶ 253-54).  The Complaint fails to allege any current "severe injury" of anyone that

5

Plaintiffs witnessed being caused by the contaminants. Such fears do not provide any basis for recovery under the bystander rule. *Barlow,* 595 F. Supp. 2d at 945 (denying plaintiffs' claims for "fears that [plaintiffs]' children or grandchildren or other family members may become ill or face increased health risks because of exposure to PCBs at the plaintiffs' property.")[4]

### 2. *Plaintiffs fail to state a claim for private nuisance (Count II) against U.S. Smelter.*

Although unclear from the Complaint, private nuisance in Indiana is defined by statute. *See A.B. v. Wal-Mart Stores, Inc.,* No. 1:14-CV-004220-RLY, 2014 WL 4965514, at *3 (S.D. Ind. Oct. 3, 2014). The statute defines an actionable private nuisance as whatever is: "(1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property so as essentially to interfere with the comfortable use of life or property." Ind. Code § 32-30-6-6. Specifically, "[p]rivate nuisance arises when a party has used his property to the detriment of the use and enjoyment of another's property." *A.B.*, 2014 WL 4965514, at *3. Moreover, "a nuisance claim generally contemplates an action that is designed to cease or lessen the defendant's continued offensive behavior." *KB Home Indiana Inc. v. Rockville TBD Corp.,* 928 N.E.2d 297, 307 (Ind. Ct. App. 2010). A claim for nuisance "provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property by different landowners." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 706 (S.D. Ind. 1997).

In *KB Home*, the Court of Appeals of Indiana affirmed dismissal of a nuisance claim against a defendant where the plaintiff failed to show that "a nuisance existed or was ongoing that could be abated or enjoined." *Id.* Chief Judge Springmann recently upheld this principle in *Rolan v. Atlantic Richfield Co.,* No. 1:16-CV-357-TLS, 2017 WL 3191791, *13-16 (N.D. Ind. July 26, 2017), a similar case involving private nuisance allegations by tenants of the East

---

[4] *See* n. 7, *infra*.

Calumet Public Housing Complex located in the East Chicago Superfund Site against E.I. du Pont de Nemours and Company and The Chemours Company (collectively, "DuPont"). Ultimately, the Court found *KB Home* persuasive and held that the nuisance claim against DuPont should be dismissed because it "stopped producing lead and arsenic compounds at the site in 1949." *Id.* at *16.

The outcome should be no different in this case. Like in *Rolan*, the Plaintiffs have similarly failed to state a claim for nuisance because U.S. Smelter's operation has long since ceased and therefore there is no ongoing contamination from the U.S. Smelter Facility to the residential area. *See id*. Plaintiffs' Complaint admits that U.S. Smelter ceased operation in 1985. (Dkt. 1, Compl. at ¶ 110). Starting in 1993, U.S. Smelter began cleanup at its facility and excavated contaminated soils pursuant to an agreement with USEPA under the Resource Conservation and Recovery Act. *See* USEPA East Chicago Superfund Site, Record of Decision (the "ROD") at 9 (Nov. 2012), *available at* https://semspub.epa.gov/work/05/446987.pdf.[5] Moreover, USEPA concluded that U.S. Smelter is not an ongoing source of contamination to the residential area. *Id*. As such, this is not a case of "competing, simultaneous uses" of property between the Plaintiffs and U.S. Smelter. Therefore, Plaintiffs' claim for nuisance against U.S. Smelter should be dismissed.

### 3. *Plaintiffs fail to state a claim for trespass (Count III) against U.S. Smelter.*

As with nuisance, similar trespass claims brought by other residential plaintiffs located within the East Chicago Superfund Site have been rejected in parallel proceedings within this Court. *See Walker v. City of East Chicago,* No. 2:16 CV 367, 2017 WL 4340259, *9 (N.D. Ind.

---

[5] As noted above, documentation of USEPA's proceedings, including the ROD, was not attached as an exhibit to the Complaint. However, the Complaint does make various references to USEPA's activities at the East Chicago Superfund Site. Accordingly, this Court may take judicial notice of the ROD and related materials. *See* n. 2, *supra*.

Sept. 20, 2017). To state a claim for trespass under Indiana law, Plaintiffs must allege that they possessed the land when the trespass occurred *and* that the trespassing defendant entered the land without a legal right to do so. *KB Home,* 928 N.E.2d at 308. Plaintiff must also allege facts showing that U.S. Smelter intentionally acted such that it "knew or was substantially certain" that contamination would migrate to the residential area. *See Martin v. Amoco Oil Co.,* 679 N.E.2d 139, 147 (Ind. Ct. App. 1997).

In *Walker*, Judge Moody granted DuPont and Atlantic Richfield's motions to dismiss against residents within the East Chicago Superfund Site on the basis that they did not possess the land at the time the alleged contamination originally occurred. 2017 WL 4340259, *9. The Court held that plaintiffs did not have a claim of trespass against Atlantic Richfield and DuPont because the contamination at the site "occurred decades ago…and before the plaintiffs took possession of the land." *Id.* (citing *KB Home*, 928 N.E.2d at 309 ("Simply put, because KB did not have possession of the land at the time of the alleged trespass, KB did not have a trespass action against Rockville.")).

Likewise, Plaintiffs' Complaint in this case fails to satisfy, at a minimum, two of the three elements for a trespass claim against U.S. Smelter. Many of the Plaintiffs did not possess the land when the U.S. Smelter facility ceased operations in 1985. (Dkt 1, Compl. at ¶¶ 25, 27, 31 – 33, 36, 39 – 40, 42 – 43, 46 – 47, 49, 51 – 52, 56, 58 – 61.) Therefore, Plaintiffs' claim for trespass "fails by its very own terms" because the Plaintiffs did not own these properties at the same time U.S. Smelter's alleged trespass was occurring. *Id.*

Furthermore, Plaintiffs' assertion that U.S. Smelter is presently continuing to trespass is thwarted by the ROD, which notes that U.S. Smelter is *not* an ongoing source of contamination

to the residential area. *See* ROD at 9.[6] Additionally, Plaintiffs have not even attempted to allege that U.S. Smelter knew or was substantially certain that its alleged actions would result in contamination of the Plaintiffs' properties. Again, at the time U.S. Smelter operated its facility, most of the Plaintiffs were not owners of their properties, therefore U.S. Smelter could not have been aware that its alleged actions could have impacted those individuals. (*Id.*) Said differently, many of the Plaintiffs were not in possession of their property "at all relevant times," which eliminates the their trespass claim they now seek to assert. *See KB Home,* 928 N.E.2d at 308-09. Accordingly, Count III should be dismissed as to Defendant U.S. Smelter.

### 4. *Plaintiffs fail to state a claim for negligence (Count I) against U.S. Smelter.*

To state a claim for negligence liability, Plaintiffs must plausibly allege that U.S. Smelter: (1) owed them a duty of care at the time the injury occurred; (2) did not conform its behavior to that standard of care; and (3) proximately caused Plaintiffs' claimed injuries by the alleged breach. *Neal v. Cure,* 937 N.E.2d 1227, 1236 (Ind. Ct. App. 2010).

Plaintiffs' Complaint, however, contains only "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" frequently rejected by courts. *Compare Iqbal,* 556 U.S. at 663, *with* Dkt. 1, Compl. at ¶¶ 236 – 238. The Complaint's vague allegations implausibly directed at all "Defendants," Plaintiffs also simply recite the elements of negligence liability and broad allusions to U.S. Smelter's operations. (*See* Dkt. 1, Compl. at ¶¶ 236 – 238.) This is insufficient. Plaintiffs' claims cannot survive dismissal by alleging "some conceivable set of facts that entitle [them] to relief." *Haywood v. Novartis Pharm. Corp.,* No. 2:15-CV-373, 2016 WL 5394462, at *2 (N.D. Ind. Sept. 27, 2016). Plaintiffs must plead "facts that state a claim to relief that is plausible on its face." *Id*. Their complaint falls far short of this standard.

---

[6] *See* n. 2 and n. 5, *supra*.

First, the Complaint fails to allege facts sufficient to show that U.S. Smelter owed any duty of care to the Plaintiffs. Specifically, to have a duty, U.S. Smelter's alleged contamination of Plaintiffs' real estate must have been foreseeable. Whether a defendant's action is "foreseeable in the context of duty [courts] assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016) (*quoting Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). Plaintiffs have no allegations that U.S. Smelter reasonably could have foreseen that its operations could have adverse offsite impacts, especially as to those areas that had not yet been developed for residential use.

Second, the Complaint fails to indicate how U.S. Smelter could be the proximate cause of their harm. Negligence requires "proximate cause," or that the harm would not have occurred "but for" the defendant's conduct. *Cowe by Cowe v. Forum Group, Inc.,* 575 N.E.2d 630 (Ind. 1991). In their Complaint, Plaintiffs allege that Defendants individually (and collectively) contaminated their properties. (*See e.g.* Dkt. 1, Compl. at ¶¶ 106 (Atlantic Richfield's alleged releases),109 (DuPont alleged releases), 111 (U.S. Smelter alleged releases)). Plaintiff's inability to allege how their harm would not have occurred "but for" U.S. Smelter's actions fails to fulfill the proximate cause element for their claims. Accordingly, Plaintiffs' claim for negligence against U.S. Smelter should be dismissed.[7]

---

[7] Plaintiffs cannot recover damages for NIED absent negligent conduct. *See Smith v. Toney,* 862 N.E.2d 656, 659 (Ind. 2007) (outlining requirements for recovering damages for NIED, which, as a baseline, included negligent conduct). Necessarily, this means that Plaintiffs also failed to state a claim for NIED. Therefore, Plaintiffs' Count IV against U.S. Smelter should also be dismissed on this additional ground.

US.116104541.01

## V. CONCLUSION

U.S. Smelter respectfully requests that the Court dismiss all of Plaintiffs' claims against it (Counts I – IV) for failure to state a claim for which relief can be granted under Rule 12(b)(6) and for failure to plead sufficiently under Rule 8(a).

Dated: January 22, 2018

Respectfully submitted,

/s/ Kevin M. Toner
Kevin M. Toner, #11343-49
H. Max Kelln, #30358-49
Julian E. Harrell, #30661-49
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-1200
Kevin.Toner@FaegreBD.com

*Attorneys for Defendants U.S. Smelter and Lead Refinery, Inc., Mining Remedial Recovery Company, Arava Natural Resources Company, Inc., and Mueller Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kevin M. Toner
Kevin M. Toner