**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| CRISTOBAL ALVAREZ, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-00414-RJ-JEM |
| | ) | |
| ATLANTIC RICHFIELD COMPANY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS MINING REMEDIAL RECOVERY**
**COMPANY, ARAVA NATURAL RESOURCES COMPANY, INC.,**
**AND MUELLER INDUSTRIES, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 3

III.   LEGAL STANDARD ......................................................................................... 5

     A.     Plaintiffs Have Not Established The Court's General Jurisdiction Over Affiliates. ................................................................................................6

     B.     Plaintiffs Have Not Established The Court's Specific Jurisdiction Over Affiliates As To This Controversy. ......................................................8

     C.     Plaintiffs Fail to State A Claim For Which Relief Can Be Granted. .....................13

          1.     Plaintiffs' Complaint does not contain sufficient factual matter to state a claim for relief that is plausible on its face. ...................................13

          2.     Plaintiffs fail to state a claim for negligence (Count I) against Affiliates because Affiliates never owed Plaintiffs a duty of care.............14

          3.     Plaintiffs fail to state a claim for NIED (Count IV) against Affiliates because Plaintiffs have not alleged that they suffered a direct physical harm that resulted from *Affiliates'* negligent conduct. ....................................................................................................15

          4.     Plaintiffs fail to state a claim for private nuisance (Count II) against Affiliates because Affiliates never operated any facility at the East Chicago Superfund Site and therefore were incapable of taking any action or making any omission that would have created a nuisance. ...................................................................................................17

          5.     Plaintiffs fail to state a claim for trespass (Count III) against Affiliates because Affiliates never operated any facility at the East Chicago Superfund Site and therefore could not have taken any actions constituting a trespass. ...............................................................18

IV.   CONCLUSION ................................................................................................ 19

US.116103098.01

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.B. v. Wal-Mart Stores, Inc.*,
No. 1:14-CV-004220-RLY, 2014 WL 4965514 (S.D. Ind. Oct. 3,
2014) ...............................................................................................17

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...........................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................13

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ............................................................13

*Barlow v. General Motors Corp.*,
595 F. Supp. 2d 929 (S.D. Ind. 2009)..........................................16, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..............................................................................6

*Burlington Northern & S.F. R. Co. v. United States*,
129 S. Ct. 1870 (2009).......................................................................12

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
45 S.Ct. 250 (1925)..............................................................................7

*Central States, Se. & Sw. Areas Pension Fund v. Reimer Express
World Corp.*,
230 F.3d 934 (7th Cir. 2000) ...........................................................7, 9

*Ennenga v. Starns*,
677 F.3d 766 (7th Cir. 2012) ..............................................................1

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
104 S.Ct. 1868 (1984).........................................................................8

ii

*Howell v. Clark Cty. Collection Serv., LLC*,
   No. 1:14-cv-00553-TWP-TAB, 2015 WL 1210599 (S.D. Ind. Mar.
   16, 2015) ...................................................................................................11

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).....................................................................................6

*Lilly Indus., Inc. v. Health-Chem Corp.*,
   974 F. Supp. 702 (S.D. Ind. 1997)..............................................................18

*Opoka v. I.N.S.*,
   94 F.3d 392 (7th Cir. 1996) ..........................................................................1

*Philpot v. Mansion Am., LLC*,
   No. 1:14-cv-01357-TWP-DML, 2015 WL 4715215 (S.D. Ind.
   Aug. 7, 2015) ..............................................................................................11

*Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ..............................................................5, 7, 8

*Rolan v. Atlantic Richfield Co.*,
   No. 1:16-CV-357-TLS, 2017 WL 3191791 (N.D. Ind. July 26,
   2017) ..........................................................................................................18

*Secon Service Sys. v. St. Joseph Bank and Trust Co.*,
   855 F.2d 406 (7th Cir. 1988) ......................................................................10

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998).......................................................................................10

*Walker v. City of East Chicago*,
   No. 2:16 CV 367, 2017 WL 4340259 (N.D. Ind. Sept. 20, 2017) ....................18

*Wesleyan Pension Fund, Inc. v. First Albany Corp.*,
   964 F. Supp. 1255 (S.D. Ind. 1997)...........................................................7, 9

*Yeatts v. Zimmer Biomet Holdings, Inc.*,
   Cause No. 3:16-CV-706-MGG, 2017 WL 1375117 (N.D. Ind. Apr.
   17, 2017) .....................................................................................................15

US.116103098.01

STATE CASES

*Anthem Insurance Cos. v. Tenet Healthcare Corp.*,
    730 N.E.2d 1227 (Ind. 2000) ...............................................................7

*Atl. Coast Airlines v. Cook*,
    857 N.E.2d 989 (Ind. 2006) ...............................................................15

*Boyer v. Smith*,
    42 N.E.3d 505 (Ind. 2015) ...............................................................5, 8

*Brockman v. Kravic*,
    779 N.E.2d 1250 (Ind. Ct. App. 2002) ............................................10

*Cowe by Cowe v. Forum Group, Inc.*,
    575 N.E.2d 630 (Ind. 1991) ...............................................................15

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*,
    62 N.E.3d 384 (Ind. 2016) ...........................................................14, 15

*KB Home Indiana Inc. v. Rockville TBD Corp.*,
    928 N.E.2d 297 (Ind. Ct. App. 2010) ..............................................18

*LinkAmerica Corp. v. Cox*,
    857 N.E.2d 961 (Ind. 2006) ........................................................passim

*Martin v. Amoco Oil Co.*,
    679 N.E.2d 139 (Ind. Ct. App. 1997) ..............................................18

*Neal v. Cure*,
    937 N.E.2d 1227 (Ind. Ct. App. 2010) ............................................14

*Reed v. Reid*,
    980 N.E.2d 277 (Ind. 2012) .............................................................7, 9

*Satterfield v. Breeding Insulation Co.*,
    266 S.W.3d 347 (Tenn. 2008) ..........................................................14

*Smith v. Toney*,
    862 N.E.2d 656 (Ind. 2007) ...............................................................15

*Sprangler v. Bechtel*,
    958 N.E.2d 458,466 (Ind. 2011) ...............................................15, 17

US.116103098.01

*Webb v. Jarvis*,
    575 N.E.2d 992 (Ind. 1991) .................................................................................14

**STATE STATUTES**

Ind. Code § 32-30-6-6 ..............................................................................................17

**RULES**

Fed.R.Civ.P. 4(k)(1)(A) ...........................................................................................5

Fed. R. Civ. P. 8(a)(2) ...........................................................................................13

Fed.R.Civ.P. 8(a)...................................................................................3, 13, 14, 19

Fed.R.Civ.P. 12(b)(2)........................................................................................2, 19

Fed.R.Civ.P. 12(b)(6)...............................................................................2, 6, 14, 19

Indiana Trial Rule 4.4(A) .........................................................................................5

**REGULATIONS**

Notice Letters, Negotiations, and Information Exchange, 53 Federal
    Register 5300 (February 23, 1988).................................................................11

**OTHER AUTHORITIES**

Administrative Settlement Agreement and Order on Consent for
    Remedial Investigation/Feasibility Study of Operable Unit 2 of the
    U.S. Smelter and Lead Refinery, Inc. Superfund Site, CERCLA
    Docket No. V-W-17-C0913..............................................................................12

*In Re: Sharon Steel Corporation*,
    Case No. 87-00207E (1990) ..............................................................................1

US.116103098.01

# I.  <u>INTRODUCTION</u>

Plaintiffs' Complaint names as defendants three affiliated companies of Defendant U.S. Smelter and Lead Refinery, Inc. ("U.S. Smelter"): Mining Remedial Recovery Company ("MRRC"), Arava Natural Resources Company, Inc. ("Arava"), and Mueller Industries, Inc. ("Mueller") (collectively, "Affiliates").  These entities were created in connection with the chapter 11 bankruptcy of the prior parent company of U.S. Smelter - Sharon Steel Corporation. That bankruptcy proceeding was commenced two years *after* and finalized five years *after* U.S. Smelter ceased operations.  (*In Re: Sharon Steel Corporation*, Case No. 87-00207E, Order Confirming Third Amended and Restated Plan of Reorganization Proposed by Quantum Overseas N.V. and Castle Harlan, Inc. (U.S. Bankruptcy Ct., West. Dist. Penn., November 20, 1990) (the "Order Approving Reorganization")).[1]  The Affiliates are not alleged to have owned or operated the former U.S. Smelter facilities at 5300 Kennedy Avenue, East Chicago, Indiana (the "U.S. Smelter Facility").  Instead, Plaintiffs' Complaint relies exclusively on tenuous corporate relationships between the Affiliates and the U.S. Smelter Facility based on indirect (or in the case of MRRC, direct) ownership of *stock* in U.S. Smelter.  In the case of Mueller, the connection is three steps removed from U.S. Smelter, the company purportedly responsible for decades-old activities at the facility.  Indeed, Plaintiffs admit in their pleading that Mueller is merely the parent of the parent of U.S. Smelter's parent; in other words, U.S. Smelter's great grandparent entity.  (Dkt. 1, Cmplt. at ¶¶ 22 – 24.)

---

[1] Plaintiffs' Complaint does not acknowledge or reference the petition, final order, or court-approved plan of reorganization in Sharon Steel Corporation's chapter 11 proceeding.  However, the Court may take judicial notice of the records in other judicial proceedings.  *See Opoka v. I.N.S.,* 94 F.3d 392, 394 (7th Cir. 1996) (explaining that "[d]eterminations to be judicially noticed include proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.").  Affiliates have filed concurrently a Request for Judicial Notice in Support of Motion to Dismiss which respectfully requests that the Court take notice of the final order and exhibits in the bankruptcy case.  Consideration of these materials does not transform this Motion into a Motion for Summary Judgment.  *See Ennenga v. Starns,* 677 F.3d 766, 773 (7th Cir. 2012) (noting that "[t]aking judicial notice of public record need not convert a motion to dismiss into a motion for summary judgment.").

This motion is brought because Plaintiffs' allegations, even if true, are insufficient to establish the minimum contacts necessary for purposes of personal jurisdiction, fail to satisfy the elements for "piercing the veil" under traditional corporate law principles, and cannot form the basis of direct liability for Affiliates' own actions, if any, related to the U.S. Smelter Facility.  As shown below, (1) this Court lacks both general and specific personal jurisdiction over Defendants MRRC, Arava, and Mueller; (2) the Complaint does not plead actionable claims against Affiliates because nowhere does the Complaint allege that Affiliates did anything other than directly or indirectly own stock in U.S. Smelter; and (3) the Complaint fails to state a claim for relief under Rule 12(b)(6), because the pleading lacks sufficient factual information to state the grounds for any plausible claim for relief against Affiliates.

The Court need not address all grounds for dismissal, because the lack of personal jurisdiction over Affiliates is so abundantly clear.  Affiliates are not Indiana companies and do not maintain offices here. They are not alleged to have conducted any operations in East Chicago or anywhere else in Indiana.  Plaintiffs merely allege that Affiliates and U.S. Smelter received a general notice letter from EPA and signed an administrative settlement with EPA under which U.S. Smelter agreed to conduct investigatory activities at its former site.  (Dkt. 1, Complt. at ¶¶ 113, 115.)  These allegations do not come close to establishing minimum contacts with the State of Indiana.  Nor do they demonstrate that Affiliates purposely availed themselves of any such contacts or that they could reasonably anticipate that any court in Indiana would have jurisdiction over them.  Accordingly, this Court should dismiss Affiliates from the case pursuant to Rule 12(b)(2).

Assuming *arguendo* that this Court's exercise of jurisdiction would *not* offend due process (and it *would*), Plaintiffs' Complaint also fails to sufficiently plead the necessary

US.116103098.01

elements of nuisance, trespass, negligence or negligent infliction of emotional distress ("NIED") against Affiliates under Indiana law.  Nowhere does the Complaint allege that Affiliates owned real estate in the State of Indiana or operated any facility that caused Plaintiffs any harm. Instead, Plaintiffs' Complaint rests upon the singular allegation that Mueller provided financial assurance for U.S. Smelter's performance of obligations pursuant to a 2017 consent decree with a federal agency in another case.  Based on this allegation, and this allegation alone, Plaintiffs theorize that there is a basis to hold Affiliates liable to these Plaintiffs under Indiana law. Plaintiffs' theory flies in the face of the well-established elements of the torts identified in the four counts of the Complaint.  Plaintiffs do not allege with requisite specificity or sufficient common sense that Affiliates acted culpably or negligently.  Nor can they, as nowhere do the Plaintiffs allege that Affiliates owned or operated the U.S. Smelter Facility or that they even existed at the time the U.S. Smelter Facility was in operation.  Indiana courts do not and cannot impose tort liability based on stock ownership alone or financial support of a government supervised cleanup.  Accordingly, dismissal is appropriate under Rules 8(a) and 12(b)(6).

## II.     FACTUAL BACKGROUND

Plaintiffs seek damages in this action for the alleged diminution in their property values and for alleged current or future emotional distress about potential health risks stemming from contamination generated by, among other alleged sources, U.S. Smelter's industrial processes. (Dkt. 1, Complt. at ¶¶ 1 – 2.)  Plaintiffs allege that *U.S. Smelter* owned and operated a lead refining and secondary lead smelting facility within the boundary of the East Chicago Superfund Site from approximately 1906 – 1985.  (*Id*. at ¶ 110.)  They allege that *U.S. Smelter's* long-concluded operations generated airborne emissions that contaminated Plaintiffs' properties.  (*Id*.) Plaintiffs further allege that *U.S. Smelter* stockpiled and disposed of hazardous contaminants

US.116103098.01

such that the contaminants spread into the surrounding area, thereby contaminating Plaintiffs'
groundwater and properties.  (*Id*. at ¶¶ 110-11.)

As an initial matter, Affiliates were incorporated in Delaware, not Indiana, and each was
formed after U.S. Smelter ceased operation.[2]  Additionally, Affiliates were created in connection
with the 1987 chapter 11 bankruptcy of Sharon Steel Corporation ("Sharon Steel"), which was
finalized five years after U.S. Smelter ceased operations in 1985.  (*See generally* Order
Approving Reorganization.)[3]  After the bankruptcy, the successors to Sharon Steel – including
Affiliates – emerged without "liability to a creditor or party-in-interest . . . based, in whole or in
part, directly or indirectly, on any theory of law including, without limitation, any theory of
transferee or successor liability."  (*Id*. at ¶  38.)  Plaintiffs' Complaint states that U.S. Smelter is
a wholly-owned subsidiary of MRRC, which is a wholly-owned subsidiary of Arava, which is a
wholly-owned subsidiary of Mueller.  (Dkt. 1, Complt. at ¶¶ 22 – 24.)

Plaintiffs do not allege that Affiliates ever owned or operated the U.S. Smelter Facility.
In fact, Plaintiffs could not assert such an allegation because Affiliates did not even exist while
U.S. Smelter was operating.[4]  Plaintiffs do not claim that Affiliates in any way caused or
contributed to the underlying contamination giving rise to their Complaint.  Plaintiffs instead
reference general notice letters that Affiliates received from the United States Environmental
Protection Agency ("USEPA") stating that they may be Potentially Responsible Parties or
"PRPs" for the East Chicago Superfund Site.  (*Id*. at ¶113.)  Plaintiffs also point to an
administrative settlement and order on consent ("AOC") in which Respondent *U.S. Smelter*
agreed to conduct a remedial investigation and feasibility study, including groundwater and soil

---

[2] MRRC was incorporated on January 7, 1987, Mueller was incorporated on October 3, 1990 and Arava was
incorporated on October 31, 1990.  *See also* n. 1, *supra*.

[3] *See* n. 1, *supra*.

[4] *See* n. 2, *supra*.

US.116103098.01

sampling, at the East Chicago Superfund Site.  (*Id*. at ¶ 115.)  Although Plaintiffs make passing

reference to liability that may arise under CERCLA for "piercing the veil" under traditional

corporate law principles, there is no such claim in their pleading.  Nor does the Complaint allege

facts to support direct claims against Affiliates under Indiana law.  No federal law claims appear

in the Complaint.  (*Id.* at ¶ 114.)

### III.   <u>LEGAL STANDARD</u>

While motions to dismiss generally require courts to assume that the factual allegations

are true and to construe all inferences in favor of a plaintiff, the plaintiff still bears the full

burden of demonstrating that each defendant is subject to the personal jurisdiction of the court.

*Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  In

the absence of a federal statute providing for nationwide service of process, a federal district

court may exercise personal jurisdiction over a defendant only if a court of the state in which it

sits would have jurisdiction.  Fed.R.Civ.P. 4(k)(1)(A).

The Indiana long-arm statute, found at Indiana Trial Rule 4.4(A), provides for

jurisdiction "on any basis not inconsistent with the Constitution of this state or the United

States."  In other words, courts in Indiana now limit their personal jurisdiction analysis "to the

issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process

Clause."  *Boyer v. Smith,* 42 N.E.3d 505, 509 (Ind. 2015) (citing *LinkAmerica Corp. v. Cox,* 857

N.E.2d 961, 965 (Ind. 2006)).

To satisfy the constitutional requirement, Plaintiffs have the burden to establish either:

(1) "continuous and systematic" contacts, also known as "general jurisdiction"; or (2) "specific

jurisdiction", which arises from contacts relating to the specific controversy before the Court.

*LinkAmerica,* 857 N.E.2d at 967.  Plaintiffs must establish that the minimum contacts arose from

*Affiliates' own conduct* or were directed *by Affiliates* into Indiana.  *Boyer,* 42 N.E.2d at 511.

US.116103098.01

As shown below, Plaintiffs have not carried this burden.  They have failed to allege facts that would satisfy the Federal Due Process Clause.  It would be wholly improper for the Court to exercise personal jurisdiction over non-resident parent companies that merely own stock. Additionally, the Court may dismiss the Complaint as to Affiliates because the pleading is lacking in the specific allegations that would support liability of a parent company for a subsidiary's torts of negligence, negligent infliction of emotional distress, nuisance, or trespass. Even assuming all allegations as true, the Complaint does not satisfy the requirements of Rule 12(b)(6) and it does not show a plausible basis for tort law liability.

## IV.   ARGUMENT

### A.   Plaintiffs Have Not Established The Court's General Jurisdiction Over Affiliates.

The Federal Due Process Clause requires a defendant to have "certain minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Id*.  (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

*International Shoe's* "minimum contacts" test ensures that an Indiana court's exercise of personal jurisdiction over a defendant is fair and just.  *Id*.  Notably, due process requires that potential out-of-state defendants be able to predict — based on their contacts — what conduct might make them liable in Indiana courts.  *Id*.  Consistent with longstanding precedent of allowing defendants "to structure their primary conduct with some minimum assurance as to…conduct [that] will and will not render them liable to suit," Indiana courts assert personal jurisdiction with caution and only over a defendant who has the requisite minimum contacts in Indiana.  *Id*.

6

"An Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic, which Indiana courts have interpreted to include, among other things, having offices in Indiana, being incorporated in Indiana, and having employees in Indiana. *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1235 (Ind. 2000). Courts ordinarily respect separate corporate identities when determining whether a subsidiary's contacts with the forum justify assertion of personal jurisdiction over the parent. *See, e.g., Cannon Mfg. Co. v. Cudahy Packing Co.,* 45 S.Ct. 250 (1925); *Purdue Research*, 338 F.3d at 788 n. 17; *Anthem*, 730 N.E.2d at 1240 n. 17. The separate corporate identities may be overcome only where it is shown that the parent company has greater control than would normally be associated with common ownership. *Purdue Research*, 338 F.3d at 788 n. 17.

Within this jurisdictional framework, Plaintiffs must also address the presumption that "a parent and a subsidiary are independent entities and a subsidiary's contacts with the forum are not attributed to the parent corporation for jurisdictional purposes." *LinkAmerica,* 857 N.E.2d at 968; *Wesleyan Pension Fund, Inc. v. First Albany Corp.,* 964 F. Supp. 1255, 1261 (S.D. Ind. 1997); *Reed v. Reid,* 980 N.E.2d 277, 304 (Ind. 2012). As the Seventh Circuit has held, when corporate formalities are observed, allowing the subsidiary's activities to be the basis for finding jurisdiction violates due process. *Id.* (citing *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 944 (7th Cir. 2000)). On its face, Plaintiffs' Complaint does not contain any allegations that come anywhere close to clearing any of the jurisdictional hurdles outlined above, much less all of them. Failure to plead and establish such facts is fatal to Plaintiffs' conclusory and unsupported statement that this Court has jurisdiction over Affiliates.

7

Plaintiffs do not allege any fact that could establish general jurisdiction over Affiliates. Nothing in the Complaint even suggests that Affiliates have a "constructive presence" in Indiana. *See Purdue Research*, 338 F.3d at 787 & n. 16.  The Complaint makes no allegations that Affiliates are incorporated, staff any offices, own property, have employees, conduct any business, or are even registered to do business or have a registered agent in Indiana.

The only connection with Indiana that Plaintiffs allege is the existence of subsidiary U.S. Smelter.  In the case of Mueller, any connection to U.S. Smelter is three steps removed (i.e., Mueller is U.S. Smelter's great-grandparent).  Plaintiffs' Complaint says nothing from which the Court may conclude that this connection or the connection between the other two Affiliates and U.S. Smelter is any different than a typical stock ownership relationship between a parent company and a subsidiary further down a chain.  Having failed to show that Affiliates are engaged in systematic, continuous, substantial and ongoing business contacts in the State of Indiana, there is no general jurisdiction over these parties.

> **B.      Plaintiffs Have Not Established The Court's Specific Jurisdiction Over Affiliates As To This Controversy.**

In the absence of general personal jurisdiction, an action must be dismissed unless Plaintiffs establish specific jurisdiction through allegations that show the controversy is sufficiently related to each defendant's own contacts with the state of Indiana.  *LinkAmerica,* 857 N.E.2d at 968 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. 1868 (1984)). In *LinkAmerica,* the Indiana Supreme Court held that a non-resident corporation that took no action within the forum state does not have minimum contacts despite being the corporate parent of its co-defendant subsidiary.  857 N.E.2d at 970 (cited favorably in *Boyer,* 42 N.E.3d at 510).  It is well established that a parent company's ownership stake in a subsidiary is not sufficient to link the parent to a controversy such that due process requirements will be

US.116103098.01

satisfied.  *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 944 (7th Cir. 2000); *Wesleyan Pension Fund, Inc. v. First Albany Corp.,* 964 F. Supp. 1255, 1261 (S.D. Ind. 1997); *Reed v. Reid,* 980 N.E.2d 277, 304 (Ind. 2012).  The Indiana Supreme Court examined whether Indiana had personal jurisdiction over LinkAmerica, the non-resident corporate parent of its co-defendant subsidiary.  *Id*. at 968.  Unlike its subsidiary, LinkAmerica took no independent action within Indiana, had no contacts with Indiana and had no contacts with the plaintiff.  *Id*.  Despite corporate relationships between the separate entities, including having board of directors with the same members and holding meetings on the same day, this Court held that Indiana lacked jurisdiction over the parent entity, LinkAmerica. *Id*. at 970.

Similar to the parent entity in *LinkAmerica*, Affiliates' only alleged actions in Indiana here involve their signing onto an AOC with USEPA wherein U.S. Smelter agreed to perform a remedial investigation and feasibility study at the East Chicago Superfund Site.  As Plaintiffs state in their Complaint, U.S. Smelter is a wholly owned subsidiary, in one case three levels beneath Affiliates.  (Dkt. 1, Complt. at ¶¶ 22, 112.)  Instead, Plaintiffs' Complaint focuses solely on the actions of U.S. Smelter and is devoid of allegations showing that Affiliates somehow established minimum contacts within Indiana.  (*Id*. at p. 37, ¶110; p. 67, ¶ B.3.)

In fact, Plaintiffs' allegations are much sparser than those alleged in *LinkAmerica*. Referring to the AOC, Plaintiffs state generally that a PRP "may be held responsible for the acts of their subsidiaries under CERCLA when either (1) a basis exists for "piercing the veil" under traditional corporate law principles; or (2) when the parent company actually manages, directs, or conducts operations specifically related to pollution…"  (Dkt. 1, Complt. at ¶ 114.)  That assertion about CERCLA liability is far less certain than Plaintiffs acknowledge, however.  *See*

9

*generally U.S. v. Bestfoods,* 524 U.S. 51 (1998) (affirming the Sixth Circuit's conclusion that United States' CERCLA claims against the parent corporation may be dismissed on the basis that the two corporations maintained corporate formalities, but remanded because lower courts failed to evaluate whether the corporate parent qualified as an "operator" under 42 U.S.C. § 9607(a)(2)). Regardless, Plaintiffs make no attempt to allege how such legal principles could ever make Affiliates potentially liable under state law with respect to the U.S. Smelter Facility. Plaintiffs fail to allege any tortious actions by Affiliates concerning the site or actions that would impute responsibility up the corporate chain.[5]

The minimum contacts analysis turns on the relationship among the defendant(s), the forum and the litigation. *Id.* at 510. This means that *Affiliates* themselves must have taken "some action or cause[d] some injury within the state to establish a connection there." *Id.*[6] Thus, only the purposeful acts of *Affiliates*, not the acts of a plaintiff or any third party, could satisfy this requirement. *See Brockman v. Kravic,* 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002). No such acts by Affiliates are alleged in Plaintiffs' pleading.

In the absence of factual allegations demonstrating that Affiliates actually have sufficient minimum contacts with Indiana – which Plaintiffs have not even attempted to assert – Affiliates have no connection to the events giving rise to this case aside from merely being U.S. Smelter's

---

[5] Plaintiffs offer no concrete corporate veil piercing theory in the Complaint. The Court need not speculate about what facts might exist, because no basis to disregard the corporate form is alleged. Courts are reluctant to pierce the corporate veil and therefore must begin with a presumption of validity of the corporate identity. *See Secon Service Sys. v. St. Joseph Bank and Trust Co.,* 855 F.2d 406, 414 (7th Cir. 1988). Before a court may disregard the corporation form, it must consider a variety of factors including inadequate capitalization, disregard of corporate formalities, day-to-day control by shareholders, concentration of stock ownership, and commingling of assets, in determining whether veil piercing is appropriate. *Id.* Further, veil piercing is an issue of liability, which is generally distinct from jurisdictional issues. *See LinkAmerica,* 857 N.E.2d at 970. In this case, many, if not all, of the same facts relevant to the lack of the Affiliates' "minimum contacts" with Indiana also support dismissal of Plaintiffs' claims for failure to allege facts supporting a veil piercing theory.

[6] Notably, however, merely causing harm to a plaintiff located in the forum state is also not sufficient on its own to support personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 802 (7th Cir. 2014), *as corrected (May 12, 2014)* ("[T]he plaintiff cannot be the only link between the defendant and the forum.")

10

non-resident affiliates.  That fact alone cannot satisfy the standard for establishing personal jurisdiction in this matter.

Moreover, for personal jurisdiction to exist, Affiliates must have purposefully availed themselves of the privilege of conducting activities within Indiana such that they reasonably anticipated being brought before this Court.  *LinkAmerica,* 857 N.E.2d at 967.  This means that Affiliates cannot be subject to this Court's jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or of the unilateral activity of another party or third person.  *Id.*[7]  As noted above, Affiliates' only connection with Indiana outside these proceedings is that they are the non-resident indirect (Mueller and Arava) or direct (MRRC) owners of the stock of U.S. Smelter. *See Id.* at 970 (finding lack of jurisdiction where plaintiffs failed to overcome presumption of parent's separateness from its subsidiary).

Plaintiffs' only effort to establish personal jurisdiction (or liability) is their allegation that Affiliates and U.S. Smelter received "general notice letters from EPA" and subsequently entered into an AOC under which U.S. Smelter agreed to perform certain investigatory activities at the site.  (Dkt. 1, Complt. at ¶¶ 113, 115.)  That allegation is insufficient.  First, USEPA general notice letters are not formal determinations of liability by the agency.  Rather, "[t]he purpose of the general notice is to inform PRPs of their potential liability for future response costs" at a Superfund site and "to begin or continue the process of information exchange" regarding USEPA's alleged basis for liability.  *See* Superfund Program: Notice Letters, Negotiations, and

---

[7] *See also Philpot v. Mansion Am., LLC,* No. 1:14-cv-01357-TWP-DML, 2015 WL 4715215, at *2 (S.D. Ind. Aug. 7, 2015) (explaining necessity of some deliberate act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."); *Howell v. Clark Cty. Collection Serv., LLC,* No. 1:14-cv-00553-TWP-TAB, 2015 WL 1210599, at *4 (S.D. Ind. Mar. 16, 2015) (finding that defendant did not purposefully avail itself where it did not deliberately direct its activities toward Indiana's residents, especially where defendant did not conduct business, was not licensed to operate, had no employees, and did not own property in Indiana).

US.116103098.01

Information Exchange, 53 Federal Register 5300 (February 23, 1988). Second, unlike Plaintiffs'

tort law claims, CERCLA imposes strict liability on several broad classes of PRPs. *See*

*generally Burlington Northern & S.F. R. Co. v. United States,* 129 S. Ct. 1870 (2009).

Therefore, liability under CERCLA does not conclusively support liability under Plaintiffs' state

law claims.

Even viewing these allegations in Plaintiffs' favor does not demonstrate that Affiliates

"purposefully availed" or "invoked" contacts with Indiana. Rather, they responded to the broad

reach of the federal CERCLA statute and regulations and entered into an agreement with USEPA

that will help remedy the environmental harms of which Plaintiffs complain. At best, Plaintiffs

have merely identified a "random, fortuitous, or attenuated contact" or "the unilateral activity of

another party or third person." *See LinkAmerica,* 857 N.E.2d at 967. By definition, an

administrative settlement does not admit any liability or fault for the underlying claims.

(Administrative Settlement Agreement and Order on Consent for Remedial

Investigation/Feasibility Study of Operable Unit 2 of the U.S. Smelter and Lead Refinery, Inc.

Superfund Site, CERCLA Docket No. V-W-17-C0913, pg. 1 at ¶ 3 (September 20, 2017).[8]

Despite their best efforts, this type of attenuated contact cannot and does not satisfy the legal

standard for establishing jurisdiction. *See LinkAmerica,* 857 N.E.2d at 967. Accordingly,

Plaintiffs' claims against Affiliates should be dismissed for lack of personal jurisdiction.

---

[8] Similar to the Sharon Steel bankruptcy proceedings, the USEPA Order on Consent was not included as an exhibit to the Complaint; however, the Complaint does make various references to the Order on Consent and USEPA's activities at the U.S.S. Smelter Site. Accordingly, the Court may take judicial notice of the Order on Consent and related materials, including the administrative record of decision. *See* n. 1, *supra.*

US.116103098.01

**C.      Plaintiffs Fail to State A Claim For Which Relief Can Be Granted.**

**1.      Plaintiffs' Complaint does not contain sufficient factual matter to state a claim for relief that is plausible on its face.**

Notwithstanding that this case should be dismissed against Affiliates on jurisdictional grounds, Plaintiffs' Complaint also fails to meet foundational pleading standards.  The Complaint violates Rule 8(a), which requires "a short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement gives defendants "fair notice of what the…claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Additionally, Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570).

Plaintiffs have not offered any allegations specific to Affiliates other than ownership of stock or an administrative settlement with USEPA.  In terms of purposefully directed conduct, Plaintiffs refer only to alleged actions by *U.S. Smelter.*  (Dkt. 1, Cmplt. at p. 37, ¶110; p. 67, ¶ B.3.)  In other words, Plaintiffs' claims against Affiliates fail by the express terms of their Complaint.

The Complaint falls far short of the requirements espoused in *Twombly* and *Iqbal* as it lacks factual allegations regarding any action whatsoever by Affiliates.  More specifically, Plaintiffs do not allege that Affiliates had any duty to the Plaintiffs or acted in a specific manner that would cause any alleged injury, including *when*, *what*, or *how* Affiliates would have caused Plaintiffs' alleged injuries.  Moreover, Plaintiffs' claims against Affiliates fail these standards because they rely only on a vague and conclusory theory of collective responsibility.  *See Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013) (finding that a "complaint based on a theory of collective responsibility must be dismissed.")  Thus, all of Plaintiffs' claims

13

(Counts I – IV) against Affiliates fail to satisfy Rule 8(a) and, as a result, should be dismissed under Rule 12(b)(6).

> **2.      Plaintiffs fail to state a claim for negligence (Count I) against Affiliates because Affiliates never owed Plaintiffs a duty of care.**

Plaintiffs have failed to plead sufficiently the elements of a negligence claim under Indiana law.  Plaintiffs must show that Affiliates: (1) owed them a duty of care at the time the injury occurred; (2) did not conform its behavior to that standard of care; and (3) proximately caused Plaintiffs' claimed injuries by the alleged breach.  *Neal v. Cure*, 937 N.E.2d 1227, 1236 (Ind. Ct. App. 2010).   In evaluating whether a defendant owes a duty to a plaintiff, the court must balance "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns."  *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991).  Specifically, "for purposes of determining whether an act is foreseeable in the context of duty [courts] assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016) (*quoting Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)).

In this case, it is nearly self-evident that Affiliates could not have ever owed any duty of care to Plaintiffs because Affiliates have never owned or operated the U.S. Smelter Facility.  *See e.g. Neal*, N.E.2d at 1238 (holding that landlord that did not operate a dry cleaner on its property and was unaware at the time of PCE releases into groundwater was not liable under negligence to neighbors).  Affiliates merely owned stock in one another, and as to MRRC only, stock in the only company that did own and previously operate the facility, U.S. Smelter.  Plaintiffs have made no allegations to the contrary.  (Dkt. 1, Complt. at ¶112.)  Moreover, Affiliates were not even in existence when U.S. Smelter ceased operation in 1985, so it is unclear what precautions

they could have taken to avoid contamination of Plaintiffs' property. *See generally Goodwin*, 62

N.E. 2d 3d at 392.  As a result, Affiliates did not owe – and never have owed – Plaintiffs a

duty.  Accordingly, Plaintiffs have failed to state a claim for negligence.[9]

> **3.**    **Plaintiffs fail to state a claim for NIED (Count IV) against Affiliates because Plaintiffs have not alleged that they suffered a direct physical harm that resulted from *Affiliates'* negligent conduct.**

The right to recover damages for emotional distress arising from negligence is "carefully

circumscribed under Indiana jurisprudence." *Sprangler v. Bechtel*, 958 N.E.2d 458,466 (Ind.

2011).[10]   To prevail on their claims for NIED under Indiana law, Plaintiffs must allege — and

ultimately prove — that they suffered a "direct physical impact" that resulted from the negligent

conduct of another. *See Atl. Coast Airlines v. Cook,* 857 N.E.2d 989, 997 (Ind. 2006).  This is

the so-called "modified impact rule." *See id*. at 991.  For plaintiffs claiming to be victims of

negligent conduct (as opposed to bystanders), Indiana precedent is clear that some form of direct

physical impact must be pled to recover damages arising from alleged emotional distress. *Yeatts*

*v. Zimmer Biomet Holdings, Inc.,* Cause No. 3:16-CV-706-MGG, 2017 WL 1375117, at *7

(N.D. Ind. Apr. 17, 2017) (granting motion to dismiss to defendant per plaintiff's failure to allege

direct physical impact arising from statements made by e-mail).  Plaintiffs' Complaint contains

no such allegations against Affiliates.

In a case directly on point, plaintiffs in Bedford, Indiana claimed NIED against General

Motors Corporation arising from alleged exposure to PCB contamination on their property.

---

[9] Negligence also requires "proximate cause" or that the harm would not have occurred "but for" the defendant's conduct. *Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630 (Ind. 1991).  Given that Affiliates neither owned nor operated the U.S. Smelter facility and were not in existence at the time that the contamination occurred, they cannot be the proximate cause of Plaintiffs' injury in this case.

[10] Plaintiffs cannot recover damages for NIED absent negligent conduct. *See Smith v. Toney,* 862 N.E.2d 656, 659 (Ind. 2007) (outlining requirements for recovering damages for NIED, which, as a baseline, include negligent conduct).  Plaintiffs' failure to state a claim against the Affiliates for negligence is therefore fatal to their NIED claim.

*Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929 (S.D. Ind. 2009).  In *Barlow*, plaintiffs alleged "that they should recover damages for emotional distress resulting from the fear that they might become ill as a result of exposure to PCBs."  *Id.* at 941.  Specifically, they "believed" that they were exposed to PCBs and "suffered restlessness, worry, and apprehension due to [their] exposure to PCBs, the increased risk to [their] health, and contamination of [their] land." *Id.* at 933.  However, no plaintiff in *Barlow* claimed "any present personal physical injury or present health effects from the exposure to PCBs."  *Id.* at 942.  The court found "no evidence that any plaintiff [had] PCBs in his or her blood at higher than background levels" and highlighted that the plaintiffs "offered no evidence that they [had] a higher risk of disease because of exposure to PCBs."  *Id.*

Strikingly similar to *Barlow*, Plaintiffs' Complaint does not allege any actual "direct physical impact" required by the "modified impact rule" to sustain an NIED claim under Indiana law.  Although Plaintiffs offer a conclusory allegation of "direct impact," Plaintiffs do not claim any current illness from contaminants.  (Dkt. 1, Cmplt. at ¶253.)  Instead, Plaintiffs describe "fear that living on contaminated properties will exacerbate other health concerns" or "fear of contracting a future illness associated with the contamination."  (*Id.* at ¶¶ 227, 253.)  Plaintiffs' attempt to provide specific examples in the Complaint likewise do not embody the "direct physical impact" required under Indiana law, including the alleged "concern[] that lead and arsenic exposure will complicate [plaintiff's] kidney transplant," that health issues "may be exacerbated by living on or near toxic contamination," or that residents have "autoimmune disorders that are exacerbated by toxic contamination."  (*Id.* at ¶¶ 229-231).  Absent are any allegations of any current health effects caused by the contamination or even contaminants in blood higher than background levels.

16

The one exception to the "modified impact" rule applies only if a plaintiff has "witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives," also known as the "bystander rule." *Bechtel*, 958 N.E.2d at 466.  However, that exception does not apply here.  In this case, Plaintiffs allege "fear that their children, grandchildren, family members, guests, or anyone else who comes into contact with their homes will contract future illnesses associated with the contamination."  (Dkt. 1, Cmplt. at ¶¶ 253-54).  The Complaint lacks allegations regarding any current "severe injury" caused by the contaminants at issue and suffered by the class of people identified by Plaintiffs.  Failure to make these allegations is also fatal to Plaintiffs' attempted recovery under the bystander rule.  *Barlow,* 595 F. Supp. 2d at 945 (denying plaintiffs' claims for "fears that [plaintiffs]' children or grandchildren or other family members may become ill or face increased health risks because of exposure to PCBs at the plaintiffs' property.")

> ### 4.    Plaintiffs fail to state a claim for private nuisance (Count II) against Affiliates because Affiliates never operated any facility at the East Chicago Superfund Site and therefore were incapable of taking any action or making any omission that would have created a nuisance.

Plaintiffs have failed to allege sufficient facts to establish each element of private nuisance under Indiana law.  Although unclear from the complaint, private nuisance in Indiana is defined by statute.  *See A.B. v. Wal-Mart Stores, Inc.,* No. 1:14-CV-004220-RLY, 2014 WL 4965514, at *3 (S.D. Ind. Oct. 3, 2014).  Indiana defines an actionable private nuisance as whatever is: "(1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property so as essentially to interfere with the comfortable use of life or property."  Ind. Code § 32-30-6-6.  Specifically, "[p]rivate nuisance arises when a party has used his property to the detriment of the use and enjoyment of another's property."  *A.B.*, 2014 WL 4965514, at *3.  Moreover, "a nuisance claim generally contemplates an action that is

17

designed to cease or lessen the defendant's continued offensive behavior." *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 307 (Ind. Ct. App. 2010). A claim for nuisance "provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property by different landowners." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 706 (S.D. Ind. 1997).

Plaintiffs' Complaint makes no attempt to allege that Affiliates are potentially liable for nuisance. They do not allege the threshold elements for private nuisance. In particular, the Complaint does not allege Affiliates are engaged in any actions to harm Plaintiff or their property. To the contrary, they state that Affiliates are supporting USEPA's proposed remedies. As noted previously, Affiliates have never owned or operated the U.S. Smelter Facility and Plaintiffs have not made allegations to the contrary. Affiliates never have been, nor could have been, responsible for creating or abating a nuisance as to these parties. *See Rolan v. Atlantic Richfield Co.,* No. 1:16-CV-357-TLS, 2017 WL 3191791, *13-16 (granting motion to dismiss for nuisance claims by tenants of East Calumet Public Housing Complex in East Chicago against DuPont on the basis that the facility stopped producing lead and arsenic compounds).

> **5.**     **Plaintiffs fail to state a claim for trespass (Count III) against Affiliates because Affiliates never operated any facility at the East Chicago Superfund Site and therefore could not have taken any actions constituting a trespass.**

To state a claim for trespass under Indiana law, Plaintiffs must allege that they possessed the land when the trespass occurred *and* that the trespassing defendant entered the land without a legal right to do so. *KB Home,* 928 N.E.2d at 308. Plaintiffs must also allege facts showing Affiliates intentionally acted such that they "knew or were substantially certain" that contamination would migrate to the residential area. *See Martin v. Amoco Oil Co.,* 679 N.E.2d 139, 147 (Ind. Ct. App. 1997), *see also See Walker v. City of East Chicago,* No. 2:16 CV 367,

2017 WL 4340259, *9 (N.D. Ind. Sept. 20, 2017) (granting motion to dismiss for trespass claims against DuPont and Atlantic Richfield on the basis that tenants of East Calumet Public Housing Complex in East Chicago did not possess the land at the time the alleged contamination originally occurred).

Plaintiffs' Complaint is devoid of allegations that would even suggest that Affiliates operated any facility at the East Chicago Superfund Site much less entered the Plaintiffs' land without a legal right to do so.  Such allegations would be nonsensical as Affiliates were not formed until years *after* U.S. Smelter entirely ceased its operations.  Thus, it would be impossible for Affiliates to have acted at all – much less with "substantial certainty" – so as to trespass on Plaintiffs' land.  Common sense dictates that the trespass claim also should be dismissed as to each Affiliate pursuant to Rule 12(b)(6). [11]

## IV.    CONCLUSION

Affiliates respectfully request that the Court dismiss all of Plaintiffs' claims against them (Counts I – IV) for lack of personal jurisdiction under Rule 12(b)(2), for failure to state a claim for which relief can be granted under Rule 12(b)(6) and for failure to comply with Rule 8(a).

---

[11] In addition to the arguments set forth in Affiliates' Motion to Dismiss, the Affiliates also adopt and join U.S. Smelter's arguments that Plaintiffs' state-law claims of negligence, NIED, nuisance, and trespass also must be dismissed for failure to state a claim, particularly with respect to Plaintiffs' admission that the U.S. Smelter facility ceased operation in 1985.

US.116103098.01

Dated: January 22, 2018                    Respectfully submitted,

                                           /s/ Kevin M. Toner_____
                                           Kevin M. Toner, #11343-49
                                           H. Max Kelln, #30358-49
                                           Julian E. Harrell, #30661-49
                                           FAEGRE BAKER DANIELS LLP
                                           300 North Meridian Street, Suite 2700
                                           Indianapolis, IN 46204
                                           Telephone: (317) 237-1200
                                           Kevin.Toner@FaegreBD.com

                                           *Attorneys for Defendants U.S. Smelter and Lead
                                           Refinery, Inc., Mining Remedial Recovery
                                           Company, Arava Natural Resources Company, Inc.,
                                           and Mueller Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

                                           /s/ Kevin M. Toner_____
                                           Kevin M. Toner

US.116103098.01