UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CRISTOBAL ALVAREZ, *et al.*,<br>        Plaintiffs, | )<br>)<br>) |
| v. | ) CAUSE NO.: 2:17-CV.414-JVB-JPK |
| ATLANTIC RICHFIELD COMPANY, *et al.*,<br>        Defendants. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on the following motions, all of which were filed on July 31, 2020:

1. Defendant U.S. Smelter and Lead Refinery, Inc.'s Renewed Motion to Dismiss [DE 114];

2. Defendant U.S. Smelter and Lead Refinery, Inc.'s Request for Judicial Notice of Public Records in Support of Renewed Motion to Dismiss [DE 116];

3. Atlantic Richfield Company's Refiled Motion to Dismiss for Failure to State a Claim [DE 117];

4. Request for Oral Argument in Support of Atlantic Richfield Company's Refiled Motion to Dismiss [DE 119];

5. Request for Judicial Notice in Support of Atlantic Richfield Company's Refiled Motion to Dismiss [DE 120];

6. Motion to Dismiss of the DuPont Company and the Chemours Company [DE 121]; and

7. Request for Judicial Notice in Support of Motion to Dismiss of the DuPont Company and the Chemours Company [DE 122].

The motions to dismiss are fully briefed. No responses were filed to the requests for judicial notice and the request for oral argument.

The 46 plaintiffs brought suit against 8 defendants. Four defendants remain: Atlantic Richfield Company ("Atlantic Richfield"), E.I. Du Pont De Nemours and Company, the Chemours

Company (collectively with the previous defendant "DuPont"), and U.S. Smelter and Lead Refinery, Inc. ("U.S. Smelter").

## REQUEST FOR ORAL ARGUMENT

Under Northern District of Indiana Local Rule 7-5(c)(1), the Court, in its discretion, may grant or deny a request for oral argument. Finding oral argument unnecessary for the resolution of the pending motions, the Court denies the request.

## REQUESTS FOR JUDICIAL NOTICE

"The court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records—such as court orders, agency decisions, administrative body reports, and government websites—are appropriate subjects of judicial notice. *See In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J., in chambers) (court orders); *Opoka v. I.N.S.*, 94 F.3d 392, 394-95 (7th Cir. 1996) (agency decisions); *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 n.1 (7th Cir. 2016) (administrative body reports); *Pickett v. Sheridan Health Care Ctr*, 664 F.3d 632, 648 (7th Cir. 2011) (government websites). It is proper to take judicial notice that documents in the public record exist, that they say what they say, and (if applicable) that they have legal consequences. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

U.S. Smelter asks the Court to take judicial notice of (1) a November 20, 1990 order issued by the United States Bankruptcy Court for the Western District of Pennsylvania in case number 87-00207E, (2) a September 2017 administrative settlement agreement and order signed by representatives of the Environmental Protection Agency (EPA) and U.S. Smelter in

Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) docket number V-W-17-C0913, (3) the November 2012 EPA record of decision for the U.S. Smelter and Lead Refinery, Inc. Superfund Site Operable Unit 1, and (4) a June 25, 2020 EPA memorandum recommending the partial deletion of the U.S. Smelter and Lead Refinery, Inc. Superfund Site from the National Priorities List.

Atlantic Richfield asks the Court to take judicial notice of (1) the October 31, 1946 warranty deed transferring ownership from International Smelting and Refining Company to the Eagle-Picher Company, (2) the November 27, 1946 warranty deed transferring ownership from International Smelting and Refining Company to the Eagle-Picher Company, (3) the January 5, 1949 warranty deed transferring ownership from International Smelting and Refining Company to Mid-West Tar Products Corporation, and three government webpages.

DuPont asks the Court to take judicial notice of an EPA webpage and an April 8, 2009 Press Release titled "EPA adds East Chicago site to Superfund list; proposes Elkhart, Ind., site," which can be found on the EPA website.

No party has filed a response or objection to any request for judicial notice. It appears that the Court can properly take judicial notice of the fact that all of these documents exist and that they say what they say. The Court can also take judicial notice that the judicial and agency decisions have a legal effect. The Court takes such judicial notice of the documents.

The Court does not take judicial notice of any of the documents to establish a disputed fact. For example, U.S. Smelter asks the Court to take judicial notice that the residential properties in Zones 2 and 3 have been remediated such that the EPA recommended removal from the National Priorities List. U.S. Smelter would use this information to rebut Plaintiffs' allegation that contamination continues to migrate onto their properties. The Court takes judicial notice that the

EPA issued a recommendation and made statements regarding the status of remediation, but whether the statements in that recommendation are true is an improper subject for judicial notice.

**MOTIONS TO DISMISS**

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court accepts as true all well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); see also *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

**Background**

Plaintiffs allege the following. Plaintiffs are landowners whose land is located within an area of East Chicago, Indiana, placed on the EPA's Superfund National Priorities List in 2009. Atlantic Richfield had operations on property it owned in East Chicago, Indiana until the 1970s, and emissions from these operations contaminated the surrounding area with hazardous contaminants. DuPont had operations until approximately 2000 on property it still owns, and emissions from these operations contaminated the surrounding area. Though operations have ceased at DuPont's facility, migration of contaminated groundwater continues. U.S. Smelter had operations on property it owned until the 1980s, and emissions from these operations contaminated the surrounding area. Throughout their operations and continuing to the time of the filing of the

complaint, Defendants kept secret and failed to notify Plaintiffs of the contamination and the associated potential adverse health effects.

Though the land at issue was placed on the Superfund National Priorities Listing 2009, Plaintiffs were not informed of EPA soil testing results by EPA or Defendants until 2016. Plaintiffs did not know that they were living on toxic contamination until 2016. The contamination of Plaintiffs' properties has decreased the property values and potential buyers are unwilling to buy Plaintiffs' properties due to contamination. Plaintiffs have also ceased certain activities at home, such as allowing children to play outside or opening windows, and in instances where indoor contamination was found, remediation requires moving belongings and replacing upholstery and window dressings.

Certain Plaintiffs had a more than 18-month wait from learning of the contamination to the remediation of their property. The contamination of their properties have caused Plaintiffs stress and anxiety due to concerns regarding financial concerns and the health of themselves and family members.

Plaintiffs bring claims of negligence, private nuisance, trespass, and negligent infliction of emotional distress. They request relief of compensatory damages, punitive damages, reasonable attorney's fees, and costs.

**Statute of Limitations**

Indiana has a six-year statute of limitations "for injuries to property other than personal property." Ind. Code § 34-11-2-7(3). For personal injury actions, Indiana has a two-year statute of limitations. *Id.* § 34-11-2-4. "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence

should have known of the injury." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) (citing *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind. 1992)).

Because a statute of limitations argument is an affirmative defense, Plaintiffs need not anticipate and defend against it in their complaint. *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). Dismissal on a statute of limitations defense is only proper if the allegations of the complaint set forth all of the necessary elements of the defense. *Id.*

DuPont identifies Plaintiffs' allegation that by 2009 the EPA placed the area where Plaintiffs own property on the Superfund's National Priorities List. *See* (Compl. ¶ 118). However, in the immediately preceding paragraph, Plaintiffs also allege that "Defendants failed to notify residents and property owners, including Plaintiffs, of the contamination . . . and instead kept the existence of the contamination secret from Plaintiffs." *Id.* ¶ 117. A few paragraphs later, Plaintiffs allege that "[n]either EPA nor Defendants informed Plaintiffs of the results of EPA's soil testing until on or after September 14, 2016. *Id.* ¶ 123.

DuPont would have the Court consider the ruling of timeliness in *United States v. Atlantic Richfield Company*, 324 F.R.D. 187, 192 (N.D. Ind. 2018), but there the court was ruling on a motion to intervene, not a motion to dismiss. The plaintiffs there sought to intervene in a terminated CERCLA action. Here, the question is whether Plaintiffs' state law tort claims should be dismissed, and the Court cannot disregard Plaintiffs' properly pleaded allegations that Defendants kept the contamination a secret from Plaintiffs.

Plaintiffs have not alleged that they became aware of the contamination or that they should have become aware of the contamination at a time that would lead to their claims being time-barred. Instead, they allege that Defendants kept the contamination a secret and that they were not made aware of the levels of contaminants on their property until September 14, 2016, or later. This

lawsuit was filed on October 31, 2017, within both applicable statute of limitations periods from the date when Plaintiffs allege they became aware of their injuries.

### Failure to Join Required Parties

DuPont contends that the EPA and Indiana Department of Environmental Management (IDEM) are required parties under Federal Rule of Civil Procedure 19(a)(1) because their absence in this case would prejudice DuPont. Because the EPA and IDEM cannot be joined due to sovereign immunity, DuPont argues that equity and good conscience mandate dismissal of this cause of action.

Federal Rule of Civil Procedure 19(a) governs "persons required to be joined if feasible," and dictates:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

DuPont argues that the EPA has been involved with the Superfund Site for over ten years and that DuPont has an agreement with the EPA and IDEM regarding payment for the EPA's cleanup. DuPont also notes that Plaintiffs allege that the EPA did not inform Plaintiffs about the contamination.

First, Plaintiffs do not seek recovery from Defendants for the EPA's lack of information provided to Plaintiffs (or any other action or inaction of the EPA), so this does not have any

relevance to the question at hand. Next, the agreement between DuPont, the EPA, and IDEM pertains to CERCLA claims, not state law tort claims. Thus, the EPA and IDEM are not required parties. *See Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357, 2017 WL 3191791, at *19 (N.D. Ind. July 26, 2017) ("Initially, the Court notes that the governmental entities could only be required parties to the Plaintiffs' CERCLA claim. . . . Just because the governmental entities have made policy determinations specific to the remediation efforts at the USS Lead Site does not make them 'required' for purposes of the Plaintiffs' CERCLA and state law claims.").

### Collective Allegations

DuPont argues that Plaintiffs improperly make "collective allegations" that lump all of Defendants' actions together. U.S. Smelter also argues that Plaintiffs allege wrongdoing by "Defendants" as a whole that injured "Plaintiffs" collectively instead of lodging specific allegations of tortious action by U.S. Smelter that harmed each Plaintiff. A complaint comprised entirely of collective allegations would be improper. However, if sufficient allegations are made to state claims against Defendants individually, the presence of collective allegations in the complaint is not improper.

While some allegations are made against "Defendants" as a whole, other allegations identify specific defendants and their alleged actions. There is no ground for dismissing the complaint as a whole, but the Court will consider, in the context of each claim, the sufficiency of the allegations made against each defendant.

### Count I: Negligence

"Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty."

8

*Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citing *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). In Indiana, whether a duty exists is determined by balancing the relationship between the parties, the reasonable foreseeability of harm to the person injured, and public policy concerns. *Yost v. Wabash Coll.*, 3 N.E.3d 509, 520-21 (Ind. 2014).

    A.    Duty

U.S. Smelter argues that Plaintiffs have not alleged facts showing that it owed a duty of care to Plaintiffs. U.S. Smelter also argues that it owes no duty to Plaintiffs who did not own property during U.S. Smelter's operations. Atlantic Richfield argues that it owes no duty to Plaintiffs. Atlantic Richfield asserts that it ceased holding an ownership interest years before any Plaintiff is alleged to have purchased a relevant property, thus making any relationship between Atlantic Richfield and any Plaintiff too attenuated for Indiana to recognize a duty. DuPont argues that Plaintiffs have not alleged facts showing that DuPont owed any duty to Plaintiffs.

Plaintiffs respond that Defendants had the duty to not contaminate Plaintiffs' properties, thereby exposing Plaintiffs to hazardous substances. Plaintiffs also assert that, the contamination having occurred, Defendants owed Plaintiffs the duty of warning them that the contamination had occurred. *See KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 299-303, 305-06 (Ind. Ct. App. 2010); *Rolan*, 2017 WL 3191791, at *1-2; *Walker v. City of East Chicago*, No. 2:16-CV-367, 2017 WL 4340259, at *1 (N.D. Ind. 2017).

The unallowed claims in *Rolan* are inapposite because the *Rolan* claims that were disallowed for lack of duty were brought by plaintiffs who were subsequent owners of the same land previously owned by the allegedly contaminating party. The *Rolan* court found no duty to subsequent owners of the same property. Here, Plaintiffs are owners of neighboring property.

9

*KB Homes* establishes that a property owner who processes hazardous materials on its land owes a duty to future owners of neighboring properties not to contaminate neighboring property. 928 N.E.2d 299-300, 305. Thus, the necessary allegation is that Plaintiffs own the property, not that they owned the property at the time that each Defendant was operating and allegedly contaminating. Plaintiffs have sufficiently alleged the duty to not contaminate.

Regarding the duty to warn, U.S. Smelter argues that Plaintiffs' allegations of secrecy and nondisclosure are factually incorrect. Resolving the truth of the allegations is not proper at the motion to dismiss stage, where the properly pleaded allegations in the complaint are accepted as true. DuPont argues that it could reasonably assume Plaintiffs knew of the contamination when the EPA placed the Superfund Site on the national priorities list. Still Plaintiffs have alleged that Defendants kept the contamination a secret from Plaintiffs. (Compl. ¶ 117). Assuming the allegations are true, which the Court does on a motion to dismiss, DuPont could not reasonably assume Plaintiffs knew of the contamination because DuPont was keeping that matter a secret from Plaintiffs. These arguments fail, and the allegation of duty to warn will be permitted to proceed.

B.   *Breach of Duty*

U.S. Smelter argues that Plaintiffs fail to allege that it was reasonably foreseeable that its operations would have adverse offsite impacts.[1] While "imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm," *Buchanan ex rel. Buchanan v. Vowell*, 926 N.E.2d 515, 520 (Ind. Ct. App. 2010), foreseeability is not an additional element that must be alleged to state a negligence claim. *See Ryan*, 72 N.E.3d 913 (stating the elements of a negligence claim). At this procedural posture on the facts alleged, the Court will not hold that the harm was unforeseeable.

---

[1] U.S. Smelter notes that the area in question had not been developed for residential use at the time U.S. Smelter was operating, but that is not a fact alleged in the Complaint.

Atlantic Richfield further argues that because Plaintiffs have not alleged that Atlantic Richfield violated a statute Plaintiffs cannot show that Atlantic Richfield was negligent. Though negligence per se requires a statutory violation, *see Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018), negligence in general does not need to be based on a statutory violation.

Atlantic Richfield and DuPont argue that Plaintiffs have not alleged breach of duty or, at least, have not alleged facts to support the violation of any duty. To the contrary, Plaintiffs allege negligent handling, storing, using, and disposing of hazardous substances, (Compl. ¶ 237), and the generation of airborne emissions, leaked contaminants, and contaminated fill material, *id.* at ¶¶ 105, 107. Plaintiffs further allege that these contaminants reached and contaminated Plaintiffs' properties and groundwater. *Id.* Plaintiffs have alleged breach of duty.

U.S. Smelter argues that there are no specific allegations of contamination at the properties of Plaintiffs Berry, Kresich, Trambles, and Fowler. To the contrary, Plaintiffs alleged lead and/or arsenic contamination of the properties of Plaintiffs Berry, Kresich, Trambles, and Fowler in paragraphs 128, 142, and 158 of the complaint. The allegations are that the levels were below the threshold for mandatory EPA remediation, (Compl. ¶¶ 128, 142, 158), but that these Plaintiffs were harmed, for example by diminution in property value, the costs of remediating the contamination, and interference with reasonable property use, (Compl. ¶¶ 66, 80, 95).

U.S. Smelter also argues that the allegations in the complaint are not specific enough to put U.S. Smelter on notice regarding how its actions could have harmed any specific plaintiff or regarding when any alleged harm occurred. This argument fails. Plaintiffs allege that U.S. Smelter operated at 5300 Kennedy Avenue in East Chicago from approximately 1906 to 1985. (Compl. ¶ 110). Plaintiffs further allege that U.S. Smelter's facilities generated airborne emissions of

11

contaminants, including lead, arsenic, and polycyclic aromatic hydrocarbons (PAHs), which contaminated Plaintiffs' properties. *Id.* Additionally, Plaintiffs allege that U.S. Smelter stockpiled waste containing hazardous contaminants and annually spread this waste over 21 acres of wetlands, which leaked and/or spilled the contaminants into the surrounding area, thus contaminating Plaintiffs' groundwater and properties. *Id.* These allegations are sufficient.

### C. Proximate Causation

U.S. Smelter also argues that Plaintiffs have not sufficiently pleaded proximate causation, noting that Plaintiffs have not alleged that but for U.S. Smelter's actions the contamination would not have occurred. This argument fails because Indiana does not require that a defendant be *the* proximate cause of damages in a negligence action; it requires only that a defendant be *a* proximate cause. *Rolan*, 2017 WL 3191791, at *18; *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010).

DuPont argues that the allegations against it are conclusory and do not pass the requirements of *Twombly* and *Iqbal*. As with U.S. Smelter's breach of duty argument, this argument fails. Plaintiffs allege that DuPont operated at 5215 Kennedy Avenue in East Chicago from approximately 1893 to 2000. (Compl. ¶ 107). Plaintiffs further allege that Dupont's facilities generated airborne emissions of contaminants, including lead, arsenic, and PAHs, which contaminated Plaintiffs' properties and groundwater. *Id.* These allegations are sufficient.

### D. Damages

DuPont argues that damages have not been sufficiently alleged. Plaintiffs counter that they have alleged decreased market value, limitation of the use and enjoyment of their property, increased health risks, and emotional distress. The Court agrees that Plaintiffs have alleged

damages sufficient to survive a motion to dismiss. *See, e.g.*, (Compl. ¶ 222 ("Plaintiffs have thus stopped letting their children and grandchildren lay outside.")).

In summary, Plaintiffs have stated a claim for negligence against Defendants. Defendants' motions to dismiss the negligence claim is denied.

**Count II: Private Nuisance**

Indiana code § 32-20-6-6 provides: "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

    A.    *Ongoing Nature*

U.S. Smelter, Atlantic Richfield, and DuPont argue that there is no actionable nuisance claim because their operations—and, therefore, any contamination—have ceased. Defendants argue that a nuisance claim requires current, ongoing activity.

Plaintiffs counter that, though Defendants may have ceased operations, the migration of contamination resulting from Defendants' past actions continues. In Plaintiffs' view, this means that the nuisance is ongoing. Because a nuisance action "may be maintained so long as the nuisance is permitted to continue," Plaintiffs argue that they have stated valid nuisance claims. *See Stickdorn v. Zook*, 957 N.E.2d 1014, 1022 (Ind. Ct. App. 2011).

More specifically, Plaintiffs allege that contaminated dust and soil continues to enter Plaintiffs' homes, contaminated groundwater continues to seep into Plaintiffs' basements and drainage systems, and DuPont continues to fail to control the hazardous substances on its property which then leak or spill onto Plaintiffs' properties. (Compl. ¶¶ 105-111, 167, 240, 247). Plaintiffs bolster their argument with citation to the Massachusetts state court decision in *Taygeta Corp. v.*

13

*Varian Assocs., Inc.*, 763 N.E.2d 1053 (Mass. 2002), in which continued migration of hazardous material into groundwater was found sufficient for a nuisance claim even though the activity which released the hazardous material had ceased years prior.

*Taygeta* may be an accurate statement of Massachusetts law, but in Indiana, "[a] nuisance claim generally contemplates an action that is designed to cease or lessen the defendant's *continued offensive behavior*." *K.B. Home Indiana Inc.*, 928 N.E.2d at 307 (emphasis added) (citations omitted); *accord Rolan*, 2017 WL 3191791, at *15. Though the migration of the pollutants is alleged to be ongoing, this is not an ongoing behavior which the Court can enjoin regarding U.S. Smelter and Atlantic Richfield. Plaintiffs allege that U.S. Smelter and Atlantic Richfield owned their respective relevant properties in the past, not currently. *See* (Compl. ¶¶ 104, 110). There is no nuisance claim against U.S. Smelter or Atlantic Richfield.

Regarding DuPont, however, there is also the allegation that it currently owns the relevant property and "[a]fter operations ceased, DuPont continues, *and to this day continues*, to fail to control hazardous substances on its property, . . . which leak and/or spill into the surrounding area, including Plaintiffs' properties." (Compl. ¶ 107, 108). While DuPont may no longer be generating contaminants, permitting previously generated contaminants to migrate to Plaintiffs' properties is an allegedly ongoing behavior that the Court can enjoin, so the nuisance claim may proceed against DuPont.

B. Harm

DuPont also argues that Plaintiffs have not alleged sufficient harm. Plaintiffs have alleged that their groundwater is contaminated and that contaminated dust and soil enters Plaintiffs' houses. Plaintiffs have alleged the health risks associated with the contaminants. This is more than

"mere annoyance and disruption." *See Baker v. Westinghouse Elec. Corp.*, 70 F.3d 951, 955 (7th Cir. 1995). Plaintiffs have alleged sufficient harm to state a nuisance claim against DuPont.

### Count III: Trespass

"A plaintiff is generally required to establish two elements when pursuing a trespass claim. First, the plaintiff must show that he possessed the land when the alleged trespass occurred. Second, the plaintiff must demonstrate that the trespassing defendant entered the land without a legal right to do so." *KB Home Indiana Inc.*, 928 N.E.2d at 308 (citing *Garner v. Kovalak*, 817 N.E.2d 311, 313 (Ind.Ct.App.2004)). "[I]t is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass." *Hawke v. Maus*, 226 N.E.2d 713, 716 (1967). "A defendant can be liable for trespass if he releases noxious material that travels onto and damages another person's property." *Neal v. Cure*, 937 N.E.2d 1227, 1235 (Ind. Ct. App. 2010) (citing *Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 582 (Ind. Ct. App. 1995)).

*A.    Timing*

All Defendants put forth argument related to the timing of the alleged trespass. Atlantic Richfield and U.S. Smelter argue that Plaintiffs must have owned their properties when those defendants were operating in order to have a viable trespass claim. DuPont also argues that Plaintiffs have not alleged when the trespass occurred.

Plaintiffs' response to this argument is similar to its defense of the nuisance claim. Though Defendants' activities which introduced contaminants to Defendants' properties may have ceased, the migration of those contaminants onto Plaintiffs' property is ongoing. Plaintiffs also argue that some Plaintiffs acquired their properties while Defendants' operations were ongoing.

The pertinent question is whether the harmful *act* is continuing, not whether the *harm* is ongoing. *See Kerr v. City of South Bend*, 48 N.E.3d 348, 355 (Ind. Ct. App. 2015); *see also Deibel*

15

*v. Hoeg*, No. 1:18-CV-3791, 2020 WL 6681574, at *9 (S.D. Ind. Nov. 12, 2020) (citing *Ind. Pipe Line Co. v. Christensen*, 143 N.E. 596 (1924); *Stickdorn*, 957 N.E.2d 1014).

Defendants could only have trespassed through contaminants released from their property while they controlled their property (and, thus, the contaminants on and generated at the property). *See Lever Bros. Co.*, 655 N.E.2d at 582 n.2 (citing *Barber v. Cox Commc'n, Inc.*, 629 N.E.2d 1253, 1259 (Ind. Ct. App. 1994) (holding entity cannot be liable if it no longer possesses or controls the property at issue), *abrogated in part on other grounds by Rausch v. Reinhold*, 716 N.E.2d 993, 1001 n.9 (Ind. Ct. App. 1999)). According to the complaint, Atlantic Richfield owned and operated its facility "until in or around 1972," (Compl. ¶ 104), and U.S. Smelter owned and operated its facility "from approximately 1906 to 1985," *id.* ¶ 110.

Plaintiffs Garza, Kresich, Donald Mosley, Sanchez, Sullivan, Victor, Dwayne Washington, and Zic are alleged to have acquired their ownership interest prior to 1972. (Compl. ¶¶ 34, 41, 48, 53, 55, 57, 58, 62). The other Plaintiffs have not alleged that they possessed their land when Atlantic Richfield owned its property and therefor their claims for trespass against Atlantic Richfield do not state a claim upon which relief can be granted.

Plaintiffs Garza, Gibbs, Curtis and Nettie Hill, Kresich, Donald Mosley, Sanchez, Spann, Sullivan, Victor, Dwayne Washington, and Zic are alleged to have acquired their ownership interests by 1985. (Compl. ¶¶ 34, 35, 38, 41, 48, 53, 54, 55, 57, 58, 62). The other Plaintiffs have not alleged that they possessed their land when U.S. Smelter owned its property and therefor their claims for trespass against U.S. Smelter do not state a claim upon which relief can be granted.[2]

---

[2] Plaintiffs Alvarez, Berry, Boleware, Braden, Crymes, Foster, Garcia, Harris, Terrence Hill, Jimenez, Johnson, Lindsay, Locklear, Lopez, McFerrin, Morris, Raymond Mosley Peterson, Robinson, Trambles and Fowler, Isaac Washington, Washington-Brown, and Willis are alleged to have acquired their ownership interests after Atlantic Richfield and U.S. Smelter ceased operations. There is no allegation of when Plaintiffs Artis, Brooks, Luckett, and Muniz-Garza acquired their ownership interests in their properties.

### B. Intent

However, the Court's consideration of the trespass claim does not end with the timing of Plaintiffs' and Defendants' ownership. U.S. Smelter and DuPont contend that Plaintiffs failed to allege the necessary intentionality element of their trespass claim. The trespassing act must be an intentional action, but the trespasser need not intend to commit trespass. Instead, "it is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) (quoting *Hawke*, 226 N.E.2d at 716). U.S. Smelter argues that knowledge of the certain or substantially certain migration is necessary, citing *Martin v. Amoco Oil Co.*, 679 N.E.2d 139, 147 (Ind. Ct. App. 1997).[3] In *Martin*, the trial court had held that intent to refine oil was sufficient to support a claim of intentional trespass where oil had migrated onto the plaintiffs' properties. The appellate court reversed, finding that intent requires either the desire for the trespass to occur or the knowledge that the trespass was certain or substantially certain to occur. *Id.* at 147 (citing *Bradley v. American Smelting and Refining*, 709 P.2d 782 (1985)). Plaintiffs have not alleged that Defendants desired the alleged contaminants to migrate to Plaintiffs' properties or that Defendants had knowledge that the migration was certain or substantially certain. Accordingly, Plaintiffs have not pleaded the intent element of a trespass claim.

### Count IV: Negligent Infliction of Emotional Distress

"[A]ctions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives . . . or (2) suffered a direct

---

[3] Indiana's supreme court granted transfer of this decision but summarily affirmed the court of appeals on this point, which leaves this part of the decision as if transfer were not granted. *Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 386 & n.4 (Ind. 1998).

impact." *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) (citing *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 998 (Ind. 2006)). Plaintiffs' NIED claim is premised on direct impact, not on bystander status.

"[T]he defendant's negligence in breaching a legal duty is a required predicate." *Id.* The argument that Plaintiffs have not stated an NIED claim because they have not stated an underlying negligence claim fails according to the Court's conclusion, above, that Plaintiffs have stated a claim of negligence against all Defendants.

DuPont contends that Plaintiffs have pleaded no more than conclusory allegations. Relatedly, U.S. Smelter and Atlantic Richfield assert that Plaintiffs have not alleged facts supporting a direct impact and, thus, the NIED claim must fail. In *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929 (S.D. Ind. 2009), in which the court was ruling on a motion for summary judgment, "restlessness, worry, and apprehension" due to environmental contamination were not sufficient to support an NIED claim absent "any personal physical injury or present health effects" or higher risk of disease resulting from exposure to the contamination. *Id.* at 933, 942. Per *Barlow*, "present physical injury or present health effects from exposure" is required, not a fear that future health issues or complications may arise. *Id.* at 942. However, the *Barlow* court suggested that an increased health risk would be sufficient for direct impact. *Id.* at 943. Here, Plaintiffs allege that lead, arsenic, and PAH contamination pose various specific health risks and that Plaintiffs have experienced significant emotional distress regarding fear that Defendants' contamination of Plaintiffs' properties has affected Plaintiffs' health. (Compl. ¶ 4, 254). At the motion to dismiss stage, these allegations are enough to allege a direct impact. *But see Atl. Coast Airlines*, 857 N.E.2d at 1000 (affirming summary judgment of an NIED claim "[b]ecause the physical impact in this case was slight to nonexistent").

**Punitive Damages**

DuPont contends that punitive damages are improper against it because there are no alleged facts which, if true, show that DuPont acted with fraud, malice, gross negligence, or oppression or that punitive damages are in the public interest.

Plaintiffs argue that their allegations that DuPont knew about the hazardous contamination of Plaintiffs' property for decades and that they failed to warn Plaintiffs about it. In Plaintiffs' view, these allegations permit an inference that Defendants acted in a willful and wanton manner and in reckless indifference to Plaintiffs' safety and property rights.

Under Indiana law, punitive damages are available for tort claims where there was malice, fraud, gross negligence, or oppressive conduct. *See Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 983 (Ind. 1993). The Court agrees with Plaintiffs that the allegations of the complaint are sufficient to support a request for punitive damages.

**CONCLUSION**

Based on the foregoing, the Court hereby:

1. **GRANTS in part** and **DENIES in part** Defendant U.S. Smelter and Lead Refinery, Inc.'s Renewed Motion to Dismiss [DE 114];

2. **GRANTS** Defendant U.S. Smelter and Lead Refinery, Inc.'s Request for Judicial Notice of Public Records in Support of Renewed Motion to Dismiss [DE 116];

3. **GRANTS in part** and **DENIES in part** Atlantic Richfield Company's Refiled Motion to Dismiss for Failure to State a Claim [DE 117];

4. **DENIES** the Request for Oral Argument in Support of Atlantic Richfield Company's Refiled Motion to Dismiss [DE 119];

5. **GRANTS** the Request for Judicial Notice in Support of Atlantic Richfield Company's Refiled Motion to Dismiss [DE 120];

6. **GRANT in part** and **DENIES in part** the Motion to Dismiss of the DuPont Company and the Chemours Company [DE 121]; and

7. **GRANTS** the Request for Judicial Notice in Support of Motion to Dismiss of the DuPont Company and the Chemours Company [DE 122].

The negligence claim and negligent infliction of emotional distress claim may proceed against all Defendants. The nuisance claim is dismissed as to Atlantic Richfield and U.S. Smelter and may proceed against DuPont. The trespass claim is dismissed as to all Defendants. The request for punitive damages remains active.

    SO ORDERED on July 26, 2021.

                                      s/ Joseph S. Van Bokkelen
                                      JOSEPH S. VAN BOKKELEN, JUDGE
                                      UNITED STATES DISTRICT COURT