# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

CRISTOBAL and THERESA ALVAREZ,
CYTHERIA ARTIS, PAMELA BERRY,
WILLIAM BOLEWARE, EARLIE BRADEN,
ANNIE BROOKS, DEVIN L. and LINDA
CRYMES, EZELL and ALICE FOSTER,
WILLIAM GARCIA, CARMEN GARZA,
HARRISON GIBBS, BERTERESA HARRIS,
TERRANCE HILL, CURTIS and NETTIE
HILL, SARA and MAURO JIMENEZ,
EMMA JOHNSON, FRANK KRESICH,
CHINITA LINDSAY, LORI LOCKLEAR,
MARITZA LOPEZ, WILLIAM LUCKETT,
ANGELA MCFERRIN, MARGO MORRIS,
DONALD MOSLEY, RAYMOND MOSLEY,
SANDRA MUNIZ-GARZA, MELISSA
PETERSON, NATALIE ROBINSON, JOSE
and NATALIA SANCHEZ, MADELEINE
A.P. SPANN, JOHN and DELPHINE
SULLIVAN, MICHEAL TRAMBLES and
CHANTHINI FOWLER, BERNICE VICTOR,
DWAYNE WASHINGTON, ISAAC
WASHINGTON, JACQUELINE
WASHINGTON-BROWN, SARAH WILLIS,
and BETTY ZIC,

        Plaintiffs

  v.

ATLANTIC RICHFIELD COMPANY, E.I.
DU PONT DE NEMOURS AND COMPANY,
THE CHEMOURS COMPANY, U.S.
SMELTER AND LEAD REFINERY, INC.,
d/b/a U.S.S. LEAD REFINERY, INC.,

     Defendants

CIVIL ACTION NO. 2:17-cv-00414-JVP-JPK

1

## DEFENDANT U.S. SMELTER AND LEAD REFINERY, INC.'S
## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant U.S. SMELTER AND LEAD REFINERY, INC., d/b/a U.S.S. LEAD

REFINERY, INC., ("U.S. Smelter") for its Answer to Plaintiffs' Complaint,[1] states and alleges

as follows:

**1.      Plaintiffs bring this case to recover for damage done to their properties and emotional distress caused by Defendants, who owned and/or purchased lead refineries and other manufacturing processes in the Calumet neighborhood of East Chicago, Indiana, and who subjected Plaintiffs and Plaintiffs' properties to decades of continuous toxic contamination that continues to this day.**

**ANSWER:** Denied. This introduction is a rhetorical statement of the case to which no

response is required. To the extent that a response is required, U.S. Smelter lacks sufficient

information to either admit or deny the allegations that relate to the Plaintiffs or other Defendants

and therefore denies the same. U.S. Smelter denies all remaining allegations as to U.S. Smelter.

**2.      For decades, Defendants' lead smelting, lead refining, and other manufacturing processes wreaked environmental havoc in the Calumet neighborhood of East Chicago.**

**ANSWER:** Denied.

**3.      Defendants, flouting environmental laws and disregarding the safety and property interests of nearby residents, generated airborne emissions of contaminants from plant stacks and also leaked and/or spilled hazardous contaminants, including lead, arsenic, polycyclic aromatic hydrocarbons ("PAHs"), and other hazardous contaminants, including but not limited to cadmium, antimony, and mercury, into the surrounding area, thereby polluting the soil, groundwater, and interiors of Plaintiffs' homes with extremely dangerous levels of these hazardous contaminants.**

**ANSWER:** Denied.

**4.      Lead contamination is associated with severe health risks, including various organ contamination is associated with an increased risk of the development of skin, lung, and liver cancer, as well as lymphoma. PAHs are associated with cataracts, kidney and**

---

[1] As modified by Plaintiffs' Notice of Voluntary Dismissal of U.S. Smelter Affiliates [Dkt. 73] and the Court's Opinion and Order dismissing Counts II and III of the Complaint [Dkt. 157].

US.134152219.01

liver damage, and jaundice, and an increased risk of skin, lung, bladder, and gastrointestinal cancers.

**ANSWER:** Denied. Plaintiffs' broad summary of medical and scientific literature lacks

quantification and misstates and falsely describes such evidence.

5.      **Environmental contamination, even once remediated, also reduces property values and makes it difficult, if not impossible, for homeowners to sell their properties.**

**ANSWER:** Denied.

6.      **Despite Defendants' knowledge of the dangers posed by such contamination to the health and property of residents living near their facilities, and future residents living near on or near their facilities, including Plaintiffs, Defendants failed to warn area residents, including Plaintiffs, of the contamination. Defendants entirely failed to communicate anything regarding the contamination to the community in which they operated their facilities in, and they never disclosed to Plaintiffs the fact and extent of the contamination nor the dangers it posed. Plaintiffs did not know and had no reason to know that their health and properties were at risk.**

**ANSWER:** Denied.

7.      **Defendants have never voluntarily agreed to remediate the contamination themselves.**

**ANSWER:** Denied. The allegations in Paragraph 7 are vague, ambiguous, and contrary

to evidence. Plaintiffs improperly group together all Defendants in a vague and misleading

manner. U.S. Smelter is without knowledge or information to either admit or deny the

allegations, particularly those that relate to other Defendants and therefore denies the same. U.S.

Smelter further states that it has spent millions of dollars on investigation and remediation at the

Superfund Site since the early 1990s. Without admitting the truth of the matters asserted therein,

Plaintiffs' Complaint acknowledges *infra* in Paragraph 115 that U.S. Smelter voluntarily entered

into an Administrative Settlement Agreement and Order on Consent for Remedial

Investigation/Feasibility Study of Operable Unit 2 of the U.S. Smelter and Lead Refinery, Inc.

Superfund Site, under which U.S. Smelter agreed to conduct certain remedial investigations of

3

the groundwater at the Superfund Site and the soil in the area where the facility formerly

operated at 5300 Kennedy Avenue in East Chicago, Indiana.

**8.      Rather, because of the severity of Defendants' contamination and the risks such contamination poses to residents' health, the United States Environmental Protection Agency ("EPA") placed the area where Plaintiffs own properties on the Superfund's National Priorities List (the "Superfund Site"), triggering EPA's duty to investigate, select, and execute a remediation plan under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601.**

**ANSWER:** The allegations in Paragraph 8 are vague and ambiguous. Paragraph 8

improperly groups together all Defendants to ascribe individual conduct to each of them and

ignores nonparties to this action who performed similar industrial operations during the same

time periods. U.S. Smelter lacks sufficient information to either admit or deny the allegations as

to other parties and as to the motives of EPA. To the extent that Paragraph 8 attempts to allege

conduct by U.S. Smelter, U.S. Smelter denies those allegations. U.S. Smelter is also without

sufficient information to admit or deny whether each plaintiff owns property within the

Superfund Site. U.S. Smelter admits that certain areas within East Chicago have been designated

by EPA as the Superfund Site. U.S. Smelter denies all remaining allegations.

**9.      EPA also kept residents in the dark about the contamination for years, and has only recently—and haphazardly—provided Plaintiffs with information regarding the contamination and the risks it poses to their health and properties.**

**ANSWER:** Denied.

**10.      Since they first learned of Defendants' contamination, the community has held hundreds of meetings to address the remediation process. Though many of those meetings have been attended by EPA and other government representatives, to the best of Plaintiffs' knowledge, not one person representing Defendants has ever attended a community meeting or otherwise provided outreach to the community regarding the contamination Defendants caused.**

**ANSWER:** Denied. The allegations in Paragraph 10 are vague and ambiguous.

Paragraph 10 groups together multiple Defendants to ascribe individual conduct. U.S. Smelter

lacks sufficient information to either admit or deny the allegations as to other parties and denies

US.134152219.01

the same. To the extent that the allegations in Paragraph 10 are directed as U.S. Smelter, U.S.

Smelter denies those allegations. Further, U.S. Smelter states that the Plaintiffs' allegations in

Paragraph 10 misstate the role of community involvement in the CERCLA-process and

misconstrue EPA and other government representatives' obligations as the primary community

involvement liaison at this Superfund Site.

**11.     The combination of contamination, inaction, and failure to inform has created wide-spread anxiety among the residents who own homes at the Superfund Site, including Plaintiffs. Their property values have plummeted, and they cannot sell their homes. Worse, they constantly worry about the health and safety of themselves and their families. They no longer let their children play outside or let their grandchildren visit, and they are left to wonder whether the high incidents of respiratory issues, kidney disorders, cancer, asthma, and learning disabilities that occur frequently in their community were caused by lead and arsenic poisoning or other contaminants endemic to the Superfund Site.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 11, and therefore denies the same.

**12.     Once Defendants learned that it was even reasonably possible that they were responsible for contaminating residents' homes with lead, arsenic, and other hazardous contaminants, the standard of care, consistent the most basic level human decency, required them to reach out to the potential victims, warn residents of the issues, advise residents on how to protect themselves, and assist in remediation efforts. Instead, decades later, to the best of Plaintiffs' knowledge, Defendants still have provided past and present residents living in the contaminated area, including Plaintiffs, with absolutely no acknowledgment of or information regarding the contamination.  Fear of liability is no excuse for silence or inaction. No one needs to wait to be sued before fixing—or at least attempting to fix—the mess one creates. The standard of care should not be measured against the all too common practice of corporate bad actors who hunker down, obfuscate, and deflect responsibility. Defendants have failed to act with any level of decency, willfully and wantonly violating the standard of care they owe Plaintiffs.**

**ANSWER:** Denied. The allegations in Paragraph 12 are vague and ambiguous. Plaintiffs

improperly attempt to group together all Defendants to ascribe individual conduct. U.S. Smelter

lacks sufficient information to either admit or deny the allegations as to other Defendants and

therefore denies the same. To the extent that allegations in Paragraph 12 are directed at U.S.

Smelter, U.S. Smelter denies those allegations.  Furthermore, U.S. Smelter has been actively

US.134152219.01

involved in investigation and remediation of the Superfund Site since the early 1990s. *See also* Answer to Paragraph 7, *supra,* which is restated and incorporated herein.  U.S. Smelter has complied with any and all orders and agreements with EPA regarding investigation and remediation of the Superfund Site, to the extent required by law. Information regarding the Superfund Site, including the results of various investigations, is and has been publicly available.

**13.     Plaintiffs thus bring this action to recover for the damage done to their properties and for the emotional distress caused by such damage, against the entities who either directly caused the contamination to their properties and/or neighborhood or who are successors in liability to such entities.**

**ANSWER:** Paragraph 13 contains a rhetorical statement of the reason for this lawsuit and does not contain any allegations that require an answer or denial.

**14.     Defendant Atlantic Richfield Company ("ARCO") is a corporation organized under the laws of Delaware, with its principal place of business in California. ARCO is authorized to do business in Indiana and regularly transacts business in Lake County, Indiana. ARCO is a successor in liability to International Lead Refining Company, International Smelting Company, International Smelting and Refining Company, Anaconda Lead Products Company, Anaconda Copper Mining Company, and The Anaconda Company. BP Amoco p.l.c. ("BP") acquired ARCO in April 2000, and ARCO transferred substantially all of its retail and refining assets to BP at that time. BP assumed the environmental liabilities of the assets it acquired and became the successor in interest to ARCO.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 14, and therefore denies them.

**15.     Defendant Tesoro Corporation ("Tesoro") is a corporation organized under the laws of Delaware, with its principal place of business in Delaware. Tesoro is authorized to do business in Indiana and regularly transacts business in Lake County, Indiana. Tesoro acquired ARCO and substantially all of its assets from BP in 2013. Pursuant to the Purchase and Sales Agreement, Tesoro assumed the environmental liabilities of the assets it acquired and became the successor in interest to ARCO and BP.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 15, and therefore denies them.

**16.     International Lead Refining Company, International Smelting Company, International Smelting and Refining Company, Anaconda Lead Products Company,**

US.134152219.01

Anaconda Copper Mining Company, The Anaconda Company, ARCO, BP, and Tesoro are collectively referred to throughout the Complaint as "ARCO."

**ANSWER:** Paragraph 16 does not contain any factual allegations that require an answer

or denial.

17.     Defendant E.I. du Pont de Nemours and Company ("DuPont") is a corporation organized under the laws of Delaware, with its principal place of business in Delaware. DuPont is authorized to do business in Indiana and regularly transacts business in Lake County, Indiana.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 17, and therefore denies them.

18.     Defendant The Chemours Company ("Chemours") is a corporation organized under the laws of Delaware, with its principal place of business in Delaware. Chemours is authorized to do business in Indiana and regularly transacts business in Lake County, Indiana.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 18, and therefore denies them.

19.      Chemours was a subsidiary of DuPont and was successor in interest to DuPont's environmental liabilities. DuPont recently restructured and created Chemours as a separate entity. Chemours has assumed at least some portion of DuPont's liability.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 19, and therefore denies them.

20.     Defendants DuPont and Chemours are collectively referred to throughout the Complaint as "DuPont."

**ANSWER:** Paragraph 20 does not contain any factual allegations that require an answer

or denial.

21.     Defendant U.S. Smelter and Lead Refinery, Inc., d/b/a U.S.S. Lead Refinery, Inc. ("U.S.S. Lead") is a corporation organized under the laws of Maine, with its principal place of business in Utah. U.S.S. Lead is authorized to do business in Indiana and regularly transacts business in Lake County, Indiana.

7

**ANSWER:** U.S. Smelter admits the allegations contained in the first two sentences

within Paragraph 21. U.S. Smelter denies that it regularly transacts business, or any business, in

Lake County, Indiana.

**22.     Defendant Mining Remedial Recovery Company ("MRRC") is a corporation organized under the laws of Delaware, with its principal place of business in Tennessee. U.S.S. Lead is a wholly-owned subsidiary of MRRC.**

**ANSWER:** Objection. MRRC has been dismissed as a Defendant in this case and

therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018

Voluntary Dismissal of U.S. Smelter Affiliates).

**23.     Defendant Arava Natural Resources Company, Inc. ("Arava") is a corporation organized under the laws of Delaware, with its principal place of business in Utah. MRRC is a wholly-owned subsidiary of Arava.**

**ANSWER:** Objection. Arava has been dismissed as a Defendant in this case and

therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018

Voluntary Dismissal of U.S. Smelter Affiliates).

**24.     Defendant Mueller Industries, Inc. ("Mueller") is a corporation organized under the laws of Delaware with its principal place of business in Tennessee. Arava is a wholly-owned subsidiary of Mueller.**

**ANSWER:** Objection. Mueller has been dismissed as a Defendant in this case and

therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018

Voluntary Dismissal of U.S. Smelter Affiliates).

**25.     Plaintiffs Cristobal and Theresa Alvarez are citizens of the State of Indiana and reside in East Chicago, Indiana. The Alvarezes own the property located at 4714 Carey Street, East Chicago, Indiana and have lived there since they purchased the property in or around 2001. EPA sampled the soil at the Alvarezes' property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at the Alvarezes' property.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 25, and therefore denies them.

US.134152219.01

26. **Plaintiff Cytheria Artis is a citizen of the State of Indiana and resides in East Chicago, Indiana. Cytheria Artis and her mother, Tranece, own the property located at 443 Vernon Avenue, East Chicago, Indiana. Tranece Artis purchased the property in or around 1955, and raised her family, including Cytheria, there. Tranece Artis currently lives on the property. EPA sampled the soil at the Artis's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 26, and therefore denies them.

27. **Plaintiff Pamela Berry is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Berry owns the property located at 4722 Carey Street, East Chicago, Indiana and has lived there since she purchased the property in or around 1999.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the factual

allegations in Paragraph 27 because U.S. Smelter does not have sufficient knowledge regarding

the Plaintiffs' personal circumstances or the EPA's actions.

28. **Plaintiff William Boleware is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Boleware owns the property located at 4829 Drummond Street, East Chicago, Indiana and has lived there since he purchased the property in or around 1993. EPA sampled the soil at Mr. Boleware's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Mr. Boleware's property.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 28, and therefore denies them.

29. **Plaintiff Earlie Braden is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Braden owns the property located at 508 East 151st Street, East Chicago, Indiana and has lived there since her mother purchased the property in or around 1950. Ms. Braden's mother transferred her interest in the property to Ms. Braden in or around 1993. EPA sampled the soil at Ms. Braden's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 29, and therefore denies them.

US.134152219.01

30. **Plaintiff Annie Brooks is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Brooks owns the property located at 4741 Alexander Avenue, East Chicago, Indiana. Ms. Brooks' mother purchased the property in or around 1977 and transferred her interest to Ms. Brooks. EPA sampled the soil at Ms. Brooks's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 30, and therefore denies them.

31. **Plaintiffs Devin L. and Linda Crymes are citizens of the State of Indiana and reside in East Chicago, Indiana. The Crymes own the property located at 4915 Alexander Avenue, East Chicago, Indiana, which Mr. Crymes' mother purchased in or around 1950 and transferred interest to the Crymes in or around 1998. The Crymes live in one unit of their property, their son lives in the second unit on their property, and they rent the third unit of their property. EPA sampled the soil at the Crymes's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 31, and therefore denies them.

32. **Plaintiffs Ezell and Alice Foster are citizens of the State of Indiana and reside in East Chicago, Indiana. The Fosters own the property located at 4938 Euclid Avenue, East Chicago, Indiana and have lived there since they purchased the property in or around 2007. EPA sampled the soil at the Foster's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at the Foster's property.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 32, and therefore denies them.

33. **Plaintiff William Garcia is a citizen of the State of Indiana and resides in Schererville, Indiana. Mr. Garcia owns the property located at 4747 Drummond Street, East Chicago, Indiana, which he purchased in or around 1992. Mr. Garcia's father currently lives on the property. EPA sampled the soil at Mr. Garcia's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 33, and therefore denies them.

US.134152219.01

34.     Plaintiff Carmen Garza is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Garza owns the property located at 4927 Euclid Avenue, East Chicago, Indiana, and has lived there since she and her deceased husband purchased the property in or around 1971. EPA sampled the soil at Ms. Garza's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Garza's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 34, and therefore denies them.

35.     Plaintiff Harrison Gibbs is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Gibbs owns the property located at 4819 Ivy Street, East Chicago, Indiana and has lived there since he purchased the property in or around 1979. EPA sampled the soil at Mr. Gibbs's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Mr. Gibbs's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 35, and therefore denies them.

36.     Plaintiff Berteresa Harris is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Harris owns the property located at 4824 Grasselli Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1993. EPA sampled the soil at Ms. Harris's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 36, and therefore denies them.

37.     Plaintiff Terrance Hill is a citizen of the State of Indiana and resides in East Chicago, Indiana. Terrence and Nettie Hill own the property located at 434 Vernon Avenue, East Chicago, Indiana, where Mr. Terrance Hill grew up and currently resides. Nettie Hill's mother purchased the property located at 434 Vernon Avenue in or around 1961 and transferred interest to Nettie in or around 1993. Mr. Terrence Hill acquired his interest in the property in or around 2015. EPA sampled the soil at the Hill's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation. EPA has taken efforts to remediate the contamination at the Hill's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 37, and therefore denies them.

US.134152219.01

38.     **Plaintiffs Curtis and Nettie Hill are citizens of the State of Indiana and reside in East Chicago, Indiana. Curtis and Nettie Hill own the property located at 402 Vernon Avenue, East Chicago, Indiana and have lived there since they purchased the property in or around 1983. EPA sampled the soil at the Hill's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 38, and therefore denies them.

39.     **Plaintiffs Sara and Mauro Jimenez are citizens of the State of Indiana and reside in Crown Point, Indiana. The Jimenezes own the property located at 4917 Euclid Avenue, East Chicago, Indiana, which they purchased in or around 1999. EPA sampled the soil at the Jimenez's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at the Jimenez's property. The Jimenezes lived at their property until 2017, when they moved because of Defendants' contamination.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 39, and therefore denies them.

40.     **Plaintiff Emma Johnson is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Johnson owns the property located at 419 Vernon Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 2004. EPA sampled the soil at Ms. Johnson's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 40, and therefore denies them.

41.     **Plaintiff Frank Kresich is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Kresich owns the property located at 4719 Euclid Avenue, East Chicago, Indiana and has lived there since he purchased the property in or around 1955.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 41, and therefore denies them.

42.     **Plaintiff Chinita Lindsay is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Lindsay owns the property located at 4914 Drummond Street, East Chicago, Indiana, where she has resided since she purchased the property in or around 1991. EPA sampled the soil at Ms. Lindsay's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely**

12

remediation. EPA has taken efforts to remediate the contamination at Ms. Lindsay's property.

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 42, and therefore denies them.

    43.    **Plaintiff Lori Locklear is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Locklear owns the property located at 4717 Ivy Street, East Chicago, Indiana and has lived there since she purchased the property in or around 2006. EPA sampled the soil at Ms. Locklear's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has taken efforts to remediate the contamination at Ms. Locklear's property.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 43, and therefore denies them.

    44.    **Plaintiff Maritza Lopez is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Lopez owns the property located at 4928 Euclid Avenue, East Chicago, Indiana, where she has lived since she was 6 months old. Ms. Lopez's parents purchased the property in or around 1974 and transferred interest to Ms. Lopez in or around 1998. EPA sampled the soil at Ms. Lopez's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has taken efforts to remediate the contamination at Ms. Lopez's property.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 44, and therefore denies them.

    45.    **Plaintiff William Luckett is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Luckett has an interest in the property located at 4939 Melville Avenue, East Chicago, Indiana, which his father purchased in or around 1953 and where he currently resides. EPA sampled the soil at Mr. Luckett's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Mr. Luckett's property.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 45, and therefore denies them.

    46.    **Plaintiff Angela McFerrin is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. McFerrin owns the property located at 4810 Carey Street, East Chicago, Indiana, where she has lived since in or around 1997 and purchased in or around 1998. Ms. McFerrin also has a rental unit on her property. EPA sampled the soil at Ms.**

US.134152219.01

McFerrin's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 46, and therefore denies them.

47.     Plaintiff Margo Morris is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Morris owns the properties located at 4746 Melville Avenue and 4748 Melville Avenue, East Chicago, Indiana. Ms. Morris has lived at 4748 Melville since she purchased the property in or around 2001. Ms. Morris rents out her property at 4746 Melville Avenue. EPA sampled the soil at Ms. Morris's properties and determined that the levels of lead and/or arsenic at both properties pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 47, and therefore denies them.

48.     Plaintiff Donald Mosley is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Donald Mosley owns the property located at 4804 McCook Avenue, East Chicago, Indiana, where he has lived since purchasing the property in 1963. EPA sampled the soil at Mr. Donald Mosley's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 48, and therefore denies them.

49.     Plaintiff Raymond Mosley is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Raymond Mosley owns the property located at 4921 Euclid Avenue, East Chicago, Indiana and has lived there since he purchased the property in or around 1990. EPA sampled the soil at Mr. Raymond Mosley's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Mr. Raymond Mosley's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 49, and therefore denies the same.

50.     Plaintiff Sandra Muniz-Garza is a citizen of the State of Florida and resides in Hollywood, Florida. Ms. Muniz-Garza owns the property located at 4820 Carey Street, East Chicago, Indiana, which her parents purchased in or around 1978 and subsequently transferred their interest to Ms. Muniz-Garza. EPA sampled the soil at Ms. Muniz-Garza's property and determined that the levels of lead and/or arsenic at her property pose serious

14

health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Muniz-Garza's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 50, and therefore denies them.

51.    **Plaintiff Melissa Peterson is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Peterson owns the property located at 4912 Melville Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1998. EPA sampled the soil at Ms. Peterson's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 51, and therefore denies them.

52.    **Plaintiff Natalie Robinson is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Robinson owns the property located at 4913 Euclid Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1999. EPA sampled the soil at Ms. Robinson's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Robinson's property.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 52, and therefore denies them.

53.    **Plaintiffs Jose and Natalia Sanchez are citizens of the State of Indiana and reside in East Chicago, Indiana. The Sanchezes own the property located at 4806 Grasselli Street, East Chicago, Indiana and have lived there since they purchased the property in or around 1970. EPA sampled the soil at the Sanchez's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 53, and therefore denies them.

54.    **Plaintiff Madeleine A.P. Spann is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Spann owns the property located at 4942 Euclid Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1982. EPA sampled the soil at Ms. Spann's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Spann's property.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 54, and therefore denies them.

**55.     Plaintiffs John and Delphine Sullivan are citizens of the State of Indiana and reside in East Chicago, Indiana. The Sullivans own the property located at 5015 Melville Avenue, East Chicago, Indiana and have lived there since they purchased the property in or around 1971. EPA sampled the soil at the Sullivan's property and determined that the levels of lead and/or arsenic at their property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 55, and therefore denies them.

**56.     Plaintiffs Micheal Trambles and Chanthini Fowler are citizens of the State of Indiana and reside in East Chicago, Indiana. The Trambles own the property located at 4910 Euclid Avenue, East Chicago, Indiana and have lived there since they purchased the property in or around 2007.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 56, and therefore denies them.

**57.     Plaintiff Bernice Victor is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Victor owns the property located at 4918 Euclid Avenue, East Chicago, Indiana and has lived there since she and her deceased husband purchased the property in or around June of 1965. EPA sampled the soil at Ms. Victor's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Victor's property.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 57, and therefore denies them.

**58.     Plaintiff Dwayne Washington is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Dwayne Washington owns the properties located at 412 Vernon Avenue and 4936 Carey Street, East Chicago, Indiana. Mr. Dwayne Washington purchased the 412 Vernon Avenue property in or around 1970, and the 4936 Carey Street property in or around 1996. EPA sampled the soil at Mr. Dwayne Washington's property located at 412 Vernon Avenue and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 58, and therefore denies them.

US.134152219.01

59.     Plaintiff Isaac Washington is a citizen of the State of Indiana and resides in East Chicago, Indiana. Mr. Isaac Washington owns the property located at 450 Vernon Avenue, East Chicago, Indiana, which he purchased in or around 1993. Mr. Isaac Washington currently rents out his property. EPA sampled the soil at Mr. Isaac Washington's property and determined that the levels of lead and/or arsenic at his property pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 59, and therefore denies them.

60.     Plaintiff Jacqueline Washington-Brown is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Washington-Brown owns the property located at 414 Vernon Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1998. EPA sampled the soil at Ms. Washington-Brown's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Washington-Brown's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 60, and therefore denies them.

61.     Plaintiff Sarah Willis is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Willis owns the property located at 4943 Melville Avenue, East Chicago, Indiana and has lived there since she purchased the property in or around 1990. EPA sampled the soil at Ms. Willis's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 61, and therefore denies them.

62.     Plaintiff Betty Zic is a citizen of the State of Indiana and resides in East Chicago, Indiana. Ms. Zic owns the property located at 4715 Ivy Street, East Chicago, Indiana and has lived there since she purchased the property in or around 1953. EPA sampled the soil at Ms. Zic's property and determined that the levels of lead and/or arsenic at her property pose serious health risks and warrant timely remediation. EPA has since taken efforts to remediate the contamination at Ms. Zic's property.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 62, and therefore denies them.

63.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because this is a matter between citizens of different states, and the amount in controversy exceeds $75,000 per Plaintiff.

US.134152219.01

**ANSWER:** U.S. Smelter admits that jurisdiction is proper in this court under 28 U.S.C. § 1332.

**64.** **Plaintiffs Cristobal and Theresa Alvarez seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they experienced during remediation of their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 64 regarding Plaintiffs' alleged damages or conduct attributed to other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 64 are directed at U.S. Smelter, U.S. Smelter denies them.

**65.** **Plaintiff Cytheria Artis seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 65 regarding Plaintiffs' alleged damages or conduct attributed to other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 65 are directed at U.S. Smelter, U.S. Smelter denies them.

US.134152219.01

66.     **Plaintiff Pamela Berry seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of the area surrounding her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination to her neighborhood; damages for the annoyance she has experienced due to remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 66 regarding Plaintiffs' alleged damages or conduct attributed

to other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 66

are directed at U.S. Smelter, U.S. Smelter denies them.

67.     **Plaintiff William Boleware seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he experienced during remediation of his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 67 regarding Plaintiffs' alleged damages or conduct attributed

to other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 67

are directed at U.S. Smelter, U.S. Smelter denies them.

68.     **Plaintiff Earlie Braden seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the**

19

contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 68 regarding Plaintiffs' alleged damages or the other

Defendants, and therefore denies the same. U.S. Smelter also denies the allegations regarding

alleged conduct attributed to the Defendants. To the extent the allegations in Paragraph 68 are

directed at U.S. Smelter, U.S. Smelter denies them.

69.     Plaintiff Annie Brooks seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 69 regarding Plaintiffs' alleged damages or the other

Defendants, and therefore denies the same. To the extent the allegations in Paragraph 69 are

directed at U.S. Smelter, U.S. Smelter denies them.

70.     Plaintiffs Devin L. and Linda Crymes seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they have experienced due to the need to remediate their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress

20

they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 70 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 70 are directed at U.S. Smelter, U.S. Smelter denies them.

71.     Plaintiffs Ezell and Alice Foster seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they have experienced due to the need to remediate their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 71 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 71 are directed at U.S. Smelter, U.S. Smelter denies them.

72.     Plaintiff William Garcia seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination of his property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he has experienced due to the need to remediate his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

US.134152219.01

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 72 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 72 are directed at U.S. Smelter, U.S. Smelter denies them.

73. **Plaintiff Carmen Garza seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 73 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 73 are directed at U.S. Smelter, U.S. Smelter denies them.

74. **Plaintiff Harrison Gibbs seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he experienced during remediation of his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 74 regarding Plaintiffs' alleged damages or other Defendants,

22

and therefore denies the same. To the extent the allegations in Paragraph 74 are directed at U.S.

Smelter, U.S. Smelter denies them.

   75.   **Plaintiff Berteresa Harris seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

   **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 75 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 75 are directed at U.S.

Smelter, U.S. Smelter denies them.

   76.   **Plaintiff Terence Hill seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he has experienced during remediation of his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

   **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 76 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 76 are directed at U.S.

Smelter, U.S. Smelter denies them.

77.      Plaintiffs Curtis and Nettie Hill seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they have experienced due to the need to remediate their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 77 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 77 are directed at U.S.

Smelter, U.S. Smelter denies them.

78.      Plaintiffs Sara and Mauro Jimenez seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they experienced during remediation of their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 78 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 78 are directed at U.S.

Smelter, U.S. Smelter denies them.

79.      Plaintiff Emma Johnson seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the

interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 79 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 79 are directed at U.S.

Smelter, U.S. Smelter denies them.

80.    Plaintiff Frank Kresich seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination of the area surrounding his property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination to his neighborhood; damages for the annoyance he has experienced due to remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 80 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 80 are directed at U.S.

Smelter, U.S. Smelter denies them.

81.    Plaintiff Chinita Lindsay seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and

25

other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 81 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 81 are directed at U.S.

Smelter, U.S. Smelter denies them.

82. **Plaintiff Lori Locklear seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 82 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 82 are directed at U.S.

Smelter, U.S. Smelter denies them.

83. **Plaintiff Maritza Lopez seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

US.134152219.01

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 83 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 83 are directed at U.S. Smelter, U.S. Smelter denies them.

**84.** **Plaintiff William Luckett seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination of his property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he has experienced due to the need to remediate his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 84 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 84 are directed at U.S. Smelter, U.S. Smelter denies them.

**85.** **Plaintiff Angela McFerrin seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 85 regarding Plaintiffs' alleged damages or other Defendants,

US.134152219.01

and therefore denies the same. To the extent the allegations in Paragraph 85 are directed at U.S.

Smelter, U.S. Smelter denies them.

**86.     Plaintiff Margo Morris seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her properties resulting from Defendants' contamination of her properties; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her properties since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her properties; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 86 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 86 are directed at U.S.

Smelter, U.S. Smelter denies them.

**87.     Plaintiff Donald Mosley seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination of his property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he has experienced due to the need to remediate his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 87 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 87 are directed at U.S.

Smelter, U.S. Smelter denies them.

US.134152219.01

88.     Plaintiff Raymond Mosley seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he experienced during remediation of his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 88 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 88 are directed at U.S.

Smelter, U.S. Smelter denies them.

89.     Plaintiff Sandra Muniz-Garza seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 89 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 89 are directed at U.S.

Smelter, U.S. Smelter denies them.

90.     Plaintiff Melissa Peterson seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the

US.134152219.01

interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 90 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 90 are directed at U.S.

Smelter, U.S. Smelter denies them.

91.     **Plaintiff Natalie Robinson seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 91 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 91 are directed at U.S.

Smelter, U.S. Smelter denies them.

92.     **Plaintiffs Jose and Natalia Sanchez seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they have experienced due to the need to remediate their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount**

30

sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 92 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 92 are directed at U.S.

Smelter, U.S. Smelter denies them.

93.     **Plaintiff Madeleine A.P. Spann seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 93 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 93 are directed at U.S.

Smelter, U.S. Smelter denies them.

94.     **Plaintiffs John and Delphine Sullivan seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination; damages for the annoyance they have experienced due to the need to remediate their property; damages for the annoyance they have experienced due to the remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

US.134152219.01

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 94 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 94 are directed at U.S. Smelter, U.S. Smelter denies them.

**95.     Plaintiffs Micheal Trambles and Chanthini Fowler seek compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of their property resulting from Defendants' contamination of the area surrounding their property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of their groundwater; damages for the interference with the reasonable use, development, and enjoyment of their property since they learned of the contamination to their neighborhood; damages for the annoyance they have experienced due to remediation of their neighbors' properties; damages for the emotional distress they have suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 95 regarding Plaintiffs' alleged damages or other Defendants, and therefore denies the same. To the extent the allegations in Paragraph 95 are directed at U.S. Smelter, U.S. Smelter denies them.

**96.     Plaintiff Bernice Victor seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 96 regarding Plaintiffs' alleged damages or other Defendants,

US.134152219.01

and therefore denies the same. To the extent the allegations in Paragraph 96 are directed at U.S.

Smelter, U.S. Smelter denies them.

**97.    Plaintiff Dwayne Washington seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his properties resulting from Defendants' contamination of his properties; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his properties since he learned of the contamination; damages for the annoyance he has experienced due to the need to remediate his property located at 412 Vernon Street; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 97 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 97 are directed at U.S.

Smelter, U.S. Smelter denies them.

**98.    Plaintiff Isaac Washington seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of his property resulting from Defendants' contamination of his property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of his groundwater; damages for the interference with the reasonable use, development, and enjoyment of his property since he learned of the contamination; damages for the annoyance he has experienced due to the need to remediate his property; damages for the annoyance he has experienced due to the remediation of his neighbors' properties; damages for the emotional distress he has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 98 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 98 are directed at U.S.

Smelter, U.S. Smelter denies them.

US.134152219.01

99.     **Plaintiff Jacqueline Washington-Brown seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 99 regarding Plaintiffs' alleged damages or other Defendants,

and therefore denies the same. To the extent the allegations in Paragraph 99 are directed at U.S.

Smelter, U.S. Smelter denies them.

100.    **Plaintiff Sarah Willis seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination of her property; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use, development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced due to the need to remediate her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.**

    **ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 100 regarding Plaintiffs' alleged damages or other

Defendants, and therefore denies the same. To the extent the allegations in Paragraph 100 are

directed at U.S. Smelter, U.S. Smelter denies them.

101.    **Plaintiff Betty Zic seeks compensatory and punitive damages exceeding $75,000, including but not limited to: the diminution in market value of her property resulting from Defendants' contamination; costs for the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; costs for the remediation of her groundwater; damages for the interference with the reasonable use,**

34

development, and enjoyment of her property since she learned of the contamination; damages for the annoyance she has experienced during remediation of her property; damages for the annoyance she has experienced due to the remediation of her neighbors' properties; damages for the emotional distress she has suffered since learning of the contamination; and punitive damages in an amount sufficient to deter Defendants and other companies and individuals who are similarly situated from acting in a similar manner.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 101 regarding Plaintiffs' alleged damages or other

Defendants, and therefore denies the same. To the extent the allegations in Paragraph 101 are

directed at U.S. Smelter, U.S. Smelter denies them.

102.    All of the relevant acts and/or omissions set forth in this Complaint took place in Lake County, Indiana.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 102, and therefore denies them.

103.    Venue is proper in the Northern District of Indiana pursuant to 28 U.S.C. § 1391 because all the events giving rise to Plaintiffs' claims occurred in this District.

**ANSWER:** U.S. Smelter admits this Court is a proper venue.

104.    ARCO owned and operated white lead and zinc oxide manufacturing and metal refining facilities at 151st and McCook Avenue in East Chicago, Indiana, until in or around 1972.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 104, and therefore denies them.

105.    ARCO's operations included a pulverizing mill, white-lead storage areas, a chemical laboratory, a machine shop, a zinc oxide experimental unit building and plant, a silver refinery, a lead refinery, and a baghouse. During plant operations, ARCO's facility generated airborne emissions of contaminants from plant stacks and also leaked and/or spilled contaminants, including lead, arsenic, and PAHs, into the surrounding area, contaminating Plaintiffs' groundwater and properties. ARCO's facility also contaminated the fill material used to raise the ground level at or nearby Plaintiffs' properties with lead, arsenic, PAHs, and other contaminants.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 105, and therefore denies them.

106.   Therefore, at and from its facility, ARCO released or caused to be released lead, arsenic, PAHs, and other hazardous contaminants that were aerially deposited, directly released, and/or migrated onto or near Plaintiffs' properties, contaminating the soil, groundwater, and/or interiors of Plaintiffs' homes.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 106, and therefore denies them.

107.   DuPont owns the property at 5215 Kennedy Avenue, where its former facility processed a significant quantity of metals and other chemicals from approximately 1893 through 2000. At its facility, DuPont also manufactured pesticide lead arsenate from 1910 to 1949. During plant operations, DuPont's facility generated airborne emissions of contaminants, including lead, arsenic, and PAHs, from plant stacks and also leaked and/or spilled contaminants into the surrounding area, contaminating Plaintiffs' groundwater and properties. DuPont's facility also contaminated the fill material used to raise the ground level at or nearby Plaintiffs' properties with lead, arsenic, PAHs, and other contaminants.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 107, and therefore denies them.

108.   Even after operations at the DuPont facility ceased, arsenic-contaminated groundwater continues to migrate from DuPont's property to the surrounding area, including Plaintiffs' properties. After operations ceased, DuPont continued, and to this day continues, to fail to control hazardous substances on its property, including but not limited to arsenic, cadmium, lead, and zinc which leak and/or spill into the surrounding area, including Plaintiffs' properties.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 108, and therefore denies them.

109.   Therefore, at and from its facility, DuPont released or caused to be released lead, arsenic, and other contaminants that were aerially deposited, directly released, and/or migrated onto or near Plaintiffs' properties, contaminating the soil, groundwater, and/or interiors of Plaintiffs' homes.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 109, and therefore denies them.

US.134152219.01

110.     **U.S.S. Lead owned and operated lead refining and secondary lead smelting facilities at 5300 Kennedy Avenue in East Chicago, Indiana, from approximately 1906 to 1985. At its facilities, U.S.S. Lead refined significant quantities of lead and other metals and chemicals, including arsenic. U.S.S. Lead's facilities generated airborne emissions of contaminants, including lead, arsenic, and PAHs, from plant stacks into the surrounding area, contaminating Plaintiffs' properties. South of its plant building, U.S.S. Lead also stockpiled waste containing hazardous contaminants from its blast-furnace and, once a year, spread the waste over an adjoining 21 acres of wetlands, which leaked and/or spilled contaminants into the surrounding area, contaminating Plaintiffs' groundwater and properties.**

**ANSWER:** Denied except as to ownership of property. U.S. Smelter admits that it, or its predecessors, owned and operated a lead refining and secondary lead smelting facility at 5300 Kennedy Avenue in East Chicago, Indiana, from approximately 1906 to 1985, after which U.S. Smelter's former parent company, Sharon Steel Corporation, filed for bankruptcy in 1987. The U.S. Bankruptcy Court-supervised reorganization concluded in 1990. Since then, other than EPA-approved remediation projects, U.S. Smelter has conducted no operations at the facility. U.S. Smelter denies that it is a successor in interest to any liabilities of its predecessors under its former parent company or that any of the liabilities alleged in the Complaint survived bankruptcy. U.S. Smelter denies the remaining allegations in Paragraph 110.

111.     **Therefore, at and from its facilities, U.S.S. Lead released or caused to be released lead, arsenic, and other contaminants that were aerially deposited, directly released, and/or migrated onto or near Plaintiffs' properties, contaminating the soil, groundwater, and/or interiors of Plaintiffs' homes.**

**ANSWER:** U.S. Smelter denies the allegations in Paragraph 111.

112.     **U.S.S. Lead is a wholly owned subsidiary of MRRC. MRRC is a wholly owned subsidiary of Arava. Arava is a wholly owned subsidiary of Mueller.**

**ANSWER:** Admitted as to U.S. Smelter. MRRC, Arava, and Mueller have been dismissed as Defendants in this case and therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018 Voluntary Dismissal of U.S. Smelter Affiliates).

113.     **According to Mueller's 2017 10-Q filing with the SEC, Mueller, Arava, and MRRC each received general notice letters from EPA asserting that they may be**

37

Potentially Responsible Parties ("PRPs") in connection with the U.S.S. Lead Superfund Site.

**ANSWER:** Objection. MRRC, Arava, and Mueller have been dismissed as Defendants in this case and therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018 Voluntary Dismissal of U.S. Smelter Affiliates).

114. **Under CERCLA, a PRP is any individual or organization potentially responsible for, or contributing to, a spill or other contamination at a Superfund site. Parent companies may be held responsible for the acts of their subsidiaries under CERCLA when either (1) a basis exists for "piercing the veil" under traditional corporate law principles; or (2) when the parent company actually manages, directs, or conducts operations specifically related to pollution—i.e., operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.**

**ANSWER:** Denied. Paragraph 114 seeks legal conclusions to which no answer is required. To the extent that an answer is required, U.S. Smelter denies that the allegations contained in Paragraph 114 accurately describe PRP liability under CERCLA. U.S. Smelter also states that MRRC, Arava, and Mueller have been dismissed as Defendants in this case and therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018 Voluntary Dismissal of U.S. Smelter Affiliates).

115. **On September 20, 2017, EPA and U.S.S. Lead, MRRC, Arava, and Mueller entered into an Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study of Operable Unit 2 of the U.S. Smelter and Lead Refinery, Inc. Superfund Site ("Administrative Settlement"), under which U.S.S. Lead agreed to conduct a remedial investigation of the groundwater at the Superfund Site and the soil in the area where its former facilities operated at 5300 Kennedy Avenue in East Chicago, Indiana.**

**ANSWER:** U.S. Smelter admits that the Administrative Settlement was agreed and executed. The document speaks for itself. U.S. Smelter also states that MRRC, Arava, and Mueller have been dismissed as Defendants in this case and therefore allegations with respect to those entities does not require an answer or denial. *See* Dkt. 73 (March 9, 2018 Voluntary Dismissal of U.S. Smelter Affiliates).

38

**116.    Under the Administrative Settlement, Mueller agreed to guarantee financial assurance for U.S.S. Lead's CERCLA liability in connection to the Superfund Site.**

**ANSWER:** U.S. Smelter admits that the Administrative Settlement was agreed and executed. The document speaks for itself. U.S. Smelter states Mueller has been dismissed as a Defendant in this case and therefore this allegation does not require an answer or denial. *See* Dkt. 73 (March 9, 2018 Voluntary Dismissal of U.S. Smelter Affiliates).

**117.    Throughout their operations and continuing to the present day, Defendants failed to notify residents and property owners, including Plaintiffs, of the contamination and potential adverse health effects associated with exposure to discharges of lead, arsenic, and other hazardous contaminants from Defendants' facilities, and instead kept the existence of the contamination secret from Plaintiffs.**

**ANSWER:** Denied. U.S. Smelter denies the allegations in Paragraph 117. U.S. Smelter further states that information regarding its Administrative Settlement, associated remediation, and investigation of its facility is and has been publicly available, as evidenced by the public documents referenced in the Complaint.

**118.    Because of the hazardous contaminants Defendants caused to be released into the area surrounding Plaintiffs' homes, EPA placed the area where Plaintiffs own property on the Superfund's National Priorities List in 2009. Doing so triggered EPA's duty to investigate, select, and execute a remediation plan under CERCLA, 42 U.S.C. § 9601. In November 2012, EPA finally outlined a plan to test and remediate the contaminated properties.**

**ANSWER:** Denied. U.S. Smelter denies that it caused hazardous contaminants to be released into the area surrounding Plaintiffs' homes or that any alleged releases from U.S. Smelter caused the area to be placed on the Superfund's National Priorities List. U.S. Smelter admits that EPA placed the Superfund Site on the Superfund's National Priorities List in 2009, and further states that information regarding EPA's decision to do so was made publicly available at the time. U.S. Smelter is without sufficient information to conclude whether Plaintiffs' homes are within the Superfund Site.  U.S. Smelter admits that placement on Superfund's National Priorities List triggered certain statutory obligations by EPA. The

US.134152219.01

allegations in Paragraph 118 that EPA "finally outlined a plan to test and remediate the

contaminated properties" in November 2012 is vague and ambiguous and therefore U.S. Smelter

denies them. U.S. Smelter further denies any implication that no investigation or remediation at

the Superfund Site had been conducted prior to November 2012. U.S. Smelter has been working

with EPA, the Indiana Department of Environmental Management, and local health departments

to investigate and remediate the area around the facility since at least 1993.

**119.    After two years of negotiating with ARCO and DuPont, during which time little testing and no remediation occurred, EPA filed a CERCLA contribution action against those Defendants on September 3, 2014, and simultaneously filed a Consent Decree implementing EPA and Defendants' pre-negotiated plan to remediate the Superfund Site. Under the Consent Decree, EPA is solely responsible for performing soil sampling and remediation at the Superfund Site. Defendants contributed funds to the remediation but otherwise have no involvement.**

**ANSWER:** U.S. Smelter lacks sufficient information to admit or deny the factual

allegations in Paragraph 119 as to other Defendants because U.S. Smelter is not a party to this

Consent Decree and therefore does not have sufficient knowledge regarding the provisions or

requirements of the Consent Decree or the negotiations related thereto, and therefore denies

them.

**120.    Under the remediation plan, EPA performed soil sampling for lead and arsenic on Plaintiffs' real properties.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 120, and therefore denies them.

**121.    EPA remediates properties where the results of soil sampling show lead levels above 400 mg/kg and/or arsenic levels above 26 mg/kg. According to EPA, lead levels above 400 mg/kg and arsenic levels above 26 mg/kg pose serious health risks and warrant timely response actions.**

**ANSWER:** The allegations in paragraph 121 improperly attempt paraphrase federal

regulations and agency guidance but fail to state the source of information relied upon. U.S.

Smelter lacks sufficient information to either admit or deny the allegations contained in

US.134152219.01

Paragraph 121, and therefore denies them. U.S. Smelter also denies that this is an accurate description of EPA's remedial objectives.

122. **According to EPA, lead levels above 1,200 mg/kg and arsenic levels above 68 mg/kg pose an imminent and substantial threat to human health and warrant emergency remediation.**

**ANSWER:** The allegations in paragraph 122 improperly paraphrase federal regulations and agency guidance but fail to state the source of information relied upon. Accordingly, U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 122, and therefore denies them.

123. **Neither EPA nor Defendants informed Plaintiffs of the results of EPA's soil testing until on or after September 14, 2016.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 123, and therefore denies them. U.S. Smelter further denies that it had any duty to inform Plaintiffs of the results of the EPA's soil testing.

124. **Most residents of the Superfund Site, including Plaintiffs, did not even know that they were living on toxic contamination until on or around July 27, 2016, when the City of East Chicago announced that it planned on closing and demolishing a public housing complex located on the Superfund Site because EPA testing revealed extremely high levels of lead and arsenic in the soil at the public housing complex. The City informed residents of that complex that, for their own safety, they had to move within 30 to 60 days.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 124, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site has been publicly available since at least the 1990s, and without admitting the factual assertions related thereto, USEPA held and been involved in many public meetings regarding the Superfund Site, as acknowledged in Paragraph 10 of Plaintiffs' Complaint, *supra*.

125. **For months after residents who owned homes on the Superfund Site, including Plaintiffs, first learned of the contamination, EPA only haphazardly provided Plaintiffs with information regarding the contamination and the risks it poses to their**

US.134152219.01

**health and properties, even though Plaintiffs lived in close proximity to—several just across the street from—the public housing complex.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 125, and therefore denies them. U.S. Smelter further states

that information regarding the Superfund Site has been publicly available since at least the

1990s, and without admitting the factual assertions related thereto, USEPA held and been

involved in many public meetings regarding the Superfund Site, as acknowledged in Paragraph

10 of Plaintiffs' Complaint.

**126.    Plaintiffs Cristobal and Theresa Alvarez received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Alvarezes did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA took efforts to remediate the Alvarez's property in or around October 2016. The Alvarezes have not yet received results of testing for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 126,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**127.    Plaintiff Cytheria Artis received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Artis did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has not yet tested Ms. Artis's home for indoor contamination. EPA has informed Ms. Artis that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 127,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

US.134152219.01

Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**128.    Plaintiff Pamela Berry received a letter from EPA on or after September 14, 2016 stating that lead and/or arsenic was present on her property, but below the concentration required for EPA to remediate the property.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 128, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**129.    Plaintiff William Boleware received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Boleware did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA took efforts to remediate Mr. Boleware's property on or around July 28, 2017. Mr. Boleware has not yet received results of testing for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 129, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**130.    Plaintiff Earlie Braden received a letter from EPA on or around April 29, 2010 stating that lead levels at her property exceeded 1,200 mg/kg. EPA conducted an emergency remediation of Ms. Braden's property in or around 2010. Ms. Braden received another letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg. Before receiving this letter, Ms. Braden did not know and had no reason to know or suspect that her property was again contaminated by Defendants. EPA has informed Ms. Braden that it will take efforts to remediate her property again in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Braden's home for indoor contamination.**

US.134152219.01

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 130, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**131.    Plaintiff Annie Brooks received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Brooks did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has informed Ms. Brooks that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Brooks' home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 131, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**132.    Plaintiffs Devin L. and Linda Crymes received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Crymeses did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA has informed the Crymeses that it will take efforts to remediate their property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested the Crymes' home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 132, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

44

**133.    Plaintiffs Ezell and Alice Foster received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Fosters did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA took efforts to remediate the Foster's property on or around September 2017. EPA tested the interior of the Foster's home for contamination but has not yet informed them of the results.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 133,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**134.    Plaintiff William Garcia received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Garcia did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA has informed Mr. Garcia that it will take efforts to remediate his property 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Mr. Garcia's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 134,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**135.    Plaintiff Carmen Garza received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 1,200 mg/kg and arsenic levels exceeded 68 mg/kg. Before receiving this letter, Ms. Garza did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA also informed Ms. Garza that her home tested positive for indoor contamination. EPA took efforts to remediate Ms. Garza's property, including the inside of Ms. Garza's home, on or around October 26, 2016.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 135,

US.134152219.01

and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**136.    Plaintiff Harrison Gibbs received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Gibbs did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA took efforts to remediate Mr. Gibbs's property on or around September 22, 2017. EPA tested Mr. Gibbs's home for indoor contamination, but Mr. Gibbs has not yet received the results.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 136, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**137.    Plaintiff Berteresa Harris received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Harris did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has informed Ms. Harris that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Harris's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 137, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**138.    Plaintiff Terrance Hill received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Terrance Hill did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA also informed Mr. Terrance Hill that the inside of his home tested positive for contamination.**

**EPA took efforts to remediate his property, including the inside of his home, in or around September 2017.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 138,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**139.    Plaintiffs Curtis and Nettie Hill received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Hills did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA has informed the Hills that it will take efforts to remediate their property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested the Hill's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 139,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**140.    Plaintiffs Sara and Mauro Jimenez received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 1,200 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Jimenezes did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA also informed the Jimenezes that the inside of their home tested positive for contamination. EPA took efforts to remediate their property, including the inside of their home, in or around May 2017.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 140,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

US.134152219.01

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**141.    Plaintiff Emma Johnson received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Johnson did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has informed Ms. Johnson that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Johnson's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 141,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**142.    Plaintiff Frank Kresich received a letter from EPA on or after September 14, 2016 stating that lead and/or arsenic was present on his property, but below the concentration required for EPA to remediate the property.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 142,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**143.    Plaintiff Chinita Lindsay received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Lindsay did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Lindsay's property in or around August 2017.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 143,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

US.134152219.01

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**144.    Plaintiff Lori Locklear received an email from EPA on or around September 8, 2016 and a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Locklear did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Locklear's property in or around July 2017. EPA also informed Ms. Locklear that her home tested positive for indoor contamination in or around August 2017. EPA took efforts to remediate the interior of Ms. Locklear's home in or around October 2017.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 144,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**145.    Plaintiff Maritza Lopez received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Lopez did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Lopez's property, including the inside of Ms. Lopez's home, in or around May 2017. EPA also informed Ms. Lopez in or around June 2017 that her home tested positive for indoor contamination. EPA took efforts to remediate the interior of Ms. Locklear's home after August 2017.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 145,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**146.    Plaintiff William Luckett's father received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Luckett and his father did not know and had no reason to know or suspect that his father's property was**

49

contaminated by Defendants. EPA took efforts to remediate the property in or around August 2017.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 146,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

147.   **Plaintiff Angela McFerrin received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. McFerrin did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has informed Ms. McFerrin that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. McFerrin's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 147,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

148.   **Plaintiff Margo Morris received two letters from EPA on or after September 14, 2016 stating that lead levels at her properties exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving these letters, Ms. Morris did not know and had no reason to know or suspect that her properties were contaminated by Defendants. EPA has informed Ms. Morris that it will take efforts to remediate her properties in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Morris's properties for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 148,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

US.134152219.01

Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**149.    Plaintiff Donald Mosley received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Donald Mosley did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA has informed Mr. Donald Mosley that it will take efforts to remediate his property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Mr. Donald Mosley's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 149, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**150.    Plaintiff Raymond Mosley received a letter from EPA on or around April 29, 2010 stating that lead levels at his property exceeded 1,200 mg/kg. EPA conducted an emergency remediation of Mr. Raymond Mosley's property in or around 2010. Mr. Raymond Mosley received another letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg. Before receiving this letter, Mr. Raymond Mosley did not know and had no reason to know or suspect that his property was contaminated again by Defendants. EPA took efforts to remediate Mr. Raymond Mosley's property in or around September 2017. EPA tested the interior of Mr. Raymond Mosley's home for contamination but has not yet informed him of the results.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 150, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**151.    Plaintiff Sandra Muniz-Garza received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Muniz-Garza did not know and had no reason to know or suspect that her property was contaminated by**

51

Defendants. EPA took efforts to remediate Ms. Muniz-Garza's property in or around August 2017.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 151,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

152.    Plaintiff Melissa Peterson received a letter from EPA in or around 2012 stating that lead levels at her property exceeded 1,200 mg/kg. Before receiving this letter, Ms. Peterson did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA conducted an emergency remediation of Ms. Peterson's property in or around 2012. Ms. Peterson received another letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. EPA has informed Ms. Peterson that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Peterson's home for indoor contamination.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 152,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

153.    Plaintiff Natalie Robinson received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Robinson did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Robinson's property on or around September 6, 2017. EPA has not yet tested Ms. Robinson's home for indoor contamination.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 153,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

US.134152219.01

Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**154.    Plaintiffs Jose and Natalia Sanchez received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Sanchezes did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA has informed the Sanchezes that it will take efforts to remediate their property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested the Sanchez's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 154, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**155.    Plaintiff Madeleine A.P. Spann received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Spann did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Spann's property in or around 2016.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 155, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**156.    Plaintiffs John and Delphine Sullivan received a letter from EPA on or after September 14, 2016 stating that lead levels at their property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, the Sullivans did not know and had no reason to know or suspect that their property was contaminated by Defendants. EPA has informed the Sullivans that it will take efforts to remediate their property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested the Sullivan's home for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 156, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**157.    Plaintiff Bernice Victor received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Victor did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Victor's property in or around August 2017. EPA tested the interior of Ms. Victor's home for contamination but has not yet informed her of the results.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 157, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**158.    Plaintiffs Micheal Trambles and Chanthini Fowler received a letter from EPA on or after September 14, 2016 stating that lead and/or arsenic was present on their property, but below the concentration required for EPA to remediate the property.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 158, and therefore denies them. U.S. Smelter further states that information regarding the Superfund Site, including the status of any remediation and testing, was publicly available prior to September 2016.

**159.    Plaintiff Dwayne Washington received a letter from EPA on or after September 14, 2016 stating that lead levels at his property located at 412 Vernon Street exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter,**

**Mr. Dwayne Washington did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA has informed Mr. Dwayne Washington that it will take efforts to remediate his property located at 412 Vernon Street in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested his property at 412 Vernon Street for indoor contamination.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 159,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**160.    Plaintiff Dwayne Washington received a letter from EPA on or after September 14, 2016 stating that lead and/or arsenic was present on his property located at 4936 Carey Street, but below the concentration required for EPA to remediate the property.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 160,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**161.    Plaintiff Isaac Washington received a letter from EPA on or after September 14, 2016 stating that lead levels at his property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Mr. Isaac Washington did not know and had no reason to know or suspect that his property was contaminated by Defendants. EPA has informed Mr. Isaac Washington that it will take efforts to remediate his property in 2018, but EPA has not yet set a date for remediation.**

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 161,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

US.134152219.01

162.    Plaintiff Jacqueline Washington-Brown received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Washington-Brown did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Washington-Brown's property in or around April 2017.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 162,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

163.    Plaintiff Sarah Willis received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Willis did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA has informed Ms. Willis that it will take efforts to remediate her property in 2018, but EPA has not yet set a date for remediation. EPA has not yet tested Ms. Willis's home for indoor contamination.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 163,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

164.    Plaintiff Betty Zic received a letter from EPA on or after September 14, 2016 stating that lead levels at her property exceeded 400 mg/kg and/or arsenic levels exceeded 26 mg/kg. Before receiving this letter, Ms. Zic did not know and had no reason to know or suspect that her property was contaminated by Defendants. EPA took efforts to remediate Ms. Zic's property in or around December 2016.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiff's property. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 164,

and therefore denies them. U.S. Smelter further states that information regarding the Superfund

Site, including the status of any remediation and testing, was publicly available prior to

September 2016.

**165.    EPA has not performed soil sampling for PAHs or other hazardous contaminants Defendants caused to be released from their facilities.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 165, and therefore denies the same. U.S. Smelter also denies

that it caused any hazardous contaminants to be released from its facilities.

**166.    EPA did not perform sampling for groundwater contamination, despite evidence that the hazardous contaminants Defendants caused to be released from their facilities continues to contaminate the groundwater at Plaintiffs' properties.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 166, and therefore denies them. U.S. Smelter also denies the

implication that no groundwater sampling occurred at the Superfund Site given that Plaintiff in

Paragraph 115 above acknowledges that U.S. Smelter's Administrative Settlement included

investigation of the groundwater beneath the facility.

**167.    Plaintiffs have been living on or near the contamination caused by Defendants for decades, with no knowledge that they and their families were at severe health risk. Defendants never notified Plaintiffs that they caused discharges of hazardous contaminants, including lead, arsenic, and PAHs onto Plaintiffs' properties and groundwater, and Defendants never warned Plaintiffs about the potential adverse health effects associated with exposure to such discharges. To this day, Defendants' discharges continue to cause contaminated groundwater to seep into Plaintiffs' basements and drainage systems, and contaminated dust and soil to actively enter Plaintiffs' homes. Because of Defendants' contamination, Plaintiffs' property values have sharply decreased, Plaintiffs cannot sell or rent their homes, and Plaintiffs have experienced extreme stress and anxiety.**

**ANSWER:** Denied.

**168.    After Defendants' contamination was made public, the value of each Plaintiff's property has declined and continues to decline.**

**ANSWER:** Denied. U.S. Smelter denies it contaminated Plaintiffs' properties. The

allegation in Paragraph 168 regarding "Defendants' contamination" is vague and ambiguous.

US.134152219.01

U.S. Smelter is without sufficient knowledge to admit or deny the allegation as to each property

and therefore denies them. U.S. Smelter lacks knowledge or information sufficient to admit or

deny the allegations in paragraph 168 concerning property values and therefore denies them.

U.S. Smelter further states that information regarding its investigation and remediation with

respect to the Superfund Site has been publicly available since the early 1990s.

**169.     Because of Defendants' contamination, the assessed value of each Plaintiff's property has drastically declined from 2015 to the present, and the Third District County Commissioner, Michael C. Repay, has informed each Plaintiff that the assessed value of their home will be reduced by another 15–25% on their next tax bill.**

**ANSWER:** U.S. Smelter denies that it contaminated any of Plaintiffs' properties and

states that it lacks sufficient information to either admit or deny the remaining allegations

contained in Paragraph 169, and therefore denies them.

**170.     In 2015, the assessed value of Plaintiffs Cristobal and Theresa Alvarez's property for tax purposes was $54,000. The most recent 2017 assessment of the Alvarez's property for tax purposes was $48,500. The assessed value will be reduced by another 15% on their next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 170, and therefore denies them.

**171.     In 2015, the assessed value of Plaintiff Cytheria Artis's property for tax purposes was $43,400. The most recent 2017 assessment of Ms. Artis's property for tax purposes was $29,200. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 171, and therefore denies them.

**172.     In 2015, the assessed value of Plaintiff Pamela Berry's property for tax purposes was $66,500. The most recent 2017 assessment of Ms. Berry's property for tax purposes was $59,200. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 172, and therefore denies them.

US.134152219.01

173.    In 2015, the assessed value of Plaintiff William Boleware's property for tax purposes was $43,700. The most recent 2017 assessment of Mr. Boleware's property for tax purposes was $40,300. The assessed value will be reduced by another 25% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 173, and therefore denies them.

174.    In 2015, the assessed value of Plaintiff Earlie Braden's property for tax purposes was $51,000. The most recent 2017 assessment of Ms. Braden's property for tax purposes was $34,200. The assessed value will be reduced by another 25% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 174, and therefore denies them.

175.    In 2015, the assessed value of Plaintiff Annie Brooks's property for tax purposes was $46,300. The most recent 2017 assessment of Ms. Brooks's property for tax purposes was $30,000. The assessed value will be reduced by another 25% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 175, and therefore denies them.

176.    In 2015, the assessed value of Plaintiffs Devin L. and Linda Crymes's property for tax purposes was $82,600. The most recent 2017 assessment of the Crymes's property for tax purposes was $54,500. The assessed value will be reduced by another 25% on their next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 176, and therefore denies them.

177.    In 2015, the assessed value of Plaintiffs Ezell and Alice Foster's property for tax purposes was $56,400. The most recent 2017 assessment of the Foster's property for tax purposes was $50,500. The assessed value will be reduced by another 15% on their next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 177, and therefore denies them.

178.    In 2015, the assessed value of Plaintiff William Garcia's property for tax purposes was $30,200. The most recent 2017 assessment of Mr. Garcia's property for tax

US.134152219.01

purposes was $26,200. The assessed value will be reduced by another 15% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 178, and therefore denies them.

**179.** **In 2015, the assessed value of Plaintiff Carmen Garza's property for tax purposes was $45,800. The most recent 2017 assessment of Ms. Garza's property for tax purposes was $41,500. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 179, and therefore denies them.

**180.** **In 2015, the assessed value of Plaintiff Harrison Gibbs's property for tax purposes was $52,000. The most recent 2017 assessment of Mr. Gibbs's property for tax purposes was $46,400. The assessed value will be reduced by another 15% on his next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 180, and therefore denies them.

**181.** **In 2015, the assessed value of Plaintiff Berteresa Harris's property for tax purposes was $46,000. The most recent 2017 assessment of Ms. Harris's property for tax purposes was $42,500. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 181, and therefore denies the same.

**182.** **In 2015, the assessed value of Plaintiff Terrance Hill's property for tax purposes was $47,300. The most recent 2017 assessment of Mr. Terrance Hill's property for tax purposes was $31,700. The assessed value will be reduced by another 25% on his next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 182, and therefore denies them.

**183.** **In 2015, the assessed value of Plaintiffs Curtis and Nettie Hill's property for tax purposes was $66,700. The most recent 2017 assessment of the Hill's property for tax purposes was $42,700. The assessed value will be reduced by another 25% on their next tax bill.**

US.134152219.01

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 183, and therefore denies them.

**184.    In 2015, the assessed value of Plaintiffs Sara and Mauro Jimenez's property for tax purposes was $50,100. The most recent 2017 assessment of the Jimenez's property for tax purposes was $45,300. The assessed value will be reduced by another 15% on their next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 184, and therefore denies them.

**185.    In 2015, the assessed value of Plaintiff Emma Johnson's property for tax purposes was $37,600. The most recent 2017 assessment of Ms. Johnson's property for tax purposes was $25,000. The assessed value will be reduced by another 25% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 185, and therefore denies them.

**186.    In 2015, the assessed value of Frank Kresich's property for tax purposes was $42,200. The most recent 2017 assessment of Mr. Kresich's property for tax purposes was $37,700. The assessed value will be reduced by another 15% on his next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 186, and therefore denies them.

**187.    In 2015, the assessed value of Plaintiff Chinita Lindsay's property for tax purposes was $46,100. The most recent 2017 assessment of Ms. Lindsay's property for tax purposes was $43,900. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 187, and therefore denies them.

**188.    In 2015, the assessed value of Plaintiff Lori Locklear's property for tax purposes was $53,000. The most recent 2017 assessment of Ms. Locklear's property for tax purposes was $47,100. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 188, and therefore denies them.

US.134152219.01

189.    In 2015, the assessed value of Plaintiff Maritza Lopez's property for tax purposes was $75,200. The most recent 2017 assessment of Ms. Lopez's property for tax purposes was $66,700. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 189, and therefore denies them.

190.    In 2015, the assessed value of Plaintiff William Luckett's property for tax purposes was $43,000. The most recent 2017 assessment of Mr. Luckett's property for tax purposes was $28,900. The assessed value will be reduced by another 25% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 190, and therefore denies them.

191.    In 2015, the assessed value of Plaintiff Angela McFerrin's property for tax purposes was $33,500. The most recent 2017 assessment of Ms. McFerrin's property for tax purposes was $30,900. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 191, and therefore denies them.

192.    In 2015, the assessed value of Plaintiff Margo Morris's 4746 Melville Avenue property for tax purposes was $50,300, and the 4748 Melville Avenue property for tax purposes was $67,700. The most recent 2017 assessment of Ms. Morris's 4746 Melville Avenue property for tax purposes was $34,000, and the 4748 Melville Avenue property for tax purposes was $44,100. The assessed value of each property will be reduced by another 15% on her next tax bills.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 192, and therefore denies them.

193.    In 2015, the assessed value of Plaintiff Donald Mosley's property for tax purposes was $39,100. The most recent 2017 assessment of Mr. Donald Mosley's property for tax purposes was $24,900. The assessed value will be reduced by another 25% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 193, and therefore denies them.

US.134152219.01

194.     In 2015, the assessed value of Plaintiff Raymond Mosley's property for tax purposes was $40,500. The most recent 2017 assessment of Mr. Mosley's property for tax purposes was $35,900. The assessed value will be reduced by another 15% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 194, and therefore denies them.

195.     In 2015, the assessed value of Plaintiff Sandra Muniz-Garza's property for tax purposes was $46,400. The most recent 2017 assessment of Ms. Muniz-Garza's property for tax purposes was $43,000. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 195, and therefore denies them.

196.     In 2015, the assessed value of Plaintiff Melissa Peterson's property for tax purposes was $42,700. The most recent 2017 assessment of Ms. Peterson's property for tax purposes was $28,700. The assessed value will be reduced by another 25% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 196, and therefore denies them.

197.     In 2015, the assessed value of Plaintiff Natalie Robinson's property for tax purposes was $36,000. The most recent 2017 assessment of Ms. Robinson's property for tax purposes was $33,100. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 197, and therefore denies them.

198.     In 2015, the assessed value of Plaintiffs Jose and Natalia Sanchez's property for tax purposes was $32,600. The most recent 2017 assessment of the Sanchez's property for tax purposes was $30,200. The assessed value will be reduced by another 15% on their next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 198, and therefore denies them.

199.     In 2015, the assessed value of Plaintiff Madeleine A.P. Spann's property for tax purposes was $63,300. The most recent 2017 assessment of Ms. Spann's property for

tax purposes was $56,800. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 199, and therefore denies them.

200. **In 2015, the assessed value of Plaintiffs John and Delphine Sullivan's property for tax purposes was $57,900. The most recent 2017 assessment of the Sullivan's property for tax purposes was $39,500. The assessed value will be reduced by another 25% on their next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 200, and therefore denies them.

201. **In 2015, the assessed value of Plaintiffs Micheal Trambles's and Chanthini Fowler's property for tax purposes was $45,200. The most recent 2017 assessment of Plaintiffs Trambles's and Fowler's property for tax purposes was $41,600. The assessed value will be reduced by another 15% on their next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 201, and therefore denies them.

202. **In 2015, the assessed value of Plaintiff Bernice Victor's property for tax purposes was $42,100. The most recent 2017 assessment of Ms. Victor's property for tax purposes was $38,600. The assessed value will be reduced by another 15% on her next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 202, and therefore denies them.

203. **In 2015, the assessed value of Plaintiff Dwayne Washington's 412 Vernon Avenue property for tax purposes was $46,000, and the 4936 Carey Street property for tax purposes was $64,000. The most recent 2017 assessment of Mr. Dwayne Washington's 412 Vernon Avenue property for tax purposes was $29,400, and the 4936 Carey Street property for tax purposes was $59,700. The assessed value of Mr. Dwayne Washington's 412 Vernon Avenue property will be reduced by another 25% on his next tax bill, and the assessed value of Mr. Dwayne Washington's 4936 Carey Street property will be reduced by another 15% on his next tax bill.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 203, and therefore denies them.

204.    In 2015, the assessed value of Plaintiff Isaac Washington's property for tax purposes was $32,000. The most recent 2017 assessment of Mr. Isaac Washington's property for tax purposes was $20,300. The assessed value will be reduced by another 25% on his next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 204, and therefore denies them.

205.    In 2015, the assessed value of Plaintiff Jacqueline Washington-Brown's property for tax purposes was $35,800. The most recent 2017 assessment of Ms. Washington-Brown's property for tax purposes was $23,500. The assessed value will be reduced by another 25% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 205, and therefore denies them.

206.    In 2015, the assessed value of Plaintiff Sarah Willis's property for tax purposes was $43,500. The most recent 2017 assessment of Ms. Willis's property for tax purposes was $28,200. The assessed value will be reduced by another 25% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 206, and therefore denies them.

207.    In 2015, the assessed value of Plaintiff Betty Zic's property for tax purposes was $52,100. The most recent 2017 assessment of Ms. Zic's property for tax purposes was $46,200. The assessed value will be reduced by another 15% on her next tax bill.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 207, and therefore denies them.

208.    The actual diminution in assessed value of Plaintiffs' properties is due to Defendants' contamination.  The most recent 2017 assessed values of properties located in the neighborhood directly to the west of Plaintiffs' properties—and thus located outside of the Superfund site—are higher than the 2015 assessed values for those same properties located outside of the Superfund site.

**ANSWER:** U.S. Smelter denies that it contaminated any of Plaintiffs' property or that

any decreased assessed value of Plaintiffs' properties is the result of actions by U.S. Smelter.

US.134152219.01

U.S. Smelter further states that it lacks sufficient information to either admit or deny the

remaining allegations contained in Paragraph 208, and therefore denies them.

**209.    The decline in true market value of Plaintiffs' properties is even more extreme than the diminution in the value of Plaintiffs' properties assessed for tax purposes.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 209, and therefore denies them.

**210.    This decline in market value is a direct result of Defendants' contamination. Absent the contamination, economic forces suggest that home values in this area should be rising. According to data collected by Zillow.com, the average market value of homes in East Chicago, Indiana has increased by approximately 10.6% in the past year. The same data shows that the average market value of homes in East Chicago, Indiana has increased by approximately 17% since the end of 2015. See https://www.zillow.com/home-values/.**

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' properties or that

any decreased assessed value of Plaintiffs' properties is the result of actions by U.S. Smelter.

U.S. Smelter further states that it lacks sufficient information to either admit or deny the

remaining allegations contained in Paragraph 210, because they lack sufficient specificity

regarding the timing, method, and data used in the calculations and statistics alleged.

**211.    Further, potential purchasers of property avoid purchasing land on or near environmental contamination, and potential purchasers of property are well aware that Plaintiffs' properties are located on the Superfund Site. For the past year, the Superfund Site has been featured prominently in both local and national news. Further, to sell a home in Indiana, a seller must complete the "Seller's Residential Real Estate Sales Disclosure" and present it to a potential buyer, pursuant to Ind. Code § 32-21-5-2. The disclosure form mandates disclosure of both current and former "hazardous conditions on the property, such as . . . toxic materials," as well as the disclosure of any "notices by any governmental or quasi-governmental agencies" affecting the property.**

**ANSWER:** Denied, except that U.S. Smelter admits that the Superfund Site has been the

subject of media reports. U.S. Smelter further states that Ind. Code § 32-21-5-2 speaks for itself

and denies that the allegations in Paragraph 211 accurately depict the requirements of the statute.

**212.    In 2015, approximately 17 total residential properties located on the Superfund Site were sold. In 2016, approximately 21 total residential properties located on the Superfund Site were sold. After news of Defendants' contamination was made public in**

late 2016, only approximately 6 residential properties located on the Superfund Site have sold in the first nine months of 2017.

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' properties. U.S. Smelter

lacks sufficient information to either admit or deny the allegations contained in Paragraph 212,

and therefore denies the same.

213. **Potential buyers who learn about Defendants' contamination are unwilling to purchase Plaintiffs' properties.**

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' properties. U.S.

Smelter lacks sufficient information to either admit or deny the remaining allegations contained

in Paragraph 213, and therefore denies them.

214. **For example, before they found out about the contamination, Plaintiffs Sara and Mauro Jimenez were planning on selling their home. The Jimenezes had secured a buyer through a family contact, agreed on a price between $80,000 and $85,000, and were finalizing the details. However, the prospective purchasers had small children and, once they learned of Defendants' contamination of the Jimenez's property, the sale fell through.**

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' property or that

any alleged act or omission by U.S. Smelter affected the potential sale of Plaintiffs' property.

U.S. Smelter lacks sufficient information to either admit or deny the remaining allegations

contained in Paragraph 214, and therefore denies them.

215. **Plaintiff Sandra Muniz-Garza also had a private sale fall through after she disclosed Defendants' contamination to the buyers. Ms. Muniz-Garza then attempted to put her home on the market, but her realtor told her that she could not do so until the property was remediated. Though EPA has since taken efforts to remediate the contamination at Ms. Muniz-Garza's property, she has not yet been able to secure a buyer for her property.**

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiff's property or that

U.S. Smelter's alleged acts or omissions affected the potential sale of Plaintiff's property. U.S.

Smelter lacks sufficient information to either admit or deny the remaining allegations contained

in Paragraph 215, and therefore denies them.

US.134152219.01

216.     Plaintiffs Cristobal and Theresa Alvarez attempted to put their home on the market in or around July 2017, after EPA undertook efforts to remediate Defendants' contamination at the Alvarez's property. They first attempted to list their home with a real estate agent, but the agent did not return their calls after learning that the property was located on the Superfund Site. They then listed the home on Zillow.com themselves. They have had multiple parties express interest in the home. However, each party has withdrawn interest after finding out that the Alvarez's home is located on the Superfund Site, even though EPA has since taken efforts to remediate the contamination at the Alvarez's property.

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' property or that its alleged acts or omissions affected the potential sale of Plaintiffs' property.  U.S. Smelter lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 216, and therefore denies them.

217.     Even if a Plaintiff were able to secure a potential buyer for his or her property, the market value of each Plaintiff's property has decreased because of Defendants' contamination such that no Plaintiff could sell their home and relocate to any reasonable location.

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' property or that its conduct decreased the market value of any Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 217, and therefore denies them.

218.     Because of Defendants' contamination, Plaintiff Angela McFerrin has been unable to secure a renter for the rental unit on her property.

**ANSWER:** Denied. U.S. Smelter denies that it contaminated Plaintiffs' property or that its conduct affected rentals of Plaintiff's property. U.S. Smelter lacks sufficient information to either admit or deny the remaining allegations in Paragraph 218, and therefore denies them.

219.     Because of Defendants' contamination, Plaintiffs Isaac Washington, Sandra Muniz-Garza, and Devin L. and Linda Crymes have renters who are moving out of the units they rent from Plaintiffs.

US.134152219.01

**ANSWER:** U.S. Smelter denies that it contaminated Plaintiffs' property. U.S. Smelter lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 219, and therefore denies them.

**220.    According to EPA, lead is highly toxic, and exposure to children, especially those age six or younger, is dangerous. Even low levels of lead in blood are associated with behavioral problems, learning disabilities, and impaired growth. High levels of lead in blood can cause severe neurological problems such as coma, convulsions, and even death.**

**ANSWER:** The allegations in paragraph 220 improperly attempt paraphrase federal regulations, agency guidance, and/or research, and importantly, fail to state the source(es) of information relied upon. U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 220, and therefore denies them.

**221.    To ensure the health and safety of children, the federal Agency for Toxic Substances and Disease Registry (ATSDR) advised residents at the Superfund Site to prevent children from playing on or near contaminated soil. EPA has also advised residents to keep their windows closed and keep their children inside.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 221, and therefore denies them.

**222.    Plaintiffs have thus stopped letting their children and grandchildren play outside, and they have limited visits from their grandchildren, for fear that the contamination will affect the children's health and development.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 222, and therefore denies them.

**223.    Further, at EPA's direction, Plaintiffs with indoor contamination have had to avoid certain rooms or floors of their homes due to indoor contamination. In order for EPA to remediate indoor contamination, homeowners, including Plaintiffs, must pack and move their belongings. EPA only cleans hard surfaces inside contaminated homes; it is the homeowner's responsibility to clean and/or replace furniture, other upholstered material, and window dressings. Homeowners must also be available to let the EPA remediation team in and out of the homes, often requiring homeowners to take off a day of work.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the allegations contained in Paragraph 223, and therefore denies them.

69

224.    While waiting for their properties to be remediated, EPA also advised Plaintiffs not to undertake construction, landscaping, or gardening projects on their properties. Some Plaintiffs waited months for their properties to be remediated, while Plaintiffs Cytheria Artis, Earlie Braden, Annie Brooks, Devin L. and Linda Crymes, William Garcia, Berteresa Harris, Curtis and Nettie Hill, Emma Johnson, Angela McFerrin, Margo Morris, Donald Mosley, Melissa Peterson, Jose and Natalia Sanchez, John and Delphine Sullivan, Dwayne Washington, Isaac Washington, and Sarah Willis will have to wait more than a year and a half since they first learned of the contamination for their properties to be remediated.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 224, and therefore denies them.

225.    Each Plaintiff is also subjected to the annoyance of frequent construction noise from the remediation of nearby yards.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 225, and therefore denies them.

226.    Since learning of Defendants' contamination, there has been wide-spread anxiety among the residents who own homes at the Superfund Site, including Plaintiffs.

**ANSWER:** U.S. Smelter denies that it contaminated any of Plaintiffs' property. U.S.

Smelter lacks sufficient information to either admit or deny the remaining allegations contained

in Paragraph 226, and therefore denies them.

227.    In addition to the anxiety caused by not being able to sell or rent their properties, Plaintiffs fear for the health and safety of their children and grandchildren. Many Plaintiffs raised their children on their contaminated properties, and still have young children and/or grandchildren that live with them on their properties.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 227, and therefore denies them.

228.    Plaintiffs also fear that living on contaminated properties will exacerbate other health concerns.

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 228, and therefore denies them.

US.134152219.01

229.     **Plaintiff Sara Jimenez, for example, has a genetic kidney disease and needs a kidney transplant. She is now concerned that lead and arsenic exposure will complicate her kidney transplant. After discussing the contamination with one of her physicians, the physician told her that she needed to move out of her home immediately. Sara and Mauro thus purchased another property outside of the Superfund Site and have moved there.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 229, and therefore denies them.

230.     **Similarly, Plaintiff Maritza Lopez, who has lived on the Superfund Site since she was 6 months old, has a variety of health issues, including non-cancerous tumors, severe anemia, and Type 2 diabetes, as well as unexplained hemorrhaging, muscle atrophy, and nerve damage. Her physicians have similarly advised that her health issues may be exacerbated by living on or near toxic contamination.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 230, and therefore denies them.

231.     **Plaintiff Harrison Gibbs's wife and daughter also suffer from autoimmune disorders that are exacerbated by toxic contamination.**

**ANSWER:** U.S. Smelter lacks sufficient information to either admit or deny the

allegations contained in Paragraph 231, and therefore denies them.

232.     **Remediation by EPA will not fully cure the injuries to Plaintiffs' properties, including but not limited to the diminution of Plaintiffs' property values as a result of the contamination: the remediation of other contaminants not addressed by EPA's remedial plan, including but not limited to PAHs; the remediation of Plaintiffs' groundwater; the interference with the reasonable use, development, and enjoyment of their properties since they learned of the contamination; the cost and annoyance Plaintiffs have experienced during the remediation of their properties; and the emotional distress Plaintiffs have suffered since learning of the contamination.**

**ANSWER:** Denied. U.S. Smelter denies that it has contaminated Plaintiffs' properties.

U.S. Smelter denies that it has injured Plaintiffs in any way or that EPA supervised remediation

at the Superfund Site has harmed Plaintiffs in any way. U.S. Smelter lacks sufficient information

to either admit or deny the allegations contained in Paragraph 232, and therefore denies them.

233.     **Defendants, by their decades-long failure to abate, or even address, hazardous contamination known by Defendants to exist on the Plaintiffs' properties, as well as their failure to warn Plaintiffs of the release of such hazardous contamination, acted in a**

US.134152219.01

willful and wanton manner and in reckless indifference to the safety of Plaintiffs and the use and enjoyment of their properties. Plaintiffs were the reasonable foreseeable victims of Defendants' conduct.

**ANSWER:** Denied. Paragraph 233 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations contained within Paragraph 233 and states that it has for decades participated in EPA-supervised remediation of U.S. Smelter's property.

234.    As a direct and proximate result of the willful, wanton, and reckless acts and omissions of Defendants, Plaintiffs have sustained actual damages and, because of these acts and omissions, it would be reasonable and proper for the assessment of punitive damages to deter Defendants and all others similarly situated from acting in a similar manner in the future.

**ANSWER:** Denied.

**COUNT I**
**Negligence**

235.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 234 of the Complaint, as though fully set forth herein.

**ANSWER:** U.S. Smelter repeats and incorporates by reference its answers to Paragraphs 1 through 234, as though fully set forth herein.

236.    Defendants had a duty to Plaintiffs not to permit or allow hazardous substances from Defendants' facilities to contaminate Plaintiffs' properties. Defendants also had a duty to promptly respond to and remediate any releases of hazardous contaminants in a manner that would prevent further threats to Plaintiffs' properties, and to warn Plaintiffs, directly or through previous owners of Plaintiffs' properties, of the release or threatened release of hazardous substances into or towards the soil used by Plaintiffs. The facilities, and hazardous substances generated therefrom, were within Defendants' exclusive control.

**ANSWER:** Paragraph 236 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 236.

237.    Defendants breached these duties by their negligent acts and omissions in operating and maintaining their facilities; their handling, storage, use, and disposal of hazardous substances; their failure to promptly and effectively address such contamination to prevent further threats to the Plaintiffs' health and properties once known; and their

72

failure to warn Plaintiffs, directly or through previous owners of Plaintiffs' properties, of the release or threatened release of toxic contaminants.

**ANSWER:** Paragraph 237 contains legal conclusions to which no response is required.

To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 237.

238.   **Defendants' breach of their duties to Plaintiffs has caused substantial injury and damage to Plaintiffs and their properties.**

**ANSWER:** Paragraph 238 contains legal conclusions to which no response is required.

To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 238.

## COUNT II
### Private Nuisance

239.   **Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 238 of the Complaint, as though fully set forth herein.**

**ANSWER:** U.S. Smelter repeats and incorporates by reference its answers to Paragraphs 1 through 238, as though fully set forth herein. U.S. Smelter also states that the Court dismissed Count II pursuant to the Court's July 26, 2021 Order and therefore no response is required.

240.   **The contamination of soil and groundwater with lead, arsenic, PAHs, and other contaminants at, in, on, or beneath Plaintiffs' properties, and the contamination of the interior of Plaintiffs' properties, occurred and persists because of Defendants' acts and omissions including, but not limited to, their operation and maintenance of their facilities and equipment; their handling, storage, use, and disposal of hazardous substances; their failure to promptly and effectively address such contamination to prevent further migration of the contaminants; and/or their failure to abate such contamination known by Defendants to exist on Plaintiffs' properties.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count II pursuant to the Court's July 26, 2021 Order and therefore no response is required.

241.   **Defendants' contamination of the soil, groundwater, and interiors of Plaintiffs' homes, as well as Defendants' decades-long failure to address such contamination, has substantially interfered with Plaintiffs' reasonable use, development, and enjoyment of their properties.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count II pursuant to the Court's July 26, 2021 Order and therefore no response is required.

US.134152219.01

**242.    Plaintiffs have incurred and continue to incur substantial damage as a result of Defendants' contamination, constituting a continuing private nuisance.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count II pursuant to

the Court's July 26, 2021 Order and therefore no response is required.

## COUNT III
### Trespass

**243.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 242 of the Complaint, as though fully set forth herein.**

**ANSWER:** U.S. Smelter repeats and incorporates by reference its answers to Paragraphs

1 through 242, as though fully set forth herein. U.S. Smelter states that the Court dismissed

Count III pursuant to the Court's July 26, 2021 Order and therefore no response is required.

**244.    Defendants had a duty to prevent hazardous substances, including lead and arsenic, used and created at their facilities, from contaminating Plaintiffs' properties.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to

the Court's July 26, 2021 Order and therefore no response is required.

**245.    Defendants also have a duty not to allow the continuance of this wrongful trespass.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to

the Court's July 26, 2021 Order and therefore no response is required.

**246.    Defendants breached these duties by their wrongful acts and omissions, resulting in the release of lead, arsenic, PAHs, and other hazardous substances from their facilities into the environment, thus causing the migration of such contamination at, in, on, or beneath Plaintiffs' properties, including soil and groundwater, without consent of Plaintiffs.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to

the Court's July 26, 2021 Order and therefore no response is required.

**247.    These contaminants continue to actively migrate at, in, on, or beneath Plaintiffs' properties, without consent of Plaintiffs, by the groundwater that Defendants caused to be contaminated.**

74

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to the Court's July 26, 2021 Order and therefore no response is required.

248.    **The invasion of Plaintiffs' real properties, exclusively possessed by Plaintiffs, by Defendants' contamination, was due to unreasonable, unwarranted, and unlawful conduct of Defendants and constitutes a wrongful trespass upon Plaintiffs' properties.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to the Court's July 26, 2021 Order and therefore no response is required.

249.    **As a result of Defendants' wrongful trespass, the lawful rights of Plaintiffs to fully use and enjoy their properties have been substantially interfered with, causing Plaintiffs substantial damage.**

**ANSWER:** Objection. U.S. Smelter states that the Court dismissed Count III pursuant to the Court's July 26, 2021 Order and therefore no response is required.

## COUNT IV
### Negligent Infliction of Emotional Distress

250.    **Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 249 of the Complaint, as though fully set forth herein.**

**ANSWER:** U.S. Smelter repeat and incorporate by reference its answers to Paragraphs 1 through 249, as though fully set forth herein.

251.    **Defendants had a duty to Plaintiffs not to permit or allow hazardous substances from Defendants' facilities to contaminate Plaintiffs' properties and expose Plaintiffs to such substances. Defendants also had a duty to promptly respond to and remediate any releases of hazardous contaminants in a manner that would prevent further threats to Plaintiffs' health and properties, and to warn Plaintiffs of the release or threatened release of hazardous substances into or towards the soil used by Plaintiffs. The facilities, and hazardous substances generated therefrom, were within Defendants' exclusive control.**

**ANSWER:** Denied. Paragraph 251 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 251.

252.    **Defendants breached these duties by their negligent acts and omissions in operating and maintaining their facilities; their handling, storage, use, and disposal of**

US.134152219.01

hazardous substances; their failure to promptly and effectively address such contamination to prevent further threats to the Plaintiffs' health and properties once known; and their failure to warn Plaintiffs of the release and/or threatened release of toxic contaminants.

**ANSWER:** Denied. Paragraph 252 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 252.

**253.    Defendants' breach caused hazardous lead, arsenic, PAHs, and other contaminants to directly impact Plaintiffs.**

**ANSWER:** Denied. Paragraph 253 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 253.

**254.    The contamination has caused Plaintiffs significant emotional distress, including: (a) fear of contracting a future illness associated with the contamination; (b) fear that their children, grandchildren, family members, guests, or anyone else who comes into contact with their homes will contract future illnesses associated with the contamination; and (c) fear that the contamination has affected their health.**

**ANSWER:** Paragraph 254 contains legal conclusions to which no response is required. To the extent that a response is required, U.S. Smelter denies the allegations in Paragraph 254.

The remainder of Plaintiffs' Complaint is a prayer for relief, to which no response is required. To the extent that that a response is required, U.S. Smelter denies that Plaintiffs are entitled to any of the relief sought and further raises the affirmative defenses stated below.

<u>First Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by the doctrine of waiver.

<u>Second Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by the doctrine of laches.

US.134152219.01

<u>Third Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by the applicable statute of limitations or other limitations on bringing a claim.

<u>Fourth Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by their acquiescence, agreement and/or consent to actions that form the basis of those claims.

<u>Fifth Affirmative Defense</u>

Pursuant to Indiana's Comparative Fault Act (Ind. Code §34-51-2, *et seq.*), Plaintiffs' claims against U.S. Smelter are barred and any recovery must be reduced, in whole or in part, by the percentage a jury determines to be each Plaintiff's fault, the fault of other parties, and the fault of nonparties who caused or contributed to cause Plaintiffs' injuries. U.S. Smelter reserves the right to amend and supplement this nonparty defense within a reasonable time following initial disclosures and discovery. At this time, U.S. Smelter identifies the following nonparties, who caused or contributed to cause, in whole or in part, the injuries Plaintiffs allege, *supra:*

    a.      Norfolk Southern railroad and its predecessors and successors;

    b.      Hubbard Steel Foundry and its predecessors and successors;

    c.      Republic Iron & Steel and its predecessors and successors;

    d.      Famous Manufacturing and its predecessors and successors;

    e.      International Lead, Anaconda, and Eagle Picher, and their predecessors and successors;

    f.      Goldschmidt Detinning, Metal & Thermit, and M&T Chemicals, and their predecessors and successors;

    g.      United States Environmental Protection Agency;

    h.      State of Indiana;

77

    i.       Indiana Department of Environmental Management;

    j.       Indiana State Department of Health; and

    k.      Lake County Health Department.

<u>Sixth Affirmative Defense</u>

Plaintiffs' comparative fault diminishes or bars entirely Plaintiffs' recovery under Indiana Code §§ 34-51-2-5 & -6.

<u>Seventh Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred because Plaintiffs' fault is greater than the fault of all others whose fault contributed to Plaintiffs' damages, or Plaintiffs' damages, if any, must be diminished proportionately by the fault of Plaintiffs and other parties and nonparties who caused or contributed to cause Plaintiffs' alleged injuries.

<u>Eighth Affirmative Defense</u>

Plaintiffs alleged damages must be reduced by collateral source payments received by or on behalf of Plaintiffs, pursuant to the applicable provisions of Indiana Code § 34-44-1-1, et seq.

<u>Ninth Affirmative Defense</u>

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by Plaintiffs' failure to join as a party or parties to this action, a party or parties in whose absence complete relief cannot be accorded among those already parties, thereby subjecting defendants to substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

<u>Tenth Affirmative Defense</u>

Plaintiffs are not entitled to punitive or exemplary damages under Indiana statutory and common law. In addition, any award of punitive damages in this case would violate Defendant's due process rights under the U.S. Constitution and Indiana Constitution. Pursuant to Indiana Code § 34-51-3-6, any punitive damages are capped at $50,000; or three times Plaintiffs'

US.134152219.01

compensatory damages award and seventy-five percent (75%) of any punitive damages award must be allocated to Indiana's violent crime victims compensation fund.

Eleventh Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by the doctrine of unclean hands.

Twelfth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by statute.

Thirteenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

Fourteenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by the doctrine of estoppel.

Fifteenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, because they have been waived.

Sixteenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter have been discharged, in whole or in part, by bankruptcy.

Seventeenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, because they are considered an unlawful challenge to a removal or remedial action under Section 113 of CERCLA for which this federal court does not have jurisdiction to review.

US.134152219.01

Eighteenth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, by Section 122 of CERCLA because it would require U.S. Smelter to undertake a remedial action that has not been authorized by USEPA.

Nineteenth Affirmative Defense

Plaintiff's claims against U.S. Smelter fail, in whole or in party, because damages, if any, were not proximately caused by U.S. Smelter.

Twentieth Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, because Plaintiffs have failed to mitigate their alleged damages.

Twenty-First Affirmative Defense

Plaintiffs' claims against U.S. Smelter are barred, in whole or in part, because of the government contractor protections under the Federal Tort Claims Act.

Twenty-Second Affirmative Defense

U.S. Smelter specifically reserves the right to add other affirmative defenses as they become known.

Twenty-Third Affirmative Defense

U.S. Smelter incorporates by reference all applicable affirmative defenses stated by all co-defendants.

Twenty-Fourth Affirmative Defense

U.S. Smelter gives notice that it intends to rely upon any such other defenses as may become apparent or available during discovery proceedings in this case and reserves the right to amend his Answer to assert any such defenses, including, without limitation, those defenses that are specific to the statutory and common law, which were available at the time the action was

80

commenced or became available during the pendency of the action, and U.S. Smelter hereby reserves the right to amend its Answer to assert any such defenses.

WHEREFORE, U.S. Smelter requests that Plaintiffs recover nothing in this action against U.S. Smelter and respectfully asks the Court to enter judgment in U.S. Smelter's favor, to award costs, fees, expenses, and interest to U.S. Smelter, and for all other just and appropriate relief.

/s/ H. Max Kelln
H. Max Kelln
Indiana Bar No. 30358-49
Faegre Drinker Biddle & Reath LLP
300 N Meridian Ave Suite 2500
Indianapolis, IN 46204
Phone: (317)237-1215
h.max.kelln@faegredrinker.com

Kevin Toner
Plews Shadley Racher & Braun LLP
1346 N. Delaware Street
Indianapolis, IN  46202-2415
Phone: (317) 612-8988
ktoner@psrb.com

*Attorneys for U.S. Smelter and Lead Refinery, Inc. d/b/a U.S.S. Lead Refinery, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ H. Max Kelln

US.134152219.01