UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CRISTOBAL ALVAREZ, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> ATLANTIC RICHFIELD COMPANY, *et al.*, <br><br> Defendants. | CASE NO. 2:17-cv-414-JVB-JPK <br><br> Senior Judge <br> Hon. Joseph Van Bokkelen <br><br> Magistrate Judge <br> Hon. Joshua P. Kolar |

## REPORT OF PARTIES' PLANNING MEETING

**I.      Planning Conference.**

The parties held a planning meeting via telephone under Fed. R. Civ. P. 26(f) on November 10, 2021, and agreed to this report on November 16, 2021.  Margaret O'Connor and David J. Chizewer (Goldberg Kohn Ltd.) participated for the *Alvarez* Plaintiffs, Diana E. Reiter and Sean O. Morris participated for Defendant Atlantic Richfield Company ("Atlantic Richfield"), Tracy A. Roman participated for Defendants E. I. du Pont de Nemours and Company and The Chemours Company ("DuPont Defendants"), and H. Max Kelln participated for U.S. Smelter and Lead Refinery, Inc., d/b/a U.S.S. Lead Refinery, Inc. ("U.S. Smelter").[1]

---

[1] Pursuant to the Court's November 2, 2021 Order, counsel for the parties in three other cases attended the meet and confer to discuss opportunities for coordination:  Eric S. Pavlack, Coral M. Odiot, and Veronica N. Vasquez for Plaintiffs in *Holiday v. Atlantic Richfield Co.*, No. 2:16-cv-00525-JVB-JPK, *Barbee v. Atlantic Richfield Co.*, No. 2:17-cv-00193-JVB-JPK, and *Baker v. Atlantic Richfield Co.*, No. 2:17-cv-00429-JVB-JPK; and Thomas Connor for Hammond Group, Inc., Hammond Lead Products, LLC, Halstab, LLC, and Halox, LLC ("Hammond").  *See* Dkt. 173.  Counsel for Plaintiffs in *Adams v. Atlantic Richfield Co.*, No. 2:18-cv-00375-JVB-JPK, Roberto (Alex) Alejandro Mendoza and Roy P. Amatore, were invited but did not attend the meet and confer.

II.     **Jurisdiction.**

Plaintiffs' position is that the Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000 per Plaintiff.  Based on the information currently available regarding Plaintiffs, Defendants do not dispute the Court's subject matter jurisdiction, but deny that Plaintiffs are entitled to any relief whatsoever.

III.    **Pre-Discovery Disclosures.**

The parties will exchange, *but may not file*, Rule 26(a)(1) information by December 20, 2021.

IV.     **Discovery Plan.**

   A.   **Agreed limitations on party discovery:**

As set forth below, the parties are unable to agree on the plan and subjects for discovery, but the parties agree on certain limitations on party discovery, including the following:

1. Maximum interrogatories: 30 interrogatories by Plaintiffs jointly to each Defendant; 25 interrogatories by Defendants jointly to each Plaintiff; and 10 interrogatories by each Defendant to each Plaintiff.

2. Maximum requests for admission: 30 requests for admission by Plaintiffs jointly to each Defendant; 25 requests for admission by Defendants jointly to each Plaintiff; and 10 requests for admission by each Defendant to each Plaintiff.

3. Maximum depositions by Plaintiffs jointly[2] (excluding experts): 30 depositions by Plaintiffs jointly of all Defendants.

4. Maximum time limit for depositions: Each deposition is limited to a maximum of 7 hours, unless extended by stipulation.

---

[2] The parties are unable to agree on the total number of depositions to be taken by Defendants jointly of Plaintiffs and therefore have included that limitation on party discovery in their respective proposed discovery plans.

### B. Plaintiffs' proposed discovery plan:

Defendants have insisted on using the discovery plan to argue for the merits of their case, which is inappropriate and should be disregarded. Plaintiffs' proposed discovery plan does not respond to these arguments in this discovery plan, but Plaintiffs reserve the right to address the merits of the case at any appropriate time.

Plaintiffs propose that depositions will follow written discovery. During written discovery, Plaintiffs' proposal is for both parties to produce documents on a rolling basis by identifying the discovery that can be produced on a more expedited time frame, such as certain priority custodial files for certain time frames, the discovery already produced in *Rolan v. Atlantic Richfield*, No. 16-cv-357, and Defendant U.S. Smelter's business records produced to the EPA that U.S. Smelter indicated in the parties' Joint Status Report (ECF #160) that it would be willing to produce subject to a clawback agreement.

#### 1. Plaintiffs will need discovery on the following subjects:

Plaintiffs will need discovery on the topics identified through allegations in their Complaint. Plaintiffs have already issued draft discovery indicating the topics on which Plaintiffs are seeking discovery, including but not limited to Defendants' affirmative defenses; Defendants' policies and procedures for handling, storage, or destruction of EPA-regulated chemicals, including but not limited to lead, arsenic, PAHs, cadmium, antimony, and mercury; when and how Defendants learned that their Property or the surrounding area, including Zones 1, 2, and 3 of the East Chicago Superfund Site, were contaminated by pollutants, chemicals, or substances monitored and regulated by the EPA, including but not limited to lead, arsenic, PAHs, cadmium, antimony, and mercury, and individuals with knowledge of the same; and when and how Defendants informed or attempted to inform Plaintiffs of the contamination of their properties.

**2.        Plaintiffs' proposed Discovery Deadlines and limitations on discovery:**

The Parties were unable to agree on a limitation on requests for production and the number of depositions to be taken by Defendants.  Given the high volume of documents in possession of three major corporations, in comparison to the more limited set of documents pertinent to an individual Plaintiff, Plaintiffs propose a maximum of 40 requests for production by Plaintiffs jointly to each Defendant; 10 requests for production by Defendants jointly to each Plaintiff; and 10 requests for production by each Defendant to each Plaintiff.  Additionally, given the larger number of witnesses necessary to speak to each Defendant's conduct during the relevant period, Plaintiff proposes a maximum of 30 depositions by Plaintiff (excluding experts) for all Defendants combined.  Plaintiffs propose a single deposition of each Plaintiff by Defendants jointly, plus one additional deposition for any other witnesses or persons with knowledge identified by the Plaintiffs up to two additional two depositions for each Plaintiff by Defendants jointly for a maximum total of three depositions per Plaintiff.

Plaintiffs propose that the last date to complete fact discovery is November 18, 2022.  The last date to complete expert discovery is July 18, 2023.  The parties must disclose the identity of any affirmative Rule 26(a)(2) witness and the witness's written report (if applicable) within 60 days after fact discovery closes, or January 17, 2023. The parties' affirmative experts must be deposed within 60 days after the deadline for disclosure of their reports, or March 20, 2023.   The parties' rebuttal experts and their written reports must be disclosed within 60 days after the deadline for depositions of affirmative experts, or May 19, 2023.  The parties' rebuttal experts must be deposed within 60 days after the deadline for disclosure of their written reports, or July 18, 2023.

Under Rule 26(e), any Rule 26(a)(2) supplements must be made by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

    **C.    Defendants' proposed discovery plan:**

    **1.    Nature of the case:**

This case was brought by 46 Plaintiffs who purportedly own property within the USS Lead Superfund Site ("Site") and allege property damage and emotional distress arising from contamination allegedly resulting from the former operations of Defendants and their alleged predecessors that ceased decades ago. Atlantic Richfield's alleged predecessors ceased operations in 1946, certain operations by the DuPont Defendants ceased in 1949, and U.S. Smelter's operations ceased in 1985.

The U.S. Environmental Protection Agency ("EPA") has conducted a decades-long investigation into alleged contamination at the Site and has undertaken extensive remediation efforts, including in Zones 2 and 3 of Operable Unit 1 ("OU1"), which encompasses the 40 properties that Plaintiffs allegedly own. EPA has completed all required cleanup actions at all residential properties at the Site. More than a year ago, EPA delisted 671 properties in Zones 2 and 3 from the National Priorities List[3] after determining that its response actions had successfully ensured the public health and that additional clean-up of those properties would be inappropriate.[4] EPA recently reaffirmed that conclusion in its "First Five-Year Review Report" for the Site. In that report, EPA explained that the "remedial activities that have been completed to date in OU1

---

[3] EPA maintains the National Priorities List as a list of sites that appear to present a significant risk to public health, welfare, or the environment. Deletions From the National Priorities List, 85 Fed. Reg. 61,610, 61,613 (Sept. 30, 2020), https://semspub.epa.gov/src/document/05/961350.

[4] *See id.* at 61,611; EPA, Recommendation for Approval of the Responsiveness Summary Addressing Public Comments on the Notice of Intent for Partial Deletion of the U.S. Smelter and Lead Refinery Superfund Site from the National Priorities List 1–3, 8, 18–19 (Sept. 1, 2020), https://semspub.epa.gov/work/05/960580.pdf; EPA, NPL Partial Site Deletion Narrative: U.S. Smelter and Lead Refinery, Inc., https://semspub.epa.gov/src/document/HQ/400270.

have adequately addressed all exposure pathways that could result in unacceptable risks."[5] Moreover, reports on EPA's administrative record about the ongoing groundwater investigation at the Site have consistently concluded that groundwater in Zones 2 and 3 does not present a potential risk to human health and the environment.[6]

Notwithstanding EPA's conclusions, Plaintiffs seek costs for remediation of alleged contamination of their soil and groundwater, among other damages.[7] Plaintiffs allege that numerous contaminants were transported from Defendants' former facilities to Plaintiffs' properties at unspecified times via multiple possible environmental pathways, including air deposition, direct releases, and migration. Plaintiffs also seek damages for alleged emotional distress "since learning of the contamination"—"stress and anxiety" and a "fear" of "future illness"—but they do not allege that they were exposed to any contaminant or that they suffer from any present physical injuries or illnesses.[8]

Accordingly, as it currently stands, Plaintiffs assert claims based on alleged contamination of their properties, even though EPA has determined that the properties do not pose a risk to human health or the environment. Unless Plaintiffs are required, as proposed in Defendants' discovery plan, to provide information sufficient at least to establish prima facie proof in support of their claims at the outset of discovery (including their alleged injuries), it will be extremely difficult—

---

[5] EPA, First Five-Year Review Report for U.S. Smelter and Lead Refinery, Inc. Superfund Site 18 (Aug. 24, 2021), https://semspub.epa.gov/src/document/05/968656.

[6] *See, e.g.*, Env't Res. Mgmt., Remedial Investigation Report, Revised: USS Lead Superfund Site, Operable Unit 2, at ES3, ES5, 67–70 (Oct. 2021), https://semspub.epa.gov/src/document/05/969333.

[7] Dkt. 1, Compl. p. 66 "V. Relief Requested; A." Tellingly, Plaintiffs do not allege that their properties have been sampled for any alleged contaminant for which they seek costs for remediation. *See id.*; *id.* ¶¶ 165–166 (alleging that "EPA has not performed soil sampling for PAHs or other hazardous contaminants" and that "EPA did not perform sampling for groundwater").

[8] *See id.* ¶¶ 167, 254, p. 66 "V. Relief Requested; A."

if not impossible—for this Court to manage this case to an orderly and efficient resolution. This is particularly so given the multitude of Plaintiff-specific issues.

      **2.**     **Subjects on which discovery will be needed:**

Defendants will need discovery on the following subjects:

1. Any investigation of, testing for, or monitoring of any alleged contamination at, below, above, or around the properties referenced in the Complaint and the surrounding area;

2. The identity of any source of any alleged contamination at, below, above, or around the properties referenced in the Complaint;

3. Operations and maintenance practices, including, but not limited to, the generation, handling, storage, use, transfer, and disposal of any alleged contamination, by any source of any alleged contamination at, below, above, or around the properties referenced in the Complaint and the surrounding area;

4. Remedial activities that have addressed any alleged contamination at, below, above, or around the properties referenced in the Complaint and the surrounding area;

5. Other sources of potential contamination in the vicinity of the properties referenced in the Complaint;

6. Property transactions involving the properties referenced in the Complaint and in the surrounding area;

7. The cause and extent of Plaintiffs' alleged injuries;

8. Whether Plaintiffs' alleged injuries were caused by Defendants' alleged conduct, or by other factors;

9. The amount and type of Plaintiffs' purported damages;

10. The efforts, if any, taken by Plaintiffs to mitigate their purported damages;

11. Any alleged contaminant to which Plaintiffs may have been exposed, including, but not limited to, the source, cause, pathway, and extent of any alleged exposure;

12. Any efforts by EPA or any other person or entity to remediate any alleged contamination at, below, above, or around the properties referenced in the Complaint and the surrounding area;

13. Plaintiffs' knowledge of the presence of any alleged contamination; and

    14.    Plaintiffs' knowledge of the impact of alleged exposure to any alleged contamination at the properties referenced in the Complaint.

    **3.**    **Phasing of discovery:**

As detailed above, reports on EPA's administrative record for the Site refute Plaintiffs' allegations that they have sustained any recoverable damage to their properties from any alleged contaminant that has not been addressed already by EPA or that poses any threat to human health, let alone any purported damage caused by any Defendant's former operations.[9] Given EPA's determinations and the lack of specificity in Plaintiffs' Complaint, each Plaintiff should be required to provide prima facie evidence to support their claims, including any alleged injuries, at the outset of discovery so that any additional discovery can be tailored and focused.[10]

Defendants intend to file a motion requesting that the Court adopt procedures under Rule 16 to streamline discovery and narrow the issues in this case (i.e., issue a "*Lone Pine*" order). Specifically, Defendants plan to move the Court to enter an order directing each Plaintiff to provide verified responses to certain fundamental questions relating to their claims and prima facie evidence in support of their allegations. If Plaintiffs cannot provide this kind of basic information in support of their claims at the outset of the litigation, Plaintiffs should not be permitted—and Defendants should not be required—to engage in lengthy, burdensome, inefficient, and expensive discovery into those theories. Given the number of Plaintiffs and properties and the expansive

---

[9] *See supra* pp. 5–6; EPA, U.S. Smelter and Lead Refinery, Inc. Superfund Site, Operable Unit 1, Record of Decision 10–11, 13–15 (Nov. 2012), https://semspub.epa.gov/work/05/446987.pdf; EPA, Record of Decision Amendment for the USS Lead Superfund Site Zone 1, at 11–12 (2020), https://semspub.epa.gov/work/05/955458.pdf; EPA, Remedial Investigation Report Final, US Smelter and Lead Refinery Superfund Site 93 (June 2012), https://semspub.epa.gov/src/document/05/925318.

[10] As the Court has recognized, "in this type of case, we need to carefully consider how the discovery is going to proceed." Tr. Telephonic Conf. 19:13–15, Oct. 22, 2021 (attached as Exhibit 1).

scope of Plaintiffs' allegations, adopting such procedures at the outset of discovery would promote judicial economy and avoid wasting the parties' and the Court's time and resources engaging in discovery into the claims of any Plaintiff who lacks factual support for their allegations.

Defendants propose that the Court set a "return date" for four-to-five months after the adoption of appropriate Rule 16 procedures—after which time it will be clear whether and which, if any, of Plaintiffs' myriad theories they intend (or will be permitted) to pursue—to obtain the Court's assistance in setting the schedule for any additional fact and expert discovery that might be required. Once Plaintiffs' claims have been narrowed through appropriate Rule 16 procedures, the Court will be better able to assist the parties to determine the most efficient manner to manage discovery going forward.

Atlantic Richfield and the DuPont Defendants are willing to produce documents that are relevant to Plaintiffs' claims from the universe produced in *Rolan v. Atlantic Richfield Co.*, No. 1:16-CV-357-TLS (N.D. Ind.), within 30 days of the Court entering an appropriate protective order. U.S. Smelter will produce approximately 480,000 pages of business records selected by and produced to EPA subject to stipulation and approval of a similar clawback agreement to the one agreed to by EPA. This approach would allow U.S. Smelter to preserve its privilege and work product protections without conducting an expensive page-by-page review of the document set.

### 4. Limitations on party discovery:

Defendants propose the following limitations on party discovery:

1. Maximum requests for production: 40 requests for production by Plaintiffs jointly to each Defendant; 30 requests for production by Defendants jointly to each Plaintiff; and 10 requests for production by each Defendant to each Plaintiff.

2. Maximum depositions by Defendants jointly (excluding experts): for each Plaintiff, 10 depositions by Defendants jointly, including a deposition by Defendants jointly of the individual Plaintiff.

V.     **Other Items.**

    A.     **Amending pleadings:**

Plaintiffs propose that the last date any party may seek permission to join additional parties and to amend the pleadings is 6 months into discovery, or May 18, 2022 based on Plaintiffs' proposed discovery plan.

Defendants believe that it would be premature to set a deadline for joining parties and amending the pleadings before the Court has had an opportunity to apply appropriate procedures under Rule 16 to Plaintiffs' allegations.

    B.     **Pretrial disclosures:**

The time to file Rule 26(a)(3) pretrial disclosures will be governed by separate order.

    C.     **Trial:**

Plaintiffs propose that the case should be ready for jury trial by fall of 2023 and at this time is expected to take approximately two weeks.

Defendants' position is that it would be premature to set a trial date until the Court has had an opportunity to implement appropriate case management procedures, as discussed above.

    D.     **Referral:**

At this time, all parties do not consent to refer this matter to the currently assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 for all further proceedings including trial and entry of judgment.

VI.    **Alternative Dispute Resolution.**

The case's settlement prospects may be enhanced via mediation, but Defendants believe that it would be premature for the parties to adopt an alternative dispute resolution procedure before the Court has had an opportunity to apply Rule 16 procedures to narrow the claims in the case.

**VII.        Coordination Measures.**

The parties in this case as well as *Holiday*, *Baker*, and *Barbee* agree to the following coordination measures:[11]

    **A.        Agreed-upon discovery of electronically stored information ("ESI"):**

    1.  Nature of production of ESI:

Disclosure or production of ESI will be limited to non-privileged data that is reasonably available to the parties in the ordinary course of business.

    2.        Cost and burden of producing electronic discovery:

Unless the producing party demonstrates to the Court that the cost is overly burdensome, or unless otherwise agreed, the parties agree that electronic discovery shall be provided to the other party in the normal and traditional course of discovery in a format mutually agreeable to the parties.

    3.        Preservation of data:

The parties will make reasonable efforts to preserve all electronic data relevant to any party's claims or defenses.

    4.        Challenges to ESI:

The format of the production of ESI may be further limited or modified by Court order upon a showing of good cause or undue burden or expense.

    **B.        Protective order:**

An appropriate protective order will need to be entered in this matter before Defendants produce any discovery. Defendants and the *Alvarez* Plaintiffs agreed upon a negotiated proposed protective order, which is attached hereto as Exhibit 2 pursuant to N.D. Ind. Local Patent Rule 2-1(c).

---

[11] *See supra* note 1.

Plaintiffs in *Holiday*, *Baker*, and *Barbee* have agreed to the terms of the proposed protective order in *Alvarez*. In light of the Court's dismissal of the complaints in those cases, the DuPont Defendants and Hammond believe that it would be premature to move for the entry of such an order in those cases before the Court has ruled on the motions for leave to amend pending in each case and resolved any motions to dismiss that might be filed if Plaintiffs are permitted to amend the complaints.

### C. Party discovery by Plaintiffs:

To the extent that Plaintiffs may seek discovery from a particular Defendant on a subject that may overlap with another case, Plaintiffs should have to coordinate with Plaintiffs in the other case(s) before serving discovery requests and taking depositions on overlapping subjects to avoid the burden and expense of Plaintiffs taking the same or similar discovery from a Defendant more than once.

### D. Document identification by Defendants:

Each Defendant may choose to use standard Bates numbering for this case and *Holiday*, *Baker*, and/or *Barbee*, to the extent that Plaintiffs in those cases are permitted to file amended complaints and the claims survive motions to dismiss. This means that a document produced in more than one of these cases may be labeled with the same Bates number in each case.

Dated: November 16, 2021                                   Respectfully submitted,

*s/*Margaret C. O'Connor                                    *s/*Sean O. Morris
Margaret C. O'Connor                                         Sean O. Morris
David J. Chizewer                                            Arnold & Porter Kaye Scholer LLP
Goldberg Kohn Ltd.                                           777 South Figueroa Street, 44th Floor
55 East Monroe Street, Suite 3300                            Los Angeles, CA 90017-5844
Chicago, IL 60603                                            (213) 243-4000
(312) 201-4000                                               Sean.Morris@arnoldporter.com
Margaret.OConnor@goldbergkohn.com

David.Chizewer@goldbergkohn.com

*Attorneys for Alvarez Plaintiffs*

Diana E. Reiter
Nancy G. Milburn
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Diana.Reiter@arnoldporter.com
Nancy.Milburn@arnoldporter.com

Kathleen A. DeLaney, Atty. No. 18604-49
DeLaney & DeLaney LLC
3646 Washington Boulevard
Indianapolis, IN 46205-3560
(317) 920-0400
Kathleen@delaneylaw.net

*Attorneys for Defendant Atlantic Richfield Company*

*s*/Kevin M. Toner
Kevin M. Toner, Atty. No. 11343-49
Plews Shadley Racher & Braun LLP
1346 North Delaware Street
Indianapolis, IN 46202
Tel. (317) 637-0700
ktoner@psrb.com

H. Max Kelln, Atty. No. 30358-49
Julian E. Harrell, Atty No. 30661-49
Faegre Drinker Biddle & Reath LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
 (317) 237-1200
Max.Kelln@FaegreDrinker.com
Julian.Harrell@FaegreDrinker.com

*Attorneys for Defendant U.S. Smelter and Lead Refinery, Inc. d/b/a U.S.S. Lead Refinery, Inc.*

*s*/Tracy A. Roman
Tracy A. Roman
Kathleen Taylor Sooy
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500
troman@crowell.com

13

ksooy@crowell.com

Honor R. Costello
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
(212) 223-4000
hcostello@crowell.com

Dina M. Cox, Atty. No. 18590-49
Lewis Wagner, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN 46201
(317) 237-0500
dcox@lewiswagner.com

*Attorneys for Defendants E. I. du Pont de Nemours and Company and The Chemours Company*