## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| CRISTOBAL and THERESA ALVAREZ, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:17-cv-414-PPS-AZ |
| ATLANTIC RICHFIELD COMPANY, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint [DE 266]. While seeking leave to file an amended complaint in a case that is already seven-years old may seem out of the ordinary, Plaintiffs couch their requested relief as being relatively modest in the context of this case. They are seeking to add one new party (the widow of a now deceased plaintiff) to assert claims similar to those brought by the other Plaintiffs. Defendants argue the motion should be denied on grounds of unreasonable delay, undue prejudice, and futility. Plaintiffs' motion is granted for the reasons discussed below.

### Background

This case was originally filed in 2017 by 46 residents of East Chicago, Indiana. Each of them alleged that they lived in homes in and around the U.S. Smelting and Lead Refinery, or USS Lead, Superfund Site. They claim that they were harmed by lead, arsenic, and other contaminants that emanated for decades from the industrial

operations at the site. The harms include alleged injuries to both person and property. In the case of Gail Burts, who is asking for leave to join the lawsuit as a plaintiff, she seeks damages for loss of use of her property and for the costs of further remediation. DE 266-1 at ¶ 67a. She furthermore alleges that the assessed value of the property for tax purposes declined by several thousand dollars since the contamination was made public. *Id*. at ¶¶ 168–169, 173a. Lastly, she seeks to recover damages for emotional distress and mental anguish she alleges she experienced after learning of the contamination. *Id*. at ¶¶ 67a, 167. Numerous different industrial companies owned and operated facilities on the site over the course of more than a century, and many of them were sued by the Plaintiffs. Now only EIDP, Inc. (f/k/a E.I. du Pont de Nemours and Company) and The Chemours Company (collectively referred to by the parties and the Court as the "DuPont Defendants") remain as defendants.

When this lawsuit was filed in October 2017, many of the Plaintiffs had lived in the area for decades. Sadly, four of those Plaintiffs—Terrance Hill, Jose Sanchez, John Sullivan, and most relevant here, William Boleware—have since passed away. In May 2022, four of the deceased Plaintiffs' relatives sought substitution to continue to pursue their pending legal claims. DE 202. In November 2022, then-Magistrate Judge Kolar denied the motions with leave to re-file. DE 210. In April 2023, Plaintiffs filed a second motion to substitute. DE 233. After holding a hearing on the matter, in February 2024, the Court—this time via District Judge Simon—denied the request (again without prejudice) because certain procedural hurdles had not been sufficiently cleared to allow substitution in accordance with Rule 20 of the Federal

2

Rules of Civil Procedure and Indiana's intestacy laws. *See* DE 260. Plaintiffs then filed a third motion to substitute three of the four deceased plaintiffs with their respective surviving wife or children, *see* DE 265, which Judge Simon granted in September 2024. DE 295.[1]

As to the fourth deceased plaintiff, William Boleware, there is no longer any effort to have another person substituted for him. Instead, Plaintiffs now seek leave of court to file a First Amended Complaint that seeks to add Boleware's surviving wife Gail Burts as a plaintiff in her own right, asserting her own property damage (upon his death, Boleware gifted their shared home to Burts) and emotional distress claims that mirror the claims being pursued by other Plaintiffs. DE 266-1 at ¶¶ 67a, 173a. Those claims are negligence, private nuisance, trespass, and recovery for negligent infliction of emotional distress (NIED). *See id.* at ¶¶ 235–254.

In response, the DuPont Defendants raise numerous procedural and substantive arguments in opposition, including asking the Court to take judicial notice of land transfer deeds which the DuPont Defendants say absolve it from liability for the nuisance claims Burts seeks to bring. DE 271, 272. The DuPont Defendants assert that there has been an unreasonable delay in seeking to add Burts as a plaintiff, that adding her as a plaintiff in the lawsuit at this juncture would be unduly prejudicial, and that her proposed claims are without legal basis and futile.

---

[1]     Specifically, Terrance Hill (Curtis Hill's surviving son), Ester Placzek (Jose Sanchez's surviving daughter), and Delphine Sullivan (John Sullivan's widow), were substituted for their respective deceased fathers and husband.

**Discussion**

## I.    Legal Standard Governing Amending the Pleadings.

The Court uses a familiar two-step process in evaluating a motion for leave to amend after the deadline to amend pleadings in the scheduling order has passed. The first step is to decide whether the moving party has shown "good cause" under Federal Rule of Civil Procedure 16(b). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (internal citations omitted). If good cause is shown, the Court proceeds to the second step and applies the Rule 15(a)(2) standard for amendments. Fed. R. Civ. P. 15(a)(2). *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("The two-step process is consistent with nearly every one of our sister circuits (and out of step with none)").

When a party seeks leave to amend a pleading, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). If the underlying facts or circumstances relied upon by a party are potentially a proper subject of relief, the party should be afforded an opportunity to test the claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "By its plain terms, the rule reflects a liberal attitude towards the amendment of pleadings—a liberality consistent with and demanded by the preference for deciding cases on the merits." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008).

The Court has broad discretion in deciding whether Rule 15(a)(2)'s standard is met. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman*, 371 U.S. at 183). "Prejudice to the opposing party is the most important factor in determining whether to allow an amendment to a complaint." *Peters v. Life Care Centers of Am., Inc.*, 2020 WL 3498444, at *2 (N.D. Ind. June 29, 2020) (internal citations omitted).

## II. Whether Plaintiffs Have Demonstrated Good Cause Pursuant to Rule 16(b) to Seek Leave to File a Belated Amended Pleading.

After four of the Plaintiffs passed away, the Court set a deadline of April 28, 2023, for Plaintiffs to file any amended pleadings to address the four deceased plaintiffs. *See* DE 231 at 19:22–20:16. As discussed above, that resulted in three successive motions to substitute and three orders from the Court addressing whether certain representatives could be substituted for the deceased plaintiffs. The process played out for nearly a year and a half before three of the four deceased Plaintiffs were finally substituted for their deceased relatives. Thus, while Plaintiffs' motion for leave to file an amended complaint comes more than a year after the deadline to file such a motion, Plaintiffs were not sitting idly by during that time. And the DuPont Defendants knew long before the deadline that Burts was seeking to join this lawsuit in some fashion, first as a substitute, and later as a plaintiff in her own right.

Considering the unique circumstances of this case, the fact Plaintiffs' motion comes more than a year after the deadline does not in and of itself demonstrate a lack

of diligence. *Cf. Trustmark Ins.,* 424 F.3d at 553 (affirming denial of leave to amend where party sought to amend the pleadings nine months after the deadline or until it had confirmed its "suspicions" about a potential claim). Plaintiffs' efforts to have Burts substituted for Boleware were unsuccessful—and that took a long time to become apparent—but there were repeated efforts to have Burts join this lawsuit. That is evidence of Plaintiffs' diligence, not a lack thereof. Accordingly, the Court finds that good cause under Rule 16(b) exists for Plaintiffs to seek leave to amend after the deadline to do so has passed.

### III.  Whether Plaintiffs Satisfy Rule 15's Liberal Standard in Favor of Amendment.

Having found good cause to allow Plaintiffs seek leave to amend, the Court proceeds to determine whether leave should in fact be granted. Again, the determination of whether the Rule 15(a)(2) standard is met focuses primarily on whether there has been an unreasonable delay in seeking leave, whether amendment would cause undue prejudice, and whether the proposed amendment would be futile. *Villa*, 924 F.3d at 632. The DuPont Defendants argue that all three considerations mandate denying leave, and the Court will address each in turn.

### A. Delay in Seeking Amendment.

Having already found good cause exists under Rule 16(b) to excuse any delay in missing the deadline to seek leave to amend, the Court likewise does not find there has been an undue delay in seeking leave to amend. The DuPont Defendants argue that Burts should have sought leave to assert her property damage claims more quickly after her husband gifted the property to her in November 2021. But, as

discussed, Burts did not wait idly by during those two-and-a-half years. She twice (albeit unsuccessfully) sought to be substituted as a personal representative of her deceased husband in 2022 and 2023. Pursuing an unsuccessful strategy may have caused delay in pursuing the proposed amendment, but it cannot be said that Plaintiffs and their counsel were inattentive or strategically waited to delay their efforts to add Burts as a party.

The DuPont Defendants also fault Burts for failing to assert her emotional distress claims seven years ago when the lawsuit was originally filed. Her husband, with whom she resided at the same address, was a plaintiff. Plaintiffs have explained that Boleware was representing the interests of his entire household in this lawsuit both in terms of personal and property-based injuries. Now that he has passed away, Burts has sought to step in to recover on behalf of the household, first as a substitute, and now as a plaintiff in her own right. This measured approach, limiting the number of parties to effectively one-per-household in most instances seems reasonable to the Court in the context of the claims asserted in this case and helps explains from a pragmatic perspective why Burts did not previously seek to join the lawsuit.[2] But it also raised questions regarding the legal significance of the fact Burts did not have formal title to the property in question until November 2021 but is seeking to recovery for injuries she alleges she and her husband learned about in 2016.

---

[2]    Plaintiffs note in their briefs that they have an agreement by which any recovery in this lawsuit will be distributed amongst them equally without regard to the particulars of the amount of personal injury and/or property damage sustained by each on an individual or household basis, which further explains the pragmatic approach they have taken. *See* DE 283 at 4.

This issue prompted the Court to request supplemental briefing and set this matter for oral argument specifically on the question of statute of limitations and what impact, if any, the November 2021 transfer has on Burts' proposed claims. *See* DE 302. In response, the DuPont Defendants did not raise any statute of limitations arguments particular to Burts' proposed claims. At the hearing, the Court more specifically asked the DuPont Defendants whether they believed Burts had standing to bring property damage or emotional distress claims before she acquired title to the property in November 2021, and whether that raised a statute of limitations issue uniquely applicable to Burts. The DuPont Defendants responded that they believed Burts had standing to assert her own property-based negligence claims and corresponding emotional distress claims in 2017. The DuPont Defendants reiterated their general statute of limitations arguments applicable to all Plaintiffs that were previously rejected by the Court. *See* DE 157 at 5–7. The Court will not revisit those arguments at this time or engage in the necessarily fact-intensive inquiry related to the DuPont Defendants' affirmative defense of laches which is more appropriately left for summary judgment.

Both parties agree that any statute of limitations questions related to Burts rise or fall on whether her claims relate back to the original pleading pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. While the "express terms" of Rule 15(c) do not specifically address how Courts should approach "an attempt to add a new party plaintiff to assert claims against the existing defendants," *Olech v. Village of Willowbrook*, 138 F. Supp.2d 1036, 1041 (N.D. Ill. 2000), courts in the Seventh

Circuit generally require four elements be met. "A new plaintiff's claim relates back to an original complaint 'where (1) the new plaintiff's claim arose out of the same conduct, transaction or occurrence set forth in the original complaint; (2) the new plaintiff shares an identity of interest with the original plaintiff; (3) the defendants have fair notice of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice.'" *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 998 (N.D. Ill. 2023) (citations omitted). Burts satisfies all four.

First, Burts' claims arise from the same conduct, transaction or occurrence as her deceased husbands' and the other Plaintiffs' claims because they all concern the migration of toxic contaminants from the USS Lead Superfund Site onto their properties. Second, given that Burts lived with her husband in a shared home for more than two decades prior to the filing of the lawsuit and that she raises claims that are functionally identical to his, there is a clear identity of interest. Third, the DuPont Defendants had notice of these claims given that they mirror the previously pleaded ones and Burts' identity as a resident of the home has further been known for several years if not since shortly after the lawsuit was filed. Fourth, and as discussed further in the next section, any prejudice the DuPont Defendants will face with the addition of Burts is small in the greater scheme and timeline of this lawsuit.

Finally, even if the particulars of this case were not as they are, and the Court viewed this solely as a matter of Burts waiting seven years before joining the lawsuit, the Seventh Circuit has emphasized that "delay by itself is normally an insufficient reason to deny a motion for leave to amend." *Dubicz v. Commonwealth Edison Co.,*

377 F.3d 787, 793 (7th Cir. 2004) (holding district court abused its discretion when it denied leave to amend primarily because eight-months elapsed between dismissal of a complaint and the request for leave to amend). As explained above, Burts is not late to this party. Her husband initially pursued the claims on behalf his household. And Burts has been diligently seeking to carry the mantle since her husband passed. Given the sequence of events in this case, it would be unfair to deny Burts her day in court due to the passage of time.

### B. Undue Prejudice to the DuPont Defendants.

The prejudice inquiry begins with an understanding that there is always going to be some prejudice to a defendant when a new plaintiff or new claims are sought to be added to a lawsuit. But to determine whether there is "undue prejudice" in allowing leave to amend, "the court will consider the position of both parties and the effect the request will have on them." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.). "This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." *Id.* And while prejudice to the non-moving party is the most important element of the Rule 15 analysis, *see Peters*, 2020 WL 3498444, at *2, it is the one least demonstrated here because discovery remains ongoing, no trial date has been set, and the balancing inquiry favors allowing Burts to join this lawsuit.

This case primarily concerns property damage. When the lawsuit was filed, Burts did not own the property where she lived; her husband did. And he was of

course a plaintiff in the original lawsuit. But with Boleware deceased and the property now owned by Burts, it would not substantively alter the claims in this lawsuit to allow her to join and bring the same property damage claims to the same property her husband had brought. On the other hand, the hardship to Burts if she is not allowed to join the lawsuit could be immense: she would in all likelihood be foreclosed from any recovery for damage to a home she lived with her husband in for many years that she alleges was damaged by the DuPont Defendants' actions.

Concerning any recovery for Burts' alleged personal injuries, the Court recognizes that there will be some prejudice to the DuPont Defendants by allowing amendment here—it is one more Plaintiff on whom discovery must be had and increases their potential liability. However, that increased liability is fractional in the overall context of this and the related cases and does not amount to prejudice substantial enough to deny Burts' pursuit of her claims.

The current status of this litigation also weighs against a finding of undue prejudice. When this motion was filed, less than two months remained for the parties to complete discovery. In their response to the motion for leave to amend, the DuPont Defendants informed the Court in a footnote that they intended to file a motion to extend the discovery deadline. *See* DE 271 at 15, n.13. Shortly thereafter, the parties filed a joint motion to extend the discovery deadline, which was granted. DE 280, 281. Discovery is now scheduled to close in February 2025, in approximately four months,

11

and that deadline may be extended further for reasons unrelated to Burts.[3] The addition of Burts—one of more than three dozen plaintiffs and who is alleging claims that mirror the other plaintiffs—is unlikely to impact the current litigation schedules in any meaningful way.

The prejudice to the DuPont Defendants by adding Burts as another Plaintiff to the lawsuit is roughly the same prejudice they would have endured if Burts were added as a party when she was deeded the property in November 2021 or even when the case was filed. *See In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999) ("Virtually every amendment results in some degree of prejudice to an opposing party because of the potential for additional discovery and trial delay."). But it is not *undue* prejudice warranting denial of Plaintiff's motion.

## C. Futility of the Proposed Claims.

Having found no unreasonable delay by Burts or undue prejudice to the DuPont Defendants, the question of futility remains. If the underlying claims are so legally infirm as to be futile, there is no reason to grant leave to bring them into the lawsuit. "Amendment is futile when it seeks to add a new claim that does not allege a viable theory of liability." *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). This is "essentially" the same as saying a party has failed to state a claim. *Id.* Here, the DuPont Defendants focus on the alleged futility as to the private nuisance and

---

[3]    During a recent status conference, counsel for the DuPont Defendants indicated that another request to extend the discovery deadline may be necessary on account of the number of medical records and individual depositions that must take place before the close of discovery. DE 297.

negligent infliction of emotional distress claims while also noting that the First Amended Complaint seeks to re-plead certain already-dismissed claims and parties.

### 1. Private Nuisance Claims Against the DuPont Defendants.

The DuPont Defendants argue that Burts' proposed private nuisance claim is futile for two reasons. First, they argue that the private nuisance claim cannot proceed because Burts is only seeking damages—and not abatement and damages—as a remedy. DE 271 at 11. Second, they argue that they are now effectively immunized from liability for any private nuisance "because they no longer own the property at issue," as evidenced by deeds of which they are seeking judicial notice. *Id.* at 12. Neither argument stands up to full scrutiny under Indiana law with regard to the allegations in this case.

At the outset, I acknowledge that I am not writing on a blank slate on this issue. Judge Van Bokkelen previously dismissed the private nuisance claims against two defendants who are no longer parties to this case. DE 157 at 13–14. He allowed the Plaintiffs to proceed against the DuPont Defendants because he understood from Plaintiffs' allegations that toxic substances were migrating onto Plaintiffs' property from the USS Lead Superfund Site and the DuPont Defendants maintained ownership of property that was a source of the contaminants. *Id.* at 14 ("While DuPont may no longer be generating contaminants, permitting previously generated contaminants to migrate to Plaintiffs' properties is an allegedly ongoing behavior that the Court can enjoin, so the nuisance claim may proceed against DuPont."). In doing so, Judge Van Bokkelen relied principally on *KB Home Indiana, Inc. v. Rockville TBD*

13

*Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010) where the Court of Appeals of Indiana affirmed a grant of summary judgment when the plaintiffs "failed to show that a nuisance existed or was ongoing that could be abated or enjoined" at the time their lawsuit was filed. *KB Home*, 928 N.E.2d at 307. According to Judge Van Bokkelen, *KB Home* dictated dismissal of the defendants who no longer owned the site from which the contaminants emanated but permitted the claims against the DuPont Defendants to proceed because those two criteria—continued migration of toxic substances and property ownership—were present. DE 157 at 14.

However, *KB Home* does not support the proposition that property ownership is a prerequisite for liability in nuisance claims. On the contrary, Indiana law is clear that a "party which causes a nuisance can be held liable, regardless of whether the party owns or possesses the property on which the nuisance originates." *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 53 (Ind. Ct. App. 1993) (cited in *KB Home*, 928 N.E.2d at 307). The Indiana Supreme Court has furthermore held that depending on the facts of a case, land ownership by a defendant may be "of no consequence" to the viability of a private nuisance claim. *Reed v. Reid*, 980 N.E.2d 277, 294 (Ind. 2012). "Rather the questions are whether the Defendants' actions caused a condition on [the Plaintiff's] property which was: '(1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property. These are questions for the jury." *Id.* (quoting Ind. Code § 32–30–6–6). The Indiana Supreme Court relied on the plain language of the private nuisance statute which is silent on

14

the issue of a tortfeasor's ownership interest in any parcel of land. *Id.; see also City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1232 (Ind. 2003) (noting that "the focus of the legislature was on protecting an individual's right to enjoy property from infringement by *any* source.") (emphasis added). This makes sense because a private nuisance action seeks to stop a noxious condition on a *plaintiff's* land caused by a defendant's *conduct*, not a defendant's land itself.

Taking the DuPont Defendants' argument to its logical conclusion would mean that a nuisance creator could insulate itself from nuisance liability in all instances by simply transferring ownership of a property after a nuisance comes to light or harms an adjacent landowner. As the Court of Appeals of Indiana has put it, "[t]here is no authority in Indiana which supports this contention." *See Gray*, 624 N.E.2d at 53.

I am not alone in my assessment. These same nuances of Indiana nuisance law were addressed in depth in a toxic tort and environmental contamination case in this district unrelated to the USS Lead Superfund Site. *See Hostetler v. Johnson Controls Inc.*, 2021 WL 5087261 (N.D. Ind. Nov. 2, 2021). In *Hostetler*, the Court denied summary judgment on a nuisance claim even though the defendant no longer owned the land in question because the resulting contamination from the nuisance-generating activity remained and had not been fully abated when the lawsuit was filed. *Id.* at *13–14. That is essentially the same allegation being made against the DuPont Defendants in this case.

Judge Van Bokkelen's ruling on the earlier motion to dismiss was premised on the logic that a party that no longer owns property from which the nuisance

originated cannot be enjoined to abate the nuisance. That reasoning ignores the holding in *Gray* that "the creator of a nuisance on land which it does not own *can* be required to abate the nuisance." *Gray*, 624 N.E.2d at 53 (emphasis added). As explained in *Hostetler*, this holding in *Gray* does not contradict *KB Home* because *Gray* "addressed a question of whether a tortfeasor must own land adjacent to the plaintiff's in a nuisance action whereas *KB Home* and *Ka* dealt with the question of whether the nuisance must be active at the time the lawsuit is filed." *Hostetler*, 2021 WL 5087261, at *14 (referencing *Ka v. City of Indianapolis*, 954 N.E.2d 974 (Ind. Ct. App. 2011)). In sum, "even though a defendant stops polluting by the time the lawsuit is filed, a nuisance claim can proceed so long as the waste remains on the land unabated." *Id*. Here, that is precisely what Burts has alleged: unabated toxic waste in the form of lead, arsenic and other chemicals that was produced by the DuPont Defendants' earlier operations remains on her land unabated or not adequately remediated. DE 266-1 at ¶¶ 67a, 129a, 242.

I am also unpersuaded by the DuPont Defendants' argument that Plaintiff's nuisance claim is futile "[b]ecause plaintiffs seek only damages" without also seeking a remedy of abatement. *See* DE 271 at 11. The DuPont Defendants cite *Hostetler* for the proposition that Indiana's nuisance statute "does not provide for damages alone . . . rather damages go hand-in-hand with enjoiner and abatement." *Id*. But that is cherry picking the language from that opinion. The full text of that opinion's discussion on the issue is as follows:

> The plain language of the statute contemplates an ongoing/present offending activity or condition. Importantly, subsection (8) allows for

> nuisance to be "enjoined or abated *and* damages recovered for the nuisance." In other words, this subsection does not provide for damages alone as would happen in a case of an activity or condition that had ceased; rather damages go hand-in-hand with enjoiner and abatement, further suggesting that the statute contemplates a present offending activity or condition.

*Hostetler*, 2021 WL 5087261, at *13. This paragraph makes the point that Indiana's nuisance law only contemplates causes of action for harms that are ongoing as of the date of the complaint and not for harms that have ceased. This reading of the opinion is supported by the ensuing discussion of two cases, *KB Home* and *Ka*, in which summary judgement was affirmed because the plaintiffs had not established evidence of a present harm that continued to exist. *Id.*

The *Hostetler* opinion does not hold that a plaintiff must seek a remedy of abatement in order to pursue a private nuisance claim under Indiana law. Notably, the DuPont Defendants do not cite any Indiana state cases to support their argument. In contrast, the Indiana Supreme Court has defined nuisance as "an activity that generates injury or inconvenience to others that is both sufficiently grave and sufficiently foreseeable that it renders it unreasonable to proceed at least without *compensation* to those that are harmed." *City of Gary*, 801 N.E.2d at 1231 (emphasis added). And the Indiana Court of Appeals has stated, "[a] plaintiff may still recover damages for nuisance which is found to be unabatable." *Gray*, 624 N.E.2d at 53. Judge Van Bokkelen's prior ruling on the motion to dismiss suggested that he would permit Plaintiffs to seek injunctive relief in the form of abatement even though it was not expressly requested in the Complaint. Whatever remedies the Court will permit Plaintiffs to pursue on the nuisance claim is an issue better reserved for summary

17

judgment or trial. But at this stage, I cannot conclude that the proposed nuisance claims are futile as pled.[4]

There is one final housekeeping matter on this issue. The DuPont Defendants requested the Court to take judicial notice of two recorded warranty deeds dated January 23, 2015, and June 26, 2017, in order to establish that the DuPont Defendants are no longer in possession of properties from which the contaminants at issue allegedly originated. Federal Rule of Evidence 201 permits the Court to take judicial notice of an "adjudicative fact" that is both "not subject to reasonable dispute"

---

[4]    My ruling here seemingly contradicts a decision in a related case concerning the USS Lead Superfund Site, *Adams v. Atl. Richfield Co.*, 2023 WL 6381346 (N.D. Ind. Sept. 29, 2023). In *Adams*, Judge Simon dismissed nuisance claims against the DuPont Defendants based on the same argument the DuPont Defendants raise here regarding ownership of the site. He did so because he believed that Judge Van Bokkelen ruled as he did under a mistaken impression that the DuPont Defendants still owned the USS Lead Superfund Site, a fact that was contradicted by the same deeds presented in this case showing the property had changed hands. *Adams*, 2023 WL 6381346, at *16 ("Based on the facts reflected in the documents DuPont has submitted, it is clear that Judge Van Bokkelen was incorrect. In other words, because DuPont no longer owns the property at issue, they can't abate it. Consequently, the nuisance claim, as it did in *Alvarez*, must fail."). In short, Judge Simon adopted Judge Van Bokkelen's rationale for dismissing nuisance claims against other parties in this case based on lack of property ownership and applied that reasoning to the DuPont Defendants in *Adams*. *Id.*

Importantly, however, the plaintiffs in *Adams* did not contest the DuPont Defendants' argument. Thus, Judge Simon presumably ruled as he did in order to be consistent with Judge Van Bokkelen's prior reasoning and because he was not presented with any argument to the contrary. *Adams*, 2023 WL 6381346, at *16 ("Tellingly, the plaintiffs did not respond to this argument, or any argument for dismissal of the nuisance count, for that matter."). He did not have the benefit of the Indiana case law discussed above (and cited by Plaintiffs in this case) when he decided the issue. Nevertheless, after considering the arguments of the parties and conducting a careful examination of the relevant case law, I am convinced that a defendant's land ownership does not dictate the viability of a nuisance claim against it under Indiana law.

and either: (1) "generally known within the territorial jurisdiction of the trial court" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See United States v. Arroyo*, 310 Fed. Appx. 928, 929 (7th Cir. 2009) ("Judicial notice is a doctrine that authorizes the finder of fact to waive proof of facts that cannot reasonably be contested. But Rule 201, which governs a district court's use of judicial notice, applies only to adjudicative facts, which are 'simply the facts of the particular case' or, stated differently, 'those to which the law is applied in the process of adjudication.'") (internal citations omitted). Ordinarily, properly recorded deeds evidencing transfers of ownership are appropriate subjects of judicial notice. *See United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). But as explained above, the DuPont Defendants' lack of ownership interest in the properties does not adjudicate whether Plaintiffs' nuisance claim is futile. For this reason, I will deny the request for judicial notice without prejudice. The DuPont Defendants may resubmit this request as appropriate later in the proceedings if the deeds become pertinent to the adjudication of a legal issue.

## 2. Recovery for Negligent Infliction of Emotional Distress.

The parties' briefs focused in large part on their arguments on whether Burts' negligent infliction of emotional distress (NIED) claims are futile. Like the private nuisance issue, this topic been addressed by other judges in this case and in related cases. But unlike Burts' private nuisance claim, I see no occasion to depart from the prior rulings of my colleagues. Instead, while other Plaintiffs in this case and related cases have had their NIED claims dismissed because they failed to allege both a

present physical injury for traditional negligence recovery and a direct physical impact for NIED recovery, Burts' allegations are factually distinct from those for one key reason: she alleges a standalone negligence claim for property damage and a direct physical impact from the same conduct. And at oral argument, the DuPont Defendants stated they are not arguing that Burts' lack of legal title prior to November 2021 has any impact on her ability to recover for mental anguish under an NIED theory. Thus, as discussed below, nothing in the Indiana jurisprudence prevents NIED recovery in those circumstances.

From my review of the relevant decisions, none of the judges who have ruled on this issue squarely addressed a plaintiff alleging a standalone negligence claim for property damage, coupled with an NIED-based claim for mental anguish relating to future potential medical problems in which the "direct physical impact" is the same as the source of the property damage. Thus, I agree with Plaintiffs that Judge Simon's decisions on the motion to dismiss in *Adams* do not alter the result in this case as to the NIED claims that Burts seeks to bring.

More than 30 years ago, the Indiana Supreme Court established the "modified impact rule" which governs NIED-based recovery to this day. It held:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). In doing so, the Indiana Supreme Court effectively established two main requirements in order for a plaintiff to successfully plead a claim for NIED damages recovery. First, a plaintiff must allege a standalone negligence claim, which includes the element of an injury traceable to the defendant's breach. *See Podemski v. Praxair, Inc.,* 87 N.E.3d 540, 546–47 (Ind. Ct. App. 2017) ("To recover on a negligence theory, the plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach.") (citing *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)). Second, that plaintiff must allege that the emotional distress they allegedly suffered was the result of "direct physical impact" traceable to defendant. *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006) ("In an action to recover damages for the negligent inflict of emotional distress, Indiana's modified impact rule requires a claimant to demonstrate a direct physical impact resulting from the negligence of another.").

In *Adams*, Judge Simon granted various of the defendants' motions to dismiss NIED claims as to plaintiffs who neither alleged a personal injury nor were *owners* of property adjacent to the USS Lead Superfund Site. Burts does not allege that she has a personal injury like the three plaintiffs in *Adams* who were allowed to proceed with their NIED claims. But she is also not like the plaintiffs who had their NIED-based claims dismissed. Specifically, unlike the residents of West Calumet in the *Adams* case who were residents of a housing complex and not real estate owners, Burts has a standalone claim for negligence against the DuPont Defendants based on

21

property damage separate and apart from any personal injury. Burts has also alleged a direct physical impact as a result of what she says were the DuPont Defendants' negligent actions allowing lead, arsenic, and other contaminants to seep onto her property and cause her potential health concerns.

While it is true that Burts does not allege a personal injury, which undergirded much of Judge Simon's ruling in *Adams*, that was not the sole or even primary basis for his decision. As the opinion on the motion for reconsideration made clear, there is a "distinction between a physical injury required to state a negligence claim and a 'direct physical impact' required to state a NIED claim." *Adams*, No. 2:18-cv-375 (N.D. Ind.) DE 294 at 13. The Indiana Supreme Court has made that clear multiple times in the last several decades. *Cook*, 857 N.E.2d at 996 ("[T]he modified impact rule maintains the requirement of a direct physical impact. The impact however does not need to cause physical injury to the plaintiff. Additionally the emotional trauma suffered by the plaintiff does not need to result from a physical injury caused by the impact."); *Shaumber*, 579 N.E.2d at 456 (similar). That distinction is critical with regard to Burts' claim because she has a standalone negligence claim (based on property damage) *and* has alleged a direct physical impact (based on actual contact with toxic substances such as lead and arsenic through groundwater and other means). The DuPont Defendants do not cite any Indiana case law that says the "standalone negligence claim" must be for personal injury. Instead, like the three Plaintiffs in *Adams* who did not have their NIED claims dismissed, Burts has a standalone negligence claim, albeit for property damage and not a personal physical

22

injury, and alleges she is entitled to recovery for NIED because of a direct physical impact. *See* DE 266-1 at ¶¶ 67a, 129a.

Burts' proposed NIED claim are not foreclosed by other relevant Indiana precedent. Her allegations are distinct from those alleged in *Adams v. Clean Air Systems, Inc.,* 586 N.E.2d 940 (Ind. Ct. App. 1992). Burts does not allege that she only "potentially" came into contact with a toxic substance, as the plaintiffs in *Clean Air Systems* alleged with regard to asbestos. She claims that she did in fact come into contact with lead, arsenic, and other toxic compounds emitted through the DuPont Defendants' industrial operations and traveled to her residence. DE 266-1 at ¶¶ 3, 109, 167, 253.

Indiana courts have not required a high severity of physical impact in order to proceed on an NIED claim so long as there is some direct physical impact. While the mere sound of loud banging on a door is not a sufficient physical impact, *see Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999), a slight prick from a needle, *see Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185, 189 (Ind. Ct. App. 1998), or eating vegetables cooked with a worm, *see Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 996 (Ind. Ct. App. 1998), may be sufficient. And while the Indiana Supreme Court in *Cook* stated that inhaling cigarette smoke and "feeling floor vibrations . . . stretches the outer limits of the impact requirement," it did not rule them out as possible bases of a physical impact. 857 N.E.2d at 999. Indeed, in *Cook*, the Court reiterated the point that a direct physical impact "does not need to cause physical injury to the plaintiff" in order to recover for NIED. *Id.* at 996. Instead, *Cook* was decided on grounds that

the alleged emotional distress the plaintiffs experienced (effectively garden-variety stress from flying) was insufficient for NIED as a matter of law. *Id.* at 999–1000 ("[T]hese feelings about the world around us in general and air travel in particular is the plight of many citizens in this country, living as we do in a post-September 11 environment[.]"). Here, Burts does not allege "temporary" emotional distress as was the case in *Cook*. *See id.* at 1000. She alleges ongoing mental anguish as a result of living on property that has been physically impacted with the presence of known dangerous chemicals. That anguish is not garden-variety stress, but instead a palpable fear that she or her family may suffer physical harm as a result of the presence of these chemicals, which are commonly known to be unsafe. Of course, Burts and the other Plaintiffs will not succeed in their claims if they cannot prove their emotional injuries and tie those injuries to the conduct of the DuPont Defendants. *See Hostetler*, 2021 WL 5087261, at *16 ("The opinions of Plaintiffs' medical experts have been excluded because those experts could not particularize the risks the Plaintiffs were facing as a result of the alleged exposure. Without such evidence, a jury would be asked to speculate.") (granting summary judgment for defendant on NIED claims)*; see also Barlow v. Gen. Motors Corp.*, 595 F. Supp. 2d 929, 941–44 (S.D. Ind. 2009) (granting summary judgment in favor of defendant where plaintiffs could not provide evidence that chemicals in question actually caused an increase health risk). But *Hostetler* and *Barlow* were decided at the summary judgment stage with the benefit of a developed factual record. For purposes of the issue at hand, Burts has alleged a plausible NIED claim under Indiana state law

precedent. Thus, it would not be futile at this stage to permit Burts to pursue this claim for any of the reasons argued by the DuPont Defendants.

IV.    **Whether Plaintiffs' Proposed First Amended Complaint Comports with Rule 20's Joinder Requirements.**

While Rule 15(a) governs amended pleadings generally, because Burts is seeking to be a new plaintiff, she must also satisfy the rules for joinder. The parties devote only a few paragraphs on this issue and the Court will be similarly succinct in its treatment because the requirements are satisfied here.

"Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)–(B). The DuPont Defendants argue that joinder is impossible here because this case involves multiple different alleged contaminants that came on to Burts' property through multiple different means over the course of multiple decades. DE 271 at 14. While all of what the DuPont Defendants say may be true, the factual or legally complexity of a case is itself irrelevant to the joinder inquiry. What matters is whether the gist of the lawsuit are the same events (*i.e.*, whether it arises from the same occurrence or series of occurrences) and whether there are *any* common questions of law or fact. Here, both of those are satisfied because Burts is bringing the same claims for the same alleged conduct as all of the other Plaintiffs in this lawsuit. That her claims focus on herself and her property as opposed to personal or property injuries of other Plaintiffs is of no legal moment. Likewise, while any dispute

regarding causation or which contaminants generated by which company at which time and how they may have migrated or continue to migrate onto Plaintiffs' property may be complex, they are still questions common to all Plaintiffs given their proximity to the USS Lead Superfund Site. Accordingly, the joinder requirements of Rule 20(a)(1) are satisfied for purposes of allowing the First Amended Complaint.

## V.    Plaintiffs' Repleading of Dismissed Claims and Parties.

There is a final housekeeping issue to address regarding the proposed First Amended Complaint. The DuPont Defendants point out that Plaintiffs' new pleading includes claims for trespass, which have previously been dismissed, as well as six defendants and one Plaintiff who have all been dismissed through settlement or failure to prosecute. DE 271 at 12–13. The DuPont Defendants say these improper additions are grounds to deny Plaintiffs' motion. In their reply, Plaintiffs do not contest any aspect of the DuPont Defendants argument as to these dismissed claims and parties. While failure to address an argument raised in a response brief may not always constitute a formal waiver, here that is the case. *See Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive a non-jurisdictional issue or argument in many ways, such as by ... failing to respond in a reply brief to a new argument raised by appellee."). With no response or ascertainable reason why these dismissed claims and parties should be brought back into the lawsuit, the Court will not permit them to be included within the operative pleadings. Furthermore, since Burts is being allowed to join this lawsuit as a plaintiff in her own right and the efforts to substitute her for Boleware have been abandoned, he too should no longer be included as a party.

26

Thus, the Court agrees with the DuPont Defendants that these claims and parties have no place in this lawsuit going forward and should be excised from any amended pleading which is filed. Accordingly, when Plaintiffs file their First Amended Complaint, they should omit: claims (*e.g.*, trespass) and parties (*e.g.*, defendants who have settled, plaintiffs who failed to prosecute, and plaintiffs who are deceased and without substitution) which have been dismissed by prior orders.

This will require some additional work on the part of Plaintiffs' counsel prior to filing of the First Amended Complaint, but I think all can agree that it will be worth it to have a more streamlined and organized pleadings in this case as it hopefully approaches a resolution.

## Conclusion

For the reasons discussed, the Court **GRANTS** Plaintiffs' Motion for Leave to File First Amended Complaint [DE 266] and **DENIES WITHOUT PREJUDICE** the DuPont Defendants' Request for Judicial Notice in Support of Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint [DE 272]. Plaintiffs are **ORDERED** to file their First Amended Complaint consistent with this opinion by December 6, 2024.

So ORDERED this 8th day of November 2024.

*/s/ Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT

27